UNITED STATES of America,

v.

Ross R. BARNETT and Paul B. Johnson, Jr.

No. 20240.

United States Court of Appeals Fifth Circuit.

April 9, 1963.

Before TUTTLE, Chief Judge, RIVES, CAMERON, JONES, BROWN, WISDOM, GEWIN and BELL, Circuit Judges.

PER CURIAM.

The above members of the Court of Appeals for the Fifth Circuit, sitting en banc, being evenly divided in their opinion as to the correct answer to a question of law arising in this cause, and the Court, desiring instruction concerning it for the proper decision of the cause which is now pending before the Court, hereby certifies the following question to the United States Supreme Court:

Where charges of criminal contempt have been initiated in this Court of Appeals against two individuals, asserting that such individuals willfully disobeyed a temporary restraining order of the Court, which order was entered at the request of the United States, acting as amicus curiae pursuant to its appointment by an order of the Court which granted to it, among other rights, the right to initiate proceedings for injunctive relief, and the acts charged as constituting the alleged disobedience were of a character as to constitute also a criminal offense under an Act of Congress, are such persons entitled, upon their demand, to trial by jury for the criminal contempt with which they are charged?

A statement of the nature of this cause and of the facts on which the certified question arises, as required by Supreme Court Rules 28–29 follows:

1. The case presents the certified question of law relating to criminal contempt arising out of the case of Meredith, et al. v. Fair, et al., 5 Cir., 313 F.2d 534. This Court in the opinion of June 25, 1962, in Meredith v. Fair, 5 Cir., 1962, 305 F.2d 343, cert. denied, 1962, 371 U.S. 828, 83 S.Ct. 49, 9 L.Ed.2d 66, reversed the decision of the District Court and remanded it with directions.[1]

Thereafter on July 27, 1962, this Court by opinion and order at 306 F.2d 374, took further action. After setting aside a stay of execution of this Court's mandate pursuant to 28 U.S.C.A. § 2101(f) by one of the Judges of this Court, the Court then directed that its mandate be

---

1. On January 12, 1962, this Court at 298 F.2d 696 affirmed the denial of the preliminary injunction by the District Court and issued the Court's mandate forthwith to permit an early trial on the merits. On February 12, 1962, at 305 F.2d 341, the Court denied Meredith's application for a preliminary injunction pending appeal from the denial of injunctive relief by the District Court following trial on the merits.

recalled and amended in order to make "explicit the meaning that was implicit in this Court's conclusions as expressed throughout its opinion in this cause, dated June 25, 1962." 306 F.2d 374, 378. The opinion then prescribed the terms of the amended mandate and order. The case was reversed and remanded with directions to the District Court "to grant all relief prayed for * * * and to issue forthwith a permanent injunction against each and all of the defendants-appellees * * * enjoining and compelling each and all of them to admit * * * Meredith, to the University of Mississippi * * *. Such injunction shall in terms prevent and prohibit said defendants-appellees, or any of the classes of persons referred to from excluding the plaintiff-appellant from admission to continued attendance at the University of Mississippi. * * * " This Court then said it would order its own injunction in these terms:

> "Pending such time as the District Court has issued and enforced the orders herein required and until such time as there has been full and actual compliance in good faith with each and all of said orders by the actual admission of plaintiff-appellant to, and the continued attendance thereafter at the University of Mississippi, this Court herewith issues its own preliminary injunction enjoining and compelling each and all of said parties to admit plaintiff-appellant to, and allow his continual attendance at the University of Mississippi, further prohibiting and preventing said parties or any of them from excluding said plaintiff-appellant from attendance to and continued attendance thereafter on the

same basis as other students at the University of Mississippi." 306 F.2d 374, 378.

2. On July 28, 1962, a formal order was entered by this Court in like terms to effectuate the amended mandate and orders to the District Court and providing for the preliminary injunction issued by this Court. This order was also stayed, but on August 4, 1962, this Court vacated the stay or stays granted on July 28 and July 31, 1962.[2]

This order likewise being stayed, the matter was presented by Meredith to Mr. Justice Black, Circuit Justice, who on September 10, 1962, vacated all of these stays with the further order "that the judgment and mandate of the Court of Appeals shall be effective immediately" and "pending final action by this Court on the petition for writ of certiorari" the "respondents be, and they are hereby enjoined from taking any steps to prevent enforcement of the United States Court of Appeals' judgment and mandate." [3] 83 S.Ct. 10, 9 L.Ed.2d 43, 7 Race Relations Law Reporter, Fall 1962, p. 745.

3. On September 18, 1962, this Court (Judges BROWN, WISDOM and BELL), after first ascertaining from the District Court that it declined to enter an order in this form, entered its order allowing the United States to appear in the case. The order recited "It appearing from the application of the United States, filed this day, that the interests of the United States in the due administration of justice and the integrity of the processes of its courts should be presented in these proceedings * * * "; the order then prescribed:

> "It is ordered that the United States be designated and authorized to ap-

---

2. Per Curiam opinion August 4, 1962, not yet reported, see Race Relations Law Reporter, Volume 7, Fall 1962, p. 743.
   The most complete report of the actions and orders taken in connection with this matter is in Volume 7 of Race Relations Reporter; citations are, therefore, generally to this report.

3. On September 13, 1962, the District Court entered its injunction reciting that

"This matter is now before this Court by virtue of the mandate of the United States Court of Appeals for the Fifth Circuit and the mandate of Mr. Justice Black of September 10, 1962, setting aside all stays * * * and putting into effect the mandates of the Court of Appeals for the Fifth Circuit * * * of July 17, 1962. July 27, 1962 and * * * its final order of August 4, 1962 * * *." Race Relations Law Reporter p. 746.

pear and participate as *amicus curiae* in all proceedings in this action before this Court and by reason of the mandates and orders of this Court of July 27, 28, 1962, and subsequently thereto, also before the District Court for the Southern District of Mississippi to accord each court the benefit of its views and recommendations, with the right to submit pleadings, evidence, arguments and briefs and to initiate such further proceedings, including proceedings for injunctive relief and proceedings for contempt of court, as may be appropriate in order to maintain and preserve the due administration of justice and the integrity of the judicial processes of the United States." [4]

4. On September 20, 1962, the United States filed an application for further injunctive orders. This verified petition brought to the attention of this Court the fact that on September 19, 1962, in Meadors et al v. James Meredith et al, the Chancery Court, Second District, Jones County, Mississippi, Cause No. 19365, had issued its injunction against Meredith, the Board of Trustees, various University officials, the United States Department of Justice, the Federal Bureau of Investigation, the Office of the Attorney General of the United States, and all United States Marshals and Deputy Marshals. The order of the State Court enjoined and prohibited such persons "from doing anything or performing any act, the execution of which is intended to enroll and register the Negro, James Meredith, as a student in the University of Mississippi; * * *." [5]

The Government's application also advised the Court of the enactment by the Mississippi Legislature approved by the Governor of Mississippi Senate Bill No. 1501, the effect of which made it a criminal offense for a person against whom any "criminal proceeding is pending" to "* * * attempt * * * to enroll in

any of the institutions" of higher learning specified in the Act.[6] The application likewise informed the Court of the action of the Justice of the Peace Court in Jackson, Mississippi, on September 20, 1962.

On September 20, 1962, this Court (Circuit Judges BROWN, WISDOM and BELL) entered its further injunctive order. It recited that "This matter is now before this Court on Petitions for Orders supplementing this Court's Order of July 28, 1962, to (1) restrain the enforcement of S.B. 1501 * * * ; (2) restrain any compliance with or enforcement of the injunction issued by the Chancery Court of Jones County, Mississippi, dated September 19, 1962 * * ; (3) restrain the arrest of James Meredith on a conviction had in the Justice of the Peace Court in Jackson, Mississippi, on September 20, 1962 * * *." The Court further recited that it "appearing that S.B. 1501; the aforesaid injunction issued by the State Court and the conviction of James Meredith each constitute an interference with and obstruction of this Court's injunction of July 28, 1962." This Court thereupon ordered "that the appellees-respondents, their agents, employees and persons acting in concert with them or persons having actual notice of this order, including law enforcement and public officials in Mississippi, State, County and Municipal * * *" were enjoined and restrained from "(1) enforcing * * * the provisions of S.B. 1501 against James Meredith, or any other persons * * *. (2) taking any steps to effectuate the conviction and sentence on September 20, 1962, in the Justice of the Peace Court in Jackson, Mississippi * * * ; or arresting him or any other persons including federal officials or taking * * * any other action which has the purpose or effect of interfering with the enrollment, of James Meredith * * *. (3) taking or tion issued by the Chancery Court of refraining from taking any action to

4. Also published 7 Race Relations Law Reporter 748.

5. This injunction is reported at 7 Race Relations Law Reporter 749.

6. See 7 Race Relations Law Reporte 750.

comply with or to enforce the injunction Jones County, Mississippi, on September 19, 1962 * * *." The order concluded with this paragraph: "(4) This order is not intended to limit the authority of the District Court to proceed with respect to the matters referred to in paragraphs (1) and (2) of this order.[7]

5. On September 21, 1962, the United States, amicus curiae, filed an application seeking an order to show cause why the Board of Trustees and certain administrative officials of the University should not be held in civil contempt.

This Court (Circuit Judges BROWN, WISDOM and BELL) on September 21, 1962, entered its show cause order. The order recited that it "appearing from the application of the United States, amicus curiae, filed this day, that each of the defendants above named has failed and refused to comply with the terms of this Court's order of July 28, 1962, and are presently persisting in such failure and refusal * * *." Thereupon the Court ordered that the named trustees "appear personally before this Court on September 24, 1962, at 11 a. m. o'clock in the Courtroom of the United States Court of Appeals for the Fifth Circuit in New Orleans, Louisiana, to show cause, if any they have, why they should not be held in civil contempt." The order went on to provide, however, that since the Court was advised that the District Court had ordered the named University administrative officials to show cause and that a hearing on the alleged contempt was then fixed for hearing in the District Court for that day (September 21, 1962), the application to that extent was denied.[8]

6. On September 22, 1962, this Court (Circuit Judges BROWN, WISDOM and BELL) entered its further show cause order. The order recited that it " * * * appearing from the verified petition of the United States of America, that [the named administrative officials of the University of Mississippi] together with the other respondents named in this Court's order of September 21, 1962, have failed and refused, and are now failing and refusing, to comply with this Court's order of July 28, 1962, * * * by failing and refusing to enroll and register, and admit to continued attendance at the University of Mississippi, James Howard Meredith * * *." The Court thereupon ordered the named administrative officials "be made additional respondents to the show cause order of this Court of September 21, 1962, and that they show cause, if any they have, on September 24, 1962 * * *" at New Orleans why they should "not be held in civil contempt by reason of their failure and refusal to obey the order of this Court of July 28, 1962, and the other orders of this Court requiring the respondents to register and enroll and admit to continued attendance at the University of Mississippi James Howard Meredith."

7. By a majority vote of all of the active Judges, this Court convened (Judge CAMERON absent on account of illness) en banc for the hearing of September 24, 1962, at New Orleans. On that hearing the Court heard extensive testimony bearing upon actions of the Board of Trustees, the administrative officials of the University, Governor Ross Barnett and other governmental officials showing that up to that time Meredith, although he had presented himself for admission, had not been admitted to the University as previously ordered by this Court. This evidence included the fact of the Board of Trustees' resolution of September 20, 1962, by which the Board invested Governor Barnett "with the full power, authority, right and discretion of this Board to act upon all matters pertaining to or concerned with the registration or non-registration, admission or non-admission and/or attendance or non-

---

7. The order is published in 7 Race Relations Law Reporter 752.

8. The District Court on September 21, 1962, after hearing found each of the University officials not guilty and discharged the contempt proceedings. 7 Race Relations Law Reporter 754.

attendance of James H. Meredith * * and that a certified copy of this Resolution together with copies of the conflicting injunctions of Honorable S. C. Mize dated September 13, 1962, and Chancellor L. B. Porter dated September 19, 1962 previously served upon the members of this Board, be furnished to the Governor * * * for such course of action as the Governor shall deem legal, fit and proper in the premises." [9] The evidence also included the Governor's published television speech to the people of Mississippi which included the following statement:

" * * * Therefore, in obedience to legislative and constitutional sanction, I interpose the rights of the Sovereign State of Mississippi to enforce its laws and regulate its internal affairs without interference on the part of the Federal Government or its officers and, in my official capacity as Governor of the State of Mississippi, I hereby make this proclamation:

"—Whereas, the United States of America consists of fifty Sovereign States bound together basically for their common welfare; and

"—Whereas, the Constitution of the United States of America provides that each state is sovereign with respect to certain rights and powers; and

"—Whereas, pursuant to the 10th Amendment to the Constitution of the United States, the powers not specifically delegated to the Federal Government are reserved to the several states; and

"—Whereas, the operation of the public school system is one of the powers which was not delegated to the Federal Government, but which was reserved to the respective states pursuant to the terms of the 10th Amendment; and

"—Whereas, we are now face to face with the direct usurpation of this power by the Federal Government through the illegal use of the judicial decree:

"Now, therefore, I, Ross R. Barnett, as Governor of the Sovereign State of Mississippi, by authority vested in me, do hereby proclaim that the operation of the public schools, universities and colleges of the State of Mississippi is vested in the duly-elected and appointed officials of the State of Mississippi and I hereby direct each of said officials to uphold and enforce the laws duly and legally enacted by the Legislature of the State of Mississippi, regardless of this unwarranted and illegal and arbitrary usurpation of power; and to interpose the State Sovereignty and themselves between the people of the state and any body-politic seeking to usurp such power."

In the course of that hearing the President of the Board of Trustees of Higher Learning announced in open court on behalf of himself and the 12 members of the Board "that the Board was now ready and willing to fully perform all things ordered and directed by the former orders of this Court * * *." Likewise, the Registrar of the University of Mississippi "announced in open court that he would be available in Jackson, Mississippi, not later than 1:00 p. m. on September 25, 1962, for the purpose of registering and admitting as a student * * James H. Meredith in accordance with the orders of this Court * * *."

8. At the conclusion of the hearing, the Court en banc entered its order of September 24, 1962.[10]

After reciting the statements by the President of the Board of Trustees and the Registrar quoted in the preceding paragraph, the Court ordered the respondents to "fully and completely comply with all of the terms of the order of this Court dated July 28, 1962, including, but not limited to * * *" specific actions described in subparagraphs a, b, c, d, e. Subparagraph (b) required that

9. This resolution is published at 7 Race Relations Law Reporter 753.

10. The order is published in full at 7 Race Relations Law Reporter 755.

the Board "revoke and rescind the action of the Board taken on September 20, 1962, appointing Ross R. Barnett, * * as the agent of the Board to act upon all matters pertaining to the registration and admission of James H. Meredith." Subparagraph (d) required the Board to instruct the University officials "to register and receive James H. Meredith for actual admission * * *" and attendance at the University. Subparagraph (e) required that the Registrar "be available at Jackson, Mississippi, at the office of the * * * Board of Trustees, at the hours therein specified on September 25, 1962, for the purpose of the registration of the said James H. Meredith and his actual admission to, and the continued attendance thereafter at, the University. The order required counsel for the respondents to advise the Court by 6:00 p. m., September 25, 1962, as to the actions taken to comply with this order.

9. On the evening of September 24, 1962, the Government presented to this Court an application for a temporary restraining order against the State of Mississippi, Ross R. Barnett, Governor, the Attorney General, the Commissioner of Public Safety, two District Attorneys, various Sheriffs, Chiefs of Police, and all Sheriffs of the Counties of Mississippi. At 8:30 o'clock a. m., September 25, 1962, this Court (Chief Judge TUTTLE, Circuit Judges RIVES and WISDOM) entered its temporary restraining order.[11] That order recites that it appeared "from the verified petition of the United States, amicus curiae * * * that the State of Mississippi, Ross R. Barnett, Governor [and the others mentioned] * * * threatened to implement and enforce, unless restrained by order of this Court, the provisions of a Resolution of Interposition * * *, the provisions of § 4065.3 of the Mississippi Code, and a proclamation of Ross R. Barnett invoking the doctrine of Interposition * * *; that Paul G. Alexander has instituted two criminal prosecutions against * * * Meredith on account of the efforts of

* * * Meredith to enroll in the University * * * pursuant to the orders of this Court; that A. L. Meador, Sr. * * * on September 19, 1962, instituted in the Chancery Court of the Second Judicial District of Jones County, Mississippi, a civil action against * * Meredith to prevent him from attending the University * * *; that on September 20, 1962, James Howard Meredith, while seeking to enroll at the University * * * in Oxford, Mississippi, pursuant to the orders of this Court, was served with a writ of injunction issued by the Chancery Court of Lafayette County, Mississippi at the instance of Ross R. Barnett, enjoining James Howard Meredith from applying to or attending the University of Mississippi; that on September 20, 1962, the State of Mississippi enacted Senate Bill 1501, the effect of which is to punish James Howard Meredith should he seek enrollment in the University * * *." The Court proceeded to find that "the effect of the conduct of the defendants herein named in implementing the policy of the State of Mississippi as proclaimed by Ross R. Barnett will necessarily be to prevent the carrying out of the orders of this Court and of the District Court for the Southern District of Mississippi; and that the acts and conduct of the defendants named in the petition will cause immediate and irreparable injury to the United States consisting of the impairment of the integrity of its judicial processes, the obstruction of the due administration of justice, and the deprivation of rights under the Constitution and laws of the United States * * *." On the basis of this, the Court entered its temporary restraining order as to the State of Mississippi, Ross R. Barnett, the Attorney General and others restraining them from:

1. Arresting, attempting to arrest, prosecuting or instituting any prosecution against James Howard Meredith under any statute, ordinance, rule or regulation whatever, on account of his attending, or seek-

11. This restraining order is set out at length in 7 Race Relations Law Reporter 756.

ing to attend, the University of Mississippi;

2. Instituting or proceeding further in any civil action against James Howard Meredith or any other persons on account of James Howard Meredith's enrolling or seeking to enroll, or attending the University of Mississippi;

3. Injuring, harassing, threatening or intimidating James Howard Meredith in any other way or by any other means on account of his attending or seeking to attend the University of Mississippi;

4. Interfering with or obstructing by any means or in any manner the performance of obligations or the enjoyment of rights under this Court's order of July 28, 1962 and the order of the United States District Court for the Southern District of Mississippi entered September 13, 1962, in this action, and

5. Interfering with or obstructing, by force, threat, arrest or otherwise, any officer or agent of the United States in the performance of duties in connection with the enforcement of, and the prevention of obstruction to, the orders entered by this Court and the District Court for the Southern District of Mississippi relating to the enrollment and attendance of James Howard Meredith at the University of Mississippi; or arresting, prosecuting or punishing such officer or agent on account of his performing or seeking to perform such duty.

IT IS FURTHER ORDERED that Paul G. Alexander and J. Robert Gilfoy be temporarily restrained from proceeding further, serving or enforcing any process or judgment, or arresting James Howard Meredith in connection with the criminal actions against him in the Justice of the Peace Court of Hinds County, Mississippi.

IT IS FURTHER ORDERED that A. L. Meador, Sr., be temporarily restrained from taking any further action or seeking to enforce any judgments entered in the case of A. L. Meador, Sr., v. James Meredith, et al.

IT IS FURTHER ORDERED that Ross R. Barnett be temporarily restrained from enforcing or seeking to enforce against James Howard Meredith, any process or judgment in the case of State of Mississippi, Ex Rel. Ross Barnett, Governor v. James H. Meredith.

10. Later that same night, September 25, 1962, this Court (Circuit Judges RIVES, WISDOM and GEWIN) entered an order requiring Ross R. Barnett to appear "personally before this Court on September 28, 1962, at 10:00 o'clock in the Courtroom of the United States Court of Appeals for the Fifth Circuit, * * * New Orleans, Louisiana, to show cause, if any he has, why he should not be held in civil contempt of the temporary restraining order entered by the Court this day." [12]

This order recited the matters occurring in open court on September 24, and the orders heretofore described issued to the Board of Trustees and the administrative officials of the University and the issuance earlier that day of the temporary restraining order. The order then recited that it "appearing from the verified application of the United States, amicus curiae herein, that on the afternoon of this day Ross R. Barnett, having been served with a copy of the temporary restraining order * * * having actual knowledge of the terms of that order, deliberately prevented James H. Meredith from entering the office of the Board of Trustees in Jackson, Mississippi at a time when James H. Meredith was seeking to appear before Robert B. Ellis in order to register * * * and that by such conduct Ross R. Barnett did willfully interfere with and obstruct James H. Meredith in the enjoyment of his

12. This order is reported at 7 Race Relations Law Reporter 759.

rights under this Court's order of July 28, 1962, and did willfully interfere with and obstruct Robert B. Ellis in the performance of his obligations under this Court's order of July 28, 1962, all in violation of the terms of the temporary restraining order entered by the Court this day."

11. On the next day, September 26, this Court (Circuit Judges RIVES, BROWN and WISDOM) entered a similar order to show cause addressed to Lieutenant Governor Paul B. Johnson, Jr. fixing the time of hearing for Saturday, September 29, 1962, at New Orleans.[13]

This order recited that it "appearing from the verified application of the United States, amicus curiae herein, that Paul B. Johnson, Jr. * * * after receiving actual and constructive notice of the terms of this Court's temporary restraining order of September 25, 1962, and while acting in concert and active participation with Ross R. Barnett, * * prevented James H. Meredith from entering the campus of the University of Mississippi * * * and did thereby prevent James H. Meredith from enrolling in and attending the University * * *" and with the purpose of interfering with this Court's previous orders.

12. On September 28, 1962, this Court sitting en banc (Judge CAMERON not sitting) heard the order to show cause as to Ross R. Barnett. It heard witnesses in open court including documentary evidence consisting of moving picture newsreel pictures of the occurrences by Ross R. Barnett during the efforts of James H. Meredith to enter the offices of the University of Mississippi at Jackson, Mississippi, for the purpose of registering and attending the University. This evidence included a copy of the terms of the Governor's proclamation

addressed to James H. Meredith on September 25, 1962.[14] It proclaimed:

"I, Ross R. Barnett, Governor of the State of Mississippi, having heretofore by proclamation, acting under the police powers of the State of Mississippi, interposed the sovereignty of this State on September 20, 1962, denied to you, James H. Meredith, admission to the University of Mississippi under such proclamation and for such reasons, do hereby finally deny you admission to the University of Mississippi."

At the conclusion of these hearings on September 28, the Court entered its order, findings of fact and conclusions of law and judgment of civil contempt.[15]

The order recited that though required to appear in person, Ross R. Barnett failed to appear or respond in person or by counsel, but that upon hearing the evidence, it made its findings of fact based thereon, as follows:

1. Since this Court entered its order of July 28, 1962, and the District Court for the Southern District of Mississippi entered its order on September 13, 1962, requiring the admission of James H. Meredith to the University of Mississippi, Ross R. Barnett, as Governor of the State of Mississippi, has issued a series of proclamations calling upon all officials of the state to prevent and obstruct the carrying out of the Court's orders with respect to the admission of James H. Meredith to the University. Two of these proclamations were issued by Ross R. Barnett on September 24 and September 25, 1962.

2. On September 25, 1962, this Court entered its temporary restraining orders restraining Ross R. Barnett from interfering with or ob-

13. This order is published at 7 Race Relations Law Reporter 760.

14. This proclamation is published in 7 Race Relations Law Reporter 759.

15. This order is set out in full in 7 Race Relations Law Reporter 761. Petition for writ of certiorari as to this order was denied by the Supreme Court in February, 1963, 372 U.S. 916, 83 S.Ct. 722, 9 L. Ed.2d 723.

structing in any manner or by any means the enjoyment of rights or the performance of obligations under this Court's order of July 28, 1962 and the order of the District Court of September 13, 1962.

3. At approximately 4:30 P.M. on September 25, 1962, Ross R. Barnett, having full knowledge of the existence and terms of this Court's temporary restraining orders, went to the office of the Board of Trustees of Institutions of Higher Learning to Jackson, Mississippi at a time when James H. Meredith was due to appear at the office to be enrolled as a student in the University of Mississippi, pursuant to the order of this Court. When James H. Meredith arrived at the office and sought to enter for the purpose of enrolling, Ross R. Barnett deliberately prevented him from entering and told him that his application for enrollment was denied by Ross R. Barnett.

4. On September 26, 1962, James H. Meredith sought to enter the campus of the University of Mississippi in Oxford, Mississippi. He was prevented from entering by Paul B. Johnson, Jr., Lieutenant Governor of the State of Mississippi, acting pursuant to the instructions and under the authorization of Ross R. Barnett.

5. The conduct of Ross R. Barnett in preventing James H. Meredith from enrolling as a student in the University of Mississippi has been with the deliberate and announced purpose of preventing compliance with the orders of this and other federal courts.

On the basis of these findings, this Court concluded that "Ross R. Barnett is in contempt of the temporary restraining orders entered by this Court on September 25, 1962," and it thereupon "ordered, adjudged and decreed that: Ross R. Barnett is in civil contempt * * *; that such contempt is continuing; * *,"

and thereafter civil sanctions were imposed in the following terms:

" * * * Ross R. Barnett shall be committed to and remain in the custody of the Attorney General of the United States and shall pay a fine to the United States of $10,000 per day unless on or before Tuesday, October 2nd, 1962 at 11:00 A.M. he shows to this Court that he [is] fully complying with the terms of the restraining orders, and that he has notified all law enforcement officers and all other officers under his jurisdiction or command:

"(a) To cease forthwith all resistance to and interference with the orders of this Court and the District Court for the Southern District of Mississippi;

"(b) To maintain law and order at and around the University and to cooperate with the officers and agents of this Court and of the United States in the execution of the orders of this Court and of the District Court for the Southern District of Mississippi to the end that James H. Meredith be permitted to register and remain as a student at the University of Mississippi under the same conditions as apply to all other students."

Judges JONES, GEWIN and BELL dissented from that part of the judgment imposing a fine upon Governor Barnett.

13. On Saturday, September 29, 1962, this Court (Circuit Judges RIVES, BROWN and WISDOM) heard the order to show cause addressed to Lieutenant Governor Paul B. Johnson, Jr., and after hearings and findings of fact entered its order holding Paul B. Johnson, Jr. in contempt and imposing civil sanctions.[16] This order and the sanctions imposed were stated as follows:

"Paul B. Johnson, Jr. is in civil contempt of the temporary restraining order of this Court entered on September 25, 1962 upon application of the United States, amicus curiae,

---

16. This order is published at 7 Race Relations Law Reporter 762.

that such contempt is continuing and that Paul B. Johnson, Jr. shall pay a fine to the United States of $5,000.00 per day unless on or before October 2, 1962 at 11:00 A.M. he shows to this Court that from and after the time of the issuance of this order he has been, and is, in full compliance with the terms of the restraining order, that he intends to do so in the future and that he will, during any periods of time that he is acting for or on behalf of, or in the name, place and stead of, or with the authority or power of, or as Governor of the State of Mississippi, notify all law enforcement officers and all other officers under his jurisdiction or command:

"(a) To cease forthwith all resistance to and interference with the orders of this Court and the District Court for the Southern District of Mississippi;

"(b) To maintain law and order at and around the University and to cooperate with the officers and agents of this Court and of the United States in the execution of the orders of this Court and of the District Court for the Southern District of Mississippi to the end that James H. Meredith shall be permitted to register and remain as a student at the University of Mississippi under the same conditions as apply to all other students. ·

"In the event that Paul B. Johnson, Jr., while acting for, or on behalf of, or in the name, place or stead of, or with the authority or power of, or as Governor of the State of Mississippi fails at any time to take steps set forth in sub-paragraphs (a) and (b) he shall, on a finding of such fact by the Court, be committed to the custody of the Attorney General and shall pay a fine to the United States of $10,000.00 per day, such daily fine and imprisonment to continue during such period as he fails to purge himself of such contempt."

14. On October 2, 1962, pursuant to the time fixed in the contempt order of September 28, 1962, Governor Ross R. Barnett appeared before this Court through his counsel. In answer to questions from the Court, counsel stated that Governor Barnett was in full compliance with the Court's orders and would fully comply with the orders of the Court in the future to the extent to which he was able to do so. Upon this representation being made, the matter was continued until October 12, 1962, for further hearing before the Court en banc.

15. On October 12 in New Orleans the Court en banc (Judges HUTCHESON and CAMERON not sitting) held a further hearing on whether Governor Ross R. Barnett and Paul B. Johnson, Jr. had purged themselves. Submitted also was the motion filed by the State of Mississippi to dissolve the temporary restraining order and to dismiss the pending contempt proceedings. In connection with the question of whether he had purged himself of the civil contempt as previously adjudged, Respondent Barnett did not appear in person on October 12, but again he appeared by counsel. Counsel offered no proof, either by affidavit, oral testimony, or otherwise, bearing on the conduct of respondent following the contempt judgment. However, on that date counsel for Governor Barnett retracted their statements that Governor Barnett intended in the future fully to comply so far as he was able with the orders of the Court. Moreover, on October 19th Governor Barnett filed a response through his counsel to which he attached a statement which he had publicly delivered on October 17. The substance and effect of this statement, and thus the substance and effect of Respondent's posture before this Court is that Governor Barnett will, and must, reserve the right to determine whether compliance with, and enforcement of, this Court's orders are consistent with his duties, rights

and obligations as Governor of the State of Mississippi.[17]

However, the record shows that he did, in fact, between the contempt order of the Court on September 28, 1962, and the hearing on October 2, 1962, cease the physical resistance to the order of the Court directing the admission of James H. Meredith as a student at the University, which he had previously interposed personally and through other state officials. On the 30th day of September, 1962, the President of the United States issued a proclamation in the following language:

"Whereas the Governor of the State of Mississippi and certain law enforcement officers and other officials of that State, and other persons, individually and in unlawful

assemblies, combinations and conspiracies, have been and are willfully opposing and obstructing the enforcement of orders entered by the United States District Court for the Southern District of Mississippi and the United States Court of Appeals for the Fifth Circuit; and

"Whereas such unlawful assemblies, combinations and conspiracies oppose and obstruct the execution of the laws of the United States, impede the course of justice under those laws and make it impracticable to enforce those laws in the State of Mississippi by the ordinary course of judicial proceedings; and

"Whereas I have expressly called the attention of the Governor of Mississippi to the perilous situation

17. The full statement follows:

I have never taken the position that I have purged myself, nor have I authorized anyone to take such a position on my behalf. My position is that I have upheld the law and am not in contempt of any Court.

It is my position that my first obligation, as the Governor of Mississippi, is to my oath of office to uphold the Constitution and Laws of Mississippi and the Constitution of the United States, and to preserve law and order. The people of Mississippi built this University and their schools at great sacrifice. These properties and their control belong to the State, and the Supreme Court of the United States has expressly so ruled in Waugh v. Board of Trustees of University of Mississippi, 237 U.S. 589, 35 S.Ct. 720, 59 L.Ed. 1131.

All of the actions that I have taken were taken because of my duty to obey my oath as Governor, and as long as I am the Governor of this State, all actions that I will take in the future will be in obedience of this oath.

I conscientiously believe that it is my duty, as Governor, deliberately, solemnly, and fully, and free from the control or interference of anyone to exercise, according to my own judgment and my own discretion, the duties the people have entrusted to me as their Governor. I would not be faithful to my oath of office, should I surrender to any Federal or other Courts the rights to exercise those discretionary powers the law has placed in me, to maintain law and order, to pre-

vent a breach of the peace, violence or bloodshed, and my discretion must remain free. I shall ever and eternally stand for the exercise of my own discretion in my own right, and shall repudiate the right of anyone to take that discretion away from me and exercise it in my behalf. The Constitutions of the United States and the State of Mississippi provide for the separation of the Judicial, Executive and Legislative functions. The people have never given any right to any one of these departments to act for the other.

If any act that I have done as Governor or any act I shall do as Governor in the future causes any person to believe that I have violated his right, the Courts are open to challenge me again in a proper court proceeding. Mississippi has not yet had her day in Court.

My position is based upon the Constitution of the United States and the Constitution and Laws of the State of Mississippi. My every decision in this matter has been formed after careful and deliberate consideration of what I believe to be the law. I have not changed my position in the slightest degree. I shall never apologize for anything I have said or done in this regard because I have acted in good faith in discharging the duties entrusted to me. My conscience is clear. I am moved only by deep and abiding affection for the welfare of all the people of Mississippi. I shall ever keep the faith that the people of Mississippi have entrusted to me as their Governor.

that exists and to his duties in the premises, and have requested but have not received from him adequate assurances that the orders of the courts of the United States will be obeyed and that law and order will be maintained;

"Now, therefore, I, John F. Kennedy, President of the United States, under and by virtue of the authority vested in me by the Constitution and laws of the United States, including Chapter 15 of Title 10 of the United States Code, particularly sections 332, 333 and 334 thereof, do command all persons engaged in such obstructions of justice to cease and desist therefrom and to disperse and retire peacefully forthwith.

"In witness whereof, I have hereunto set my hand and caused the seal of the United States of America to be affixed.

"Done at the city of Washington this 30th day of September in the year of our Lord Nineteen Hundred and Sixty-Two, and of the independence of the United States of America the One Hundred and Eighty-Seventh.

"/s/ JOHN F. KENNEDY"

The President also issued an executive order as a result of which a large force of United States Marshals and a part of the Army and Air Forces of the United States were employed for the enforcement of our orders.

16. At that hearing the Court also considered the motion to dissolve the temporary restraining order and the motions of the United States to enter a preliminary injunction. The Court again heard and received all of the evidence that had previously been offered at the hearing of September 28 and 29.

17. On October 19, 1962, a majority of this Court en banc (Judges HUTCHESON and CAMERON not sitting and Judges GEWIN and BELL stating that they thought the matter should be remanded to the District Court for further proceedings) entered its preliminary injunction. The seven members of the Court unanimously concluded:

"The posture of this case at the time this motion for temporary injunction and the accompanying motion for temporary restraining order were filed, is that this Court had issued its injunction, above referred to, prohibiting the officials of the University and the Trustees of the Institutions of Higher Learning of the State of Mississippi from interfering with the admission of James H. Meredith and his continuance as a student in the University of Mississippi, and also prohibiting certain of the defendants now before the Court from further prosecuting criminal proceedings against the said Meredith; whereupon, it was alleged in this petition, the State of Mississippi, through its official state policy, pursuant to actions of its Legislature, and through the actions of its Governor by proclamation, and all of the other respondents, were then engaged in actively frustrating the execution of this Court's injunction against the officials of the University. This proceeding, therefore, is purely ancillary to the original lawsuit, and this Court has ample power to proceed against any party, including the State of Mississippi, which is shown to be engaged in a wilful, intentional effort to frustrate this Court's injunction.

"The motion to dissolve the restraining order and the motion to dismiss the contempt proceedings by the State of Mississippi are, therefore, DENIED.

"The ruling just stated equally disposes of the contention made by the respondents that this Court is now powerless to issue the temporary injunction. We, therefore, hold that the Court has the power to issue the injunction against the persons not previously named as defendants in the main suit to prevent their active interference with this Court's injunction.

"The evidence adduced before this Court, neither attacked by respondents nor contended by them to be legally insufficient to warrant the granting of the relief sought, establishes the following facts:

"The State of Mississippi, Ross R. Barnett, Governor of Mississippi, Joe T. Patterson, Attorney General of Mississippi, T. B. Birdsong, Commissioner of Public Safety of Mississippi, Paul G. Alexander, District Attorney of Hinds County, William R. Lamb, District Attorney of Lafayette County, J. Robert Gilfoy, Sheriff of Hinds County, J. W. Ford, Sheriff of Lafayette County, William D. Rayfield, Chief of Police of the City of Jackson, James D. Jones, Chief of Police of the City of Oxford, Walton Smith, Constable of the City of Oxford, threaten to implement and enforce, unless restrained by order of this Court, the provisions of a Resolution of Interposition adopted by the Mississippi Legislature, the provisions of Section 4065.3 of the Mississippi Code, and a Proclamation of Ross R. Barnett invoking the doctrine of interposition with respect to the enforcement of the orders of this Court in this case; that Paul G. Alexander has instituted two criminal prosecutions against James Howard Meredith on account of' the efforts of James Howard Meredith to enter the University of Mississippi pursuant to the orders of this Court; that on September 20, 1962, James Howard Meredith, while seeking to enroll at the University of Mississippi in Oxford, Mississippi, pursuant to the orders of this Court, was served with a writ of injunction issued by the Chancery Court of Lafayette County, Mississippi, at the instance of Ross R. Barnett, enjoining James Howard Meredith from applying to or attending the University of Mississippi; that on September 20, 1962 the State of Mississippi enacted Senate Bill 1501, the effect of which is to punish James Howard Meredith should he seek enrollment in the University of Mississippi; that the effect of the conduct of the defendants herein named to implementing the policy of the State of Mississippi, as proclaimed by Ross R. Barnett will necessarily be to prevent the carrying out of the orders of this Court and of the District Court for the Southern District of Mississippi; and that the acts and conduct of the defendants named in the petition will cause immediate and irreparable injury to the appellant Meredith and to the United States consisting of the impairment of the integrity of its judicial processes, the obstruction of the due administration of justice, and the deprivation of rights under the Constitution and laws of the United States unless prevented by an order of the Court."

18. Thereafter this Court (Judges HUTCHESON and CAMERON not sitting) entered its order of November 15, 1962, which ordered that "The Attorney General of the United States and such Attorneys in the Department of Justice as he may designate, be and they hereby are appointed by the Court to institute and to prosecute criminal contempt proceedings against the said Ross R. Barnett and Paul B. Johnson, Jr., pursuant to Rule 42b of the Federal Rules of Criminal Procedure and the order of this Court of September 18, 1962." The order recited that it appeared "from the pleadings filed and the oral testimony and documentary evidence already adduced in the proceedings on the petitions for temporary restraining order and for preliminary injunction and the civil contempt proceedings heretofore instituted against Ross R. Barnett and Paul B. Johnson, Jr. that proceedings should be instituted against the said Ross R. Barnett and Paul B. Johnson, Jr., to determine whether they are, or either of them is, guilty of criminal contempt of the orders of this court;"

19. Thereafter the United States through the Attorney General filed on

December 21, 1962, its application for an order requiring Ross R. Barnett and Paul B. Johnson, Jr. to show cause why they should not be held in criminal contempt. This application alleged, in four numbered counts, certain conduct of Barnett and Johnson which were thereafter made the basis of this Court's order to show cause hereafter set out in Paragraph 21.

20. On January 3, 1963, the Court entered an order constituting the Court en banc for the consideration of all matters relating to criminal contempt proceedings against Ross R. Barnett and Paul B. Johnson, Jr. (Judge HUTCHESON "is excused from participating in the hearings and decisions of this Court by reason of conditions of his health").

21. Thereafter this Court en banc (Judges CAMERON and GEWIN dissenting) entered its order to show cause on January 4, 1963. The show cause order contained the following charges and order:

Probable cause has been made to appear from the application of the Attorney General filed December 21, 1962, in the name of and on behalf of the United States that on September 25, 1962, Ross R. Barnett, having been served with and having actual notice of this Court's temporary restraining order of September 25, 1962, wilfully prevented James H. Meredith from entering the offices of the Board of Trustees of the University of Mississippi in Jackson, Mississippi, and thereby deliberately prevented James H. Meredith from enrolling as a student in the University pursuant to this Court's order of July 28, 1962; that on September 26, 1962, Paul B. Johnson, Jr., acting under the authorization and direction of Ross R. Barnett, and as his agent and as an agent and officer of the State of Mississippi, and while having actual notice of the temporary restraining order of September 25, 1962, wilfully prevented James H. Meredith from entering the campus of the University of Mississippi

in Oxford, Mississippi, and thereby deliberately prevented James H. Meredith from enrolling as a student in the University, pursuant to the orders of this Court; that on September 27, 1962, Ross R. Barnett and Paul B. Johnson, Jr. wilfully failed to take such measures as were necessary to maintain law and order upon the campus of the University of Mississippi and did, instead, direct and encourage certain members of the Mississippi Highway Safety Patrol, Sheriffs and deputy Sheriffs and other officials of the State of Mississippi to obstruct and prevent the entry of James H. Meredith upon the campus of the University that day; that on September 30, 1962, Ross R. Barnett, knowing of the planned entry of James H. Meredith upon the campus of the University of Mississippi, knowing that disorders and disturbances had attended and would attend such entry, and knowing that any failure of the Mississippi Highway Patrol to take all possible measures for the maintenance of peace and order upon the campus could and would result in interferences with and obstructions to the carrying out of the Court's order of July 28, 1962, wilfully failed to exercise his responsibility, authority, and influence as Governor to maintain law and order upon the campus of the University of Mississippi; and that all of said acts, omissions and conduct of Ross R. Barnett and Paul B. Johnson, Jr., were for the purpose of preventing compliance with this Court's order of July 28, 1962, and of the similar order of the United States District Court for the Southern District of Mississippi, entered on September 13, 1962, and were in wilful disobedience and defiance of the temporary restraining order of this Court entered on September 25, 1962.

IT IS ORDERED that Ross R. Barnett and Paul B. Johnson, Jr., appear before this Court in the

courtroom of the United States Court of Appeals for the Fifth Circuit in New Orleans, Louisiana, on February 8, 1963, at 9:30 o'clock a. m., to show cause, if any they have, why they should not be held in criminal contempt, and should either of them at said time and place show such cause, either by pleading not guilty to the charges contained in the application of the United States, or by other means, he shall thereafter appear before this Court for hearing upon said charges at a time and place to be fixed by the Court.

The Chief Judge of this Court then directed the Clerk, for convenience in handling all matters relating to the criminal contempt proceedings to assign a new number, No. 20,240, and a new caption, "United States v. Ross R. Barnett and Paul B. Johnson, Jr.", to the case.

Pursuant to notice from the Court, respondents filed nine motions and the State of Mississippi filed one motion to be considered at the hearing. These motions may be briefly described as follows:

1. Motion and plea of the State of Mississippi to dismiss the proceedings as being in violation of the Tenth and Eleventh Amendments to the Constitution.

2. Motions of Barnett and Johnson to dismiss all proceedings in original Action No. 20,240 for lack of process.

3. First alternative motions of Barnett and Johnson to dismiss original proceedings in cause No. 20,240 and all contempt proceedings in cause No. 19,475 based on improper and insufficient application.

4. Second alternative motions of Barnett and Johnson to dismiss original proceedings in cause No. 20,240 for lack of venue or jurisdiction.

5. Third alternative motions of Barnett and Johnson to dismiss all pending proceedings in Criminal Contempt for lack of Grand Jury presentment or indictment.

6. Demands of Barnett and Johnson for trial by jury.

7. Fourth alternative motions of Barnett and Johnson to dismiss all proceedings in original action No. 20,240 for lack of jurisdiction to summons a constitutional jury.

8. Motions of Barnett and Johnson for severance.

9. Motion of Johnson to strike the third charge contained in the order to show cause of date January 4, 1963.

10. Motion of Barnett to strike the third and fourth charges contained in the order to show cause of date January 4, 1963.

After oral argument a majority of the members of the Court, as indicated on the order of the Court filed this date, sustained the motion of the United States to strike the motion and plea numbered 1, overruled or denied motions numbered 2, 3, 4, 5 and 7, decided to certify the question raised by the motion numbered 6, and the motions numbered 8, 9 and 10 are not now passed on.

Consideration has been given to attaching as Exhibits certified photostatic copies of each and all of the pleadings, motions and orders referred to in the foregoing statement. The Court is of the view that this would be unnecessarily cumbersome since the summary or paraphrased statement of any such pleadings, motions and orders is not intended to modify them in any way, and the Supreme Court will, wherever appropriate, consider the exact terms of the pleadings, motions and orders which are incorporated by reference and which have been referred to in the opinions filed herein by the several Judges.

TUTTLE, Chief Judge, and RIVES, BROWN and WISDOM, Circuit Judges.

The United States entered the case of Meredith, et al. v. Fair, et al., 5 Cir., 313 F.2d 534, pursuant to this Court's order of September 18, 1962, "that the United

States be designated and authorized to appear and participate as amicus curiae in all proceedings in this action before this Court and by reason of the mandates and orders of this Court of July 27, 28, 1962, and subsequently thereto, also before the District Court for the Southern District of Mississippi, to accord each Court the benefits of its views and recommendations, with the right to submit pleadings, evidence, arguments and briefs *and to initiate such further proceedings, including proceedings for injunctive relief and proceedings for contempt of court,* as may be appropriate in order to maintain and preserve the due administration of justice and the integrity of the judicial processes of the United States." (Emphasis supplied.)

In its order of November 15, 1962, this Court ordered "that the Attorney General of the United States, and such attorneys in the Department of Justice as he may designate, be and they are hereby appointed by the Court to institute and to prosecute criminal contempt proceedings against the said Ross R. Barnett and Paul B. Johnson, Jr., pursuant to Rule 42(b) of the Federal Rules of Criminal Procedure and the order of this Court of September 18, 1962."

On December 21, 1962, the United States applied to this Court "for an order requiring Ross R. Barnett and Paul B. Johnson, Jr., to show cause, if any they have, why they should not be held in criminal contempt of this Court for wilfully disobeying the temporary restraining order entered on September 25, 1962, in United States v. State of Mississippi, et al., No. 19,475, 5 Cir., 313 F.2d 534."

On January 3, 1963, this Court ordered that Ross R. Barnett and Paul B. Johnson, Jr. appear on February 8, 1963 and "show cause, if any they have, why they should not be held in criminal contempt either by pleading not guilty to the charges contained in the application of the United States, or by other means, and that they thereafter appear before this Court for hearing upon said charges at a time and place to be fixed by this Court."

On February 1, 1963, a number of motions and demands were filed in this case, captioned substantially as follows:

A.   Motion and Plea of the State of Mississippi.

1.   Motions of Barnett and Johnson to Dismiss All Proceedings in Original Action No. 20,240 for Lack of Process.

2.   First Alternative Motions of Barnett and Johnson to Dismiss Original Proceedings in cause No. 20,240 and all Contempt Proceedings in cause No. 19,475 based on Improper and Insufficient Application.

3.   Second Alternative Motions of Barnett and Johnson to Dismiss Original Proceedings in cause No. 20,240 for Lack of Venue or Jurisdiction.

4.   Third Alternative Motions of Barnett and Johnson to Dismiss all Pending Proceedings in Criminal Contempt for Lack of Grand Jury Presentment or Indictment.

5.   Fourth Alternative Motions of Barnett and Johnson to Dismiss All Proceedings in Original Action No. 20,240 for Lack of Jurisdiction to summons a Constitutional Jury.

6.   Demands of Barnett and Johnson for Trial by Jury.

R1.   Motions of Barnett and Johnson for Severance.

R2.   Motion of Johnson to Strike the Third Charge contained in the Order to Show Cause of date January 4, 1963.

R3.   Motion of Barnett to Strike the Third and Fourth Charges contained in the Order to Show Cause of date January 4, 1963.

Briefs in support of and in opposition to the said motions and demands were filed, and on February 8, 1963 this Court en banc heard day-long oral arguments. At that time this Court granted the motion of the United States to strike mo-

tion A, that is the "Motion and Plea of the State of Mississippi," but considered Mississippi's brief filed in support of that motion as a brief filed by an amicus curiae, and invited counsel for the State as amicus curiae to make oral argument before the Court. Thereafter, this Court denied the motions heretofore listed as numbers 1, 2, 3, 4 and 5, and reserved its rulings on the motions listed as numbers R1, R2 and R3.

We four Judges are in favor of denying the demands listed as number 6; that is, the demands of the defendants for trial by jury. [Since this Court was unable to dispose of those demands by majority vote, we join in certifying to the Supreme Court of the United States the question thus presented. We state briefly the reasons for our view that the demands of the defendants for trial by jury should be denied.]

Logically and legally connected with the said demands, on the disposition of which our brothers do not agree with us, are the motions, listed as number 4, to dismiss the proceedings in criminal contempt for lack of grand jury presentment or indictment which all of our brothers with the exception of Judge CAMERON have joined us in denying. In all of the books and records, so far as counsel have been able to advise us or as we have discovered, there is not a single precedent of any criminal contempt of court proceeding *ever* having been prosecuted by grand jury presentment or indictment. In Green v. United States, 1958, 356 U.S.

165, 187, 78 S.Ct. 632, 645, 2 L.Ed.2d 672, the Supreme Court held that " * * * it is clear that criminal contempts, although subject, as we have held, to sentences of imprisonment exceeding one year, need not be prosecuted by indictment under the Fifth Amendment." [1]

It is elementary that the court against which a contempt is committed has exclusive jurisdiction to punish for such contempt. In re Debs, 1895, 158 U.S. 564, 565, 595, 15 S.Ct. 900, 910, 39 L.Ed. 1092; [2] Ex parte Bradley, 1868, 74 U.S. 364, 377, 7 Wall. 364, 19 L.Ed. 214. To the principle that every court possesses the power to punish for criminal contempt committed against it, this Court of Appeals is no exception. Such power is "inherent." See In re Debs, supra, 158 U.S. at 596, 15 S.Ct. 900, 39 L.Ed. 1092. Further, such power is expressly conferred by Title 18 U.S.C. § 401, which provides in part pertinent to the present case:

"A court of the United States [3] shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

* * * * * *

"(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

The defendants assert that this Court "is without statutory power or authority to summons a constitutional jury." While lack of a statutory procedure to

---

1. See also, Goldfine v. United States, 1 Cir. 1959, 268 F.2d 941, cert. denied, 363 U.S. 842, 80 S.Ct. 1608, 4 L.Ed.2d 1727; United States v. DeSimone, 2 Cir. 1959, 267 F.2d 741, cert. denied, 361 U.S. 827, 80 S.Ct. 74, 41 L.Ed.2d 70, cert. granted to vacate as moot, 361 U.S. 125, 80 S.Ct. 253, 4 L.Ed.2d 167.

2. It is interesting to note that the Supreme Court quotes with approval from an opinion of the Supreme Court of Mississippi as follows:
   "In Watson v. Williams, 36 Miss. 331, 341, it was said: 'The power to fine and imprison for contempt, from the earliest history of jurisprudence, has been regarded as a necessary incident and attribute

of a court, without which it could no more exist than without a judge. It is a power inherent in all courts of record, and coexisting with them by the wise provisions of the common law. A court without the power effectually to protect itself against the assaults of the lawless, or to enforce its orders, judgments, or decrees against the recusant parties before it, would be a disgrace to the legislation, and a stigma upon the age which invented it.' "

3. There can be no doubt that "court of the United States" includes this Court of Appeals. See 28 U.S.C.A. § 451; 10 Words and Phrases, Perm. ed., pp. 273–275, and pocket supplement.

obtain a jury would not satisfy a demand for a jury if one existed as a matter of constitutional right, the complete absence of any such mechanism is strong evidence that Congress has not impliedly recognized any such right as a statutory one.

The defendants insist, however, that they do have a constitutional right of trial by jury under one or more of the following provisions of the Constitution:

ARTICLE III, § 2, Par. 3.

"The Trial of all Crimes * * * shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed * * *."

AMENDMENT V.

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury * * * nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb * * *."

AMENDMENT VI.

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, * * * and to be informed of the nature and cause of the accusation * * *."

AMENDMENT VII.

"In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."

In support of their insistence on a constitutional right of trial by jury, the defendants have advanced not a single argument which has not already been considered and ruled adversely to their views by the Supreme Court of the United States. As lately as 1958, in Green v. United States, supra, the Supreme Court held that criminal contempts are not subject to jury trial as a matter of constitutional right. We four judges consider that decision as binding upon us. Further, with deference to the dissenting Justices, it is our opinion that the views of the majority of the Supreme Court as there expressed are soundly based not only on precedent, as must be conceded, but also on reason and logic. It would be threshing old straw for us to say more on the question of constitutional right.

There being no constitutional right to trial by jury, we look next to the statutes. As has already been commented, the defendants contend, and we agree, that this Court "is without statutory power or authority to summons a constitutional jury." Further, as has been mentioned, this Court possesses the power to punish for criminal contempt confirmed by Title 18 U.S.C. § 401. It would then be strange indeed to find that some other statute grants to the defendants a right of trial by jury, and we find no such statute.

It would appear that, prior to the occasions here involved there had never been such willful disobedience or resistance to an order, judgment or decree of a Court of Appeals of the United States as to make necessary the institution of original proceedings in criminal contempt. We do find such a proceeding for contempt of the Supreme Court of the United States, viz.: United States v. Shipp, 1906, 203 U.S. 563, 27 S.Ct. 165, 51 L.Ed. 319; 1909, 214 U.S. 386, 29 S.Ct. 637, 53 L.Ed. 1041; 1909, 215 U.S. 580, 30 S.Ct. 397, 54 L.Ed. 337. That proceeding was disposed of by the Supreme Court without the intervenion of a jury. We find in the opinions of the Court no discussion of any right of trial by jury, but it clearly appears from the following part of the "Argument for the United States," as reported in 203 U.S. 564, that the subject was not overlooked:

"There is no right to a trial by jury in contempt cases. Eilenbecker v. Plymouth County, 134 U.S. 31 [10 S.Ct. 424, 33 L.Ed. 801]; Ex parte Terry, 128 U.S. 289 [9 S.Ct.

77, 32 L.Ed. 405]; Ex parte Savin, 131 U.S. 267 [9 S.Ct. 699, 33 L.Ed. 150]; Ex parte Cuddy, 131 U.S. 280 [9 S.Ct. 703, 33 L.Ed. 154]; Interstate Commerce Commission v. Brimson, 154 U.S. 447, 489 [14 S.Ct. 1125, 38 L.Ed. 1047]; In re Debs, 158 U.S. 564 [15 S.Ct. 900, 39 L.Ed. 1092]."

In directing the Attorney General of the United States to institute and prosecute criminal contempt proceedings against Ross R. Barnett and Paul B. Johnson, Jr. "pursuant to Rule 42(b) of the Federal Rules of Criminal Procedure," there was no intimation that the proceedings be instituted or prosecuted in a district court. Those rules apply to all criminal proceedings in the United States Courts of Appeals. Rule 54(a) (1), Federal Rules of Criminal Procedure. Further, "Rule 42 of the Federal Rules of Criminal Procedure is no innovation. It simply makes 'more explicit' the long-settled usages of law governing the procedure to be followed in contempt proceedings." Brown v. United States, 1959, 359 U.S. 41, 51, 79 S.Ct. 539, 547, 3 L.Ed.2d 609. See also, Offutt v. United States, 1954, 348 U.S. 11, 13, 14, 75 S.Ct. 11, 99 L.Ed. 11; Sacher v. United States, 1952, 343 U.S. 1, 7, 72 S.Ct. 451, 96 L.Ed. 717.

Rule 42(b) provides that, "The defendant is entitled to a trial by jury in any case in which an act of Congress so provides." That provision, and the acts of Congress to which it refers, constitute clear recognitions of the absence of any constitutional right of the defendants to trial by jury.

The only statutes upon which the defendants rely are Sections 402 and 3691 of Title 18, United States Code, which read as follows:

"Any person, corporation or association willfully disobeying any lawful writ, process, order, rule, decree, or command of any district court of the United States or any court of the District of Columbia, by doing any act or thing therein, or thereby forbidden, if the act or thing so done be of such character as to constitute also a criminal offense under any statute of the United States or under the laws of any State in which the act was committed, shall be prosecuted for such contempt as provided in section 3691 of this title and shall be punished by fine or imprisonment, or both.

"Such fine shall be paid to the United States or to the complainant or other party injured by the act constituting the contempt, or may, where more than one is so damaged, be divided or apportioned among them as the court may direct, but in no case shall the fine to be paid to the United States exceed, in case the accused is a natural person, the sum of $1,000, nor shall such imprisonment exceed the term of six months.

"This section shall not be construed to relate to contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice, nor to contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States, but the same, and all other cases of contempt not specifically embraced in this section may be punished in conformity to the prevailing usages at law." 18 U.S. C.A. § 402.

"Whenever a contempt charged shall consist in willful disobedience of any lawful writ, process, order, rule, decree, or command of any district court of the United States by doing or omitting any act or thing in violation thereof, and the act or thing done or omitted also constitutes a criminal offense under any Act of Congress, or under the laws of any state in which it was done or omitted, the accused, upon demand therefor, shall be entitled to trial by a jury, which shall conform as near

as may be to the practice in other criminal cases.

"This section shall not apply to contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice, nor to contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States." 18 U.S.C.A. § 3691.

By explicit language, Section 3691 is limited to contempts which "consist in willful disobedience of any lawful writ, process, order, rule, decree, or command of *any district court* of the United States." [4] (Emphasis supplied.) It has no application to a proceeding for contempt against a Court of Appeals. Section 402 refers to "[a]ny person, corporation or association willfully disobeying any lawful writ, process, order, rule, decree, or command of *any district court of the United States or any court of the District of Columbia * * *.*" (Emphasis supplied.)

The defendants argue that "any court of the District of Columbia" as used in Section 402 includes the United States Court of Appeals for the judicial circuit composed of the District of Columbia. See Sections 41 and 43 of Title 28, United States Code. As appears from the "Historical and Revision Notes" appended to 18 U.S.C.A. § 402, that section was derived from the Clayton Act of October 15, 1914, c. 323, 38 Stat. 730, which had conferred extensive jurisdiction under the antitrust laws on the district courts of the United States and the courts of the District of Columbia. It seems clear to us that "any court of the District of Columbia" as used in Section 402 does not include the United States Court of Appeals for the District of Columbia Circuit.

Let us, however, *arguendo* assume that point to be in accord with the contention of the defendants. By some sort of "tail wags dog" argument the defendants would then extend "any court of the District of Columbia" to include all of the other ten United States Courts of Appeals. That remarkable feat is accomplished simply by waving the wand of Article IV, Section 2, Clause 1 of the Constitution of the United States, which reads: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." The short answer to that argument is that, "Section 2 of Article IV is inapplicable to the District of Columbia. It is a limitation upon the powers of the states and in no way affects the powers of Congress over the territories and the District of Columbia." Duehay v. Acacia Mut. Life Ins. Co., 70 App.D.C. 245, 1939, 105 F.2d 768, 775, 124 A.L.R. 1268. See also, Martinsen v. Mullaney, D.C.Alaska, 1949, 85 F.Supp. 76, 79, 12 Alaska 455.

It seems to us beyond controversy that there is no act of Congress granting to a defendant charged with criminal contempt for disobedience or resistance to a "lawful writ, process, order, rule, decree, or command" (18 U.S.C.A. § 401(3)) of a United States Court of Appeals a right of trial by jury. So clearly does that appear that we make extremely brief our discussion of another sound reason why Sections 402 and 3691 do not apply to the contempts charged against the defendants; viz.: that such contempts are charged to have been committed in disobedience of a lawful writ, etc. "entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States." Sections 402 and 3691 of Title 18, United States Code.

This Court's order of September 18, 1962, from which we have quoted at the beginning of this opinion, constituted the United States as something more than a mere amicus curiae. Pursuant to that order, the United States was " * * * acting under the authority and direction of the court to take such action

4. The term "district court of the United States" means one of the courts constituted by Chapter 5 of Title 28, United States Code.—See 28 U.S.C.A. § 451; 13 Words & Phrases, Perm. ed. p. 41.

as was necessary to prevent its orders and judgments from being frustrated and to represent the public interest in the due administration of justice." Faubus v. United States, 8 Cir., 1958, 254 F.2d 797, 805, cert. denied, 358 U.S. 829, 79 S.Ct. 49, 3 L.Ed.2d 68.[5]

Upon a verified petition filed by the United States, this Court on September 25, 1962, issued its order temporarily restraining, among others, Ross R. Barnett "and all persons in active concert or participation" with him from:

"1. Arresting, attempting to arrest, prosecuting or instituting any prosecution against James Howard Meredith under any statute, ordinance, rule or regulation whatever, on account of his attending, or seeking to attend, the University of Mississippi;

"2. Instituting or proceeding further in any civil action against James Howard Meredith or any other persons on account of James Howard Meredith's enrolling or seeking to enroll, or attending the University of Mississippi;

"3. Injuring, harassing, threatening or intimidating James Howard Meredith in any other way or by any other means on account of his attending or seeking to attend the University of Mississippi;

"4. Interfering with or obstructing by any means or in any manner the performance of obligations or the enjoyment of rights under this Court's order of July 28, 1962 and the order of the United States District Court for the Southern District of Mississippi entered September 13, 1962, in this action, and

"5. Interfering with or obstructing, by force, threat, arrest or otherwise, any officer or agent of the United States in the performance of duties in connection with the enforcement of, and the prevention of obstruction to, the orders entered by this Court and the District Court for the Southern District of Mississippi relating to the enrollment and attendance of James Howard Meredith at the University of Mississippi; or arresting, prosecuting or punishing such officer or agent on account of his performing or seeking to perform such duty."

Ross R. Barnett and Paul B. Johnson, Jr. now stand under this Court's order "to show cause, if any they have, why they should not be held in criminal contempt," and are required to plead "to the charges contained in the application of the United States." Each count of those charges is based upon "criminal contempt of this Court for wilfully disobeying the temporary restraining order entered on September 25, 1962, in United States v. State of Mississippi, et al., No. 19475, 5 Cir., 313 F.2d 534."

The contempts are charged to have been committed in disobedience of a temporary restraining order entered in a suit or action brought or prosecuted in the name of, or on behalf of, the United States. Each of the two Sections 402 and 3691 of Title 18, United States Code provides that it shall not relate or be applicable to such contempts.

To summarize: 1) the Supreme Court has definitely held that criminal contempts are not subject to jury trial as a matter of constitutional right; 2) there is no Act of Congress entitling the defendants to a trial by jury for contempt

5. See also, Bush v. Orleans Parish School Bd., E.D.La.1960, 188 F.Supp. 916, aff'd, 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806 (1961); Bush v. Orleans Parish School Bd., E.D.La.1960, 190 F.Supp. 861, aff'd sub nom.; New Orleans v. Bush, 1961, 366 U.S. 212, 81 S.Ct. 1091, 6 L.Ed.2d 239; Bush v. Orleans Parish School Board, E.D.La.1961, 191 F.Supp. 871, aff'd, 368 U.S. 11, 82 S.Ct. 119, 7

L.Ed.2d 75 (1961); Hall v. St. Helena Parish School Board, E.D.La.1961, 197 F.Supp. 649, aff'd 368 U.S. 515, 82 S.Ct. 529, 7 L.Ed.2d 521; Allen v. State Bd. of Educ., No. 2106 (E.D.La.), M/S; Angel v. State Bd. of Educ., No. 1658 (E.D.La.), M/S; Davis v. East Baton Rouge Parish School Bd., (E.D.La.), 219 F.Supp. 876.

against a Court of Appeals; 3) the defendants are not entitled to à trial by jury because they are charged with willful disobedience of a restraining order entered in a suit or action brought or prosecuted in the name of, or on behalf of the United States.

In our opinion this Court has no duty or power to accord the defendants a trial by jury, but is under the clear duty itself to proceed without unnecessary delay to try the defendants for the criminal contempts charged.

## COMMENTS AS TO FOUR SEPARATE OPINIONS

In order to facilitate preparation of the various opinions, the foregoing part of this opinion was first circulated. Thereafter each of the other four Judges circulated his opinion. After consideration of their four separate opinions, we think the following comments appropriate.

Two main contentions seem to run throughout the several opinions though stated in various ways. The first is, as Judge BELL succinctly phrases it, "in short, we must abide the statutes applicable to the district court when we act as a district court."

This is apparently based on the fact that in the orders of July 27–28 and again in the restraining order of September 25, this Court issued its own injunction. From this it is presumably argued that since district courts ordinarily issue injunctions, our essential nature changes from an appellate to a trial court when

we issue an order with traditional *nisi prius* characteristics. In other words, the character of a court is fixed, not by the organic statute establishing it, but by the nature of the order issued at any given time.

This ignores at least two things. First, and paramount, is the fact that Congress has specifically clothed this Court in the disposition of cases before it with the express power to issue whatever orders are appropriate. 28 U.S.C.A. § 2106.[6] Second, this court, as have most others, has not felt itself bound as a matter of power to the mechanism of a direction to the district court. Ordinarily this will be done. But frequently in run-of-the-mill cases, we have reversed and *rendered* decisions for one of the parties. If it may be done for a money judgment, it may likewise be done as to equitable relief. The statute and the practice reflect the flexible standard of that which is *appropriate*. What is *needed* is assuredly encompassed in what is appropriate. And it is now way too late to urge that injunctive orders of this Court were not needed to effectuate the holding in this Court's opinion of June 25 in the Meredith case,[7] 305 F.2d 343.

The second main theme is closely akin to the first. The argument is made that the Government chose this Court rather than the District Court as the forum in which to assert its interest. From that it is argued that while §§ 402 and 3691 each speak in terms of "any district court of the United States," we must

---

6. "§ 2106. Determination. The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

To this must be added the all writs statute, 28 U.S.C.A. § 1651.

7. With the successive stays of Judge Cameron (vacated by our several orders), the District Court either was, or thought itself, unable to take action. Unless this

Court's decision of June 25 was to be frustrated, affirmative action was needed then and there. It had to come from and *through* this Court, and this Court alone. Hence the injunctive orders of July 27–28 were imperatively required.

Similarly this Court en banc unanimously on October 19, 1962, entered its preliminary injunction (Judges Bell and Gewin dissenting on one limited phase). In most unmistakable terms, it reaffirmed that the temporary injunctive orders of September 25 and 26 against the Governor and Lieutenant Governor, respectively, were each appropriate and essential.

read this as though Congress expressly specified a Court of Appeals as well. This is so because otherwise the Government, by artful, purposeful choice, could defeat a statutory right accorded contempt defendants had it gone into the District Court instead. Of course at the bottom of this argument is the assertion made at many times and in many ways that there was no need for this Court to have issued its injunctive orders of July 27–28 in the continuing terms employed, and that there was no need for it to enter its temporary restraining orders of September 25–26. A branch of that contention apparently is that once the District Court entered its injunction on September 13, our interest came to an end.

But our order was a continuing one until, in effect, Meredith should be admitted to and continued as a student on the same basis as any other student. The facts of record in this Court show without contradiction that until Sunday, September 30, 1962, Meredith was not admitted to the University and, indeed, he was prevented from admission by direct personal interposition of the Governor and Lieutenant Governor. During all of the events which occurred between September 13 and September 30, it was this Court's orders which were being wilfully disobeyed. While these actions amounted to disobedience of the District Court's injunction as well, this Court was hardly so powerless that to secure obedience to its own orders it would have to refer the matter to the District Court. At the time of the issuance of the temporary restraining orders of September 25–26, Meredith was not yet in the University. By the terms of this Court's order, the injunction issued by it continued at least until Meredith was admitted. It was this Court, then, whose orders were being frustrated.

While the Government took the initiative in seeking leave to enter the case as so-called amicus curiae with the specified powers, this Court must assume the full responsibility for the Government's presence thereafter. For only by the entry of the order of September 18 could the United States have participated. This was in effect a recognition that the sovereign's presence was needed by this Court to effectuate its decrees and to maintain and uphold the rule of law. All of this became doubly clear when in the course of hearings on the various civil contempt matters, it became evident that injunctive orders ancillary to the main case had to be entered against the Governor and Lieutenant Governor. And what was then understood to be a necessity calling for temporary relief was reaffirmed when the Court en banc on October 19, 1962, reaffirmed that action by the issuance of its preliminary injunction which is still in force and effect.

It was this Court which made its ruling of June 25. It was this Court which made its orders of July 27–28. It was this Court whose orders were being disobeyed. It was this Court which needed the assistance of the sovereign and called upon it to take appropriate steps for the execution of the decrees of this Court. The rights of these Defendants are not then to be measured by what might have been claimed had these asserted acts of defiance taken place as to the District Court alone.

Moreover, this Court had ancillary jurisdiction to effectuate its own decrees. To that end it was certainly appropriate that the Court in effect call on the sovereign's law officer to initiate and prosecute the necessary proceedings. The Court's power to conduct the proceedings ancillary to the main cause to protect and effectuate its decrees is well settled. Toledo Scale Co. v. Computing Scale Co., 7 Cir. 1922, 281 F. 488, aff'd 261 U.S. 399, 43 S.Ct. 458, 67 L.Ed. 719 (1923); Sawyer v. Dollar, 1951, 89 U.S.App.D.C. 58, 190 F.2d 623, vacated as moot, 344 U.S. 806, 73 S.Ct. 7, 97 L.Ed. 628 (1952); Merrimack River Savings Bank v. City of Clay Center, 1911, 219 U.S. 527, 31 S.Ct. 295, 55 L.Ed. 320. And, of course, this Court continued to have jurisdiction even after its mandate of July 28. By the terms of its affirmative injunction, it reserved jurisdiction, and even without ex-

press reservation the Court retained power to conduct further proceedings to protect its decrees after its mandate had issued. United States v. United States District Court, 1948, 334 U.S. 258, 68 S.Ct. 1035, 92 L.Ed. 1351; National Brake Co. v. Christensen, 1921, 254 U.S. 425, 41 S.Ct. 154, 65 L.Ed. 341; Root Refining Co. v. Universal Oil Products Co., 3 Cir. 1948, 169 F.2d 514, cert. denied, Universal Oil Products Co. v. William Whitman Co., 335 U.S. 912, 69 S. Ct. 481, 93 L.Ed. 444; Sawyer v. Dollar, supra.

Since the Court had this power the argument expressed or implied, particularly in the opinions of Judges Cameron and Gewin, as to the amicus status of the Government does not detract from the validity of the Court's orders. The argument seems to be that the Government cannot be an amicus because it has taken, and continues to take, a partisan position. But a Court empowered to take ancillary action to effectuate its decree is hardly to be left to the assistance of one having the neutral position of a traditional amicus. Within its sound discretion it is for the Court to determine whether the presence of the United States having the status of a quasi-party is needed. Here, the Court on September 18 recognized that the United States was needed not only to "accord each Court the benefit of its views" but more important "to initiate such further proceedings, including proceedings for injunctive relief and proceedings for contempt of court, as may be appropriate in order to maintain and preserve the due administration of justice and the integrity of the judicial processes of the United States." This was not, as some of the opinions suggested (see, e. g., Judge Bell's opinion, Part V), the Government obtaining through a permissive court order that which it is asserted Congress has declined to allow. This was not the Government instituting a suit or intervening on behalf of private litigants to vindicate the civil rights of

private suitors. It was the sovereign intervening in the sovereign's court to uphold and maintain the sovereign's rule of law. Congress never meant to withhold that power. If the effect of that is to make the United States a party then at least one problem arises, and one consequence flows from it.

The problem is whether the Government could become a party in this manner. The Federal Rules of Civil Procedure are not generally applicable to the Court of Appeals. F.R.Civ.P. 1. Hence, failure to follow F.R.Civ.P. 24 and 6(d) does not imperil either the order of September 18 or the temporary restraining orders of September 25. It is then only a question of assuring the parties thereby affected—here, Governor Barnett and Lieutenant Governor Johnson—of procedural due process by according them a fair opportunity to challenge the right of the Government to come into the case and the power or propriety of the Court's allowing the Government to do so. These defendants have repeatedly challenged these actions, and the Court—as it did en banc as recently as October 19—has rejected their contentions.[8]

Once it is established or assumed that the Government is a "party" and procedural fairness has been accorded, as was the case here, the consequence is to add further weight to the proposition that a jury trial is not available since the alleged contempt is for violation of an order "entered in an action brought or prosecuted in the name of, or on behalf of, the United States."

Perhaps some brief comment should also be made as to the suggestion made in Judge CAMERON's opinion that the panel of Judges BROWN, WISDOM and DeVANE (District Judge sitting by designation) was not a duly constituted court. By the practice traditionally followed in the Fifth Circuit, the panel which has heard the case and written the opinion has the responsibility for

8. Allowance of the intervention of the Government was, so we are informed, one of the errors urged in the petition for certiorari in State of Mississippi v. Meredith, 1962, cert. denied, 372 U.S. 916, 83 S.Ct. 722, 9 L.Ed.2d 723.

handling all matters growing out of such disposition. The so-called summer panels [9] are designated as a matter of administrative convenience to handle motions, emergency matters, and the like in proceedings not theretofore submitted to a panel. Hence, all of the actions taken by the panel of Judges BROWN, WISDOM and DeVANE in July and August were properly for that panel and none other. Indeed, it was for this reason among others that such panel vacated the several stays entered by Judge CAMERON.

Judge CAMERON'S similar suggestions made as to the temporary restraining orders of September 25 (Chief Judge TUTTLE, Judges RIVES and WISDOM), the show cause order directed to Governor Barnett at 8:20 P.M., September 25 (Judges RIVES, WISDOM and GEWIN), the show cause order of September 26 directed to Lieutenant Governor Johnson (Judges RIVES, BROWN and WISDOM), and the other orders of the same dates are likewise answered. Further, while the Court was still assembled en banc on the evening of September 24, it was informed that the United States had an application for temporary restraining orders which it desired to present. As it was then late in the evening and several of the Judges were engaged in drafting orders to effectuate rulings made that day, the full Court (Judge Cameron not then sitting) agreed that issuance and entry of these ancillary orders could be done by panels of three judges. In addition, the Court en banc thereafter unanimously reaffirmed each of these orders as its own; thus, for example the order of September 28 adjudging Governor Barnett in civil contempt recited that, "This Court * * * on September 25 issued orders requiring Ross R. Barnett to appear * * * to

show cause," and in paragraph two expressly found as a fact that "on September 25, 1962 this Court entered its temporary restraining orders." As to Lieutenant Governor Johnson the Court, that same day, September 28, agreed that the contempt hearing fixed for September 29 should be held and appropriate orders entered by a panel (Judges RIVES, BROWN and WISDOM). And by the order of October 19 granting a preliminary injunction following the en banc hearing thereon held October 12, the Court again reaffirmed all of these orders.

We remain of the opinion that this Court has jurisdiction and that the defendants are not entitled to a trial by jury.

Before TUTTLE, Chief Judge, and RIVES, CAMERON, JONES, BROWN, WISDOM, GEWIN and BELL, Circuit Judges.

CAMERON, Circuit Judge.

Before us stand the highest two executive officers of a Sovereign State of this Union, charged, by direction of this Court, with the criminal offense of contumacious violation of its injunctive order. Never before has such a charge been brought by or in a Court of Appeals since its establishment by Congress in 1891, against either a state officer or a private citizen. It behooves us, I am confident we all agree, to be very sure that we have jurisdiction to issue and enforce such a drastic and unprecedented order involving the most delicate relationships between the State and Federal Governments, and that our procedures are in strict conformity with the Constitution and laws which govern our actions.

In the circumstances here present, I think that a heavy burden rests upon those who oppose defendants' demand for a jury trial to demonstrate, by the clear-

---

9. This Circuit has had summer panels for the last two summers only. They are empanelled in accordance with the direction of the Judicial Council of the Circuit as evidenced by the minutes of the meeting of the Council held in Atlanta, Georgia, on October 17, 1960, as follows:

"IV. The Chief Judge submitted to the Council his suggestion that, during the summer recess of this Court, stand-by panels be designated for each month of the summer—July, August and September. After a discussion that suggestion was adopted."

est possible showing, that their position is sound in all requisite respects.

I do not think it is sound. The opinions of Judges JONES, GEWIN and BELL are to me unanswerable. I desire to set down a few reasons for my conviction that the position of the opposition is unsound, hoping to avoid too much repetition, and that what I write may supplement what my Brothers have so well said.

### I.

I think it is important to place our court order which the defendants are charged with having violated in its correct context and to be sure that it is considered in proper perspective. Specifically, the defendants are charged by this Court with having wilfully violated a restraining order issued September 25, 1962, at 8:30 A.M., over the signatures of Judges TUTTLE, RIVES and WISDOM, which refers to, and is based in large part on, an order ostensibly of another panel, dated July 28, 1962. It is my opinion that neither of these orders was legally entered and that neither is an order the violation of which can be punished in the present proceeding.

I will discuss first the order of July 28th, which I think is void *inter alia* because it was not entered by an assembled court and because the mandate had been sent to the United States District Court for the Southern District of Mississippi, which court had exclusive jurisdiction of the action brought by Meredith against Fair, et al. (No. 19475), 5 Cir., 313 F.2d 534.

This Court filed its opinion on June 25, 1963, Meredith et al. v. Fair et al., 305 F.2d 343, reversing the decision of United States District Judge S. C. Mize, which denied the relief sought, and remanded the case to the District Court

with directions that it issue an injunction as prayed for and that it retain jurisdiction. The mandate was in these words (By our order dated Feb. 15, 1958 "the mandate provided for in Rule 32 shall consist of a certified copy of the Judgment entered * * * ") :

"This cause coming on to be heard on the transcript of the record from the United States District Court for the Southern District of Mississippi and was argued by counsel;

"On consideration whereof, it is now here ordered and adjudged by this Court that the judgment of said District Court in this cause be, and the same is hereby, reversed; and that this cause be, and it is hereby, remanded to the said District Court with directions that an injunction issue as prayed for in the complaint, the District Court to retain jurisdiction; * * *

DeVane, District Judge, Dissents.

June 25, 1962

Issued July 17, 1962."

The mandate so mailed July 17th was received by the clerk of the District Court in Jackson, Mississippi on the morning of July 18th, and was forthwith delivered to Honorable Harold Cox, Chief Judge of that court.

Thereafter, the appellees applied to the Judge of this Court resident in the State of Mississippi and senior member of the summer panel designated for that week (who was not a member of the panel rendering the opinion which formed the basis of the mandate) for the stay of the execution and enforcement of such judgment to enable the party aggrieved to obtain a writ of certiorari from the Supreme Court. Said Judge granted the stay in obedience to the provisions of 28 U.S.C.A. § 2101(f),[1] and the stay was

---

1. "In any case in which the final judgment or decree of any court is subject to review by the Supreme Court on writ of certiorari, the execution and enforcement of such judgment or decree may be stayed for a reasonable time to enable the party aggrieved to obtain a writ of certiorari from the Supreme Court. The stay

may be granted by a judge of the court rendering the judgment or decree or by a justice of the Supreme Court * * *."

The stays thus issued by the single Judge of this Court were, in my opinion, valid, and could not be set aside by any panel or any other Judges of the Court; and the attempts to vacate the stay, or

served upon the court to which the mandate was directed and by which it would be executed and enforced and upon all other interested parties.

On July 20th, the clerk of this Court, by direction of one or more of the Judges of the panel which had decided the case, called upon the parties to file legal memoranda on the question *inter alia* whether the mandate should be recalled.

July 27th, an order was entered by said Judges headed "Order Vacating Stay, Recalling Mandate, and Issuing New Mandate Forthwith." The order was nine pages long and dealt chiefly with the right of the Court of Appeals to recall its mandate; it vacated and set aside the stay order of July 18th, recalled the mandate and issued a preliminary injunction couched in broad terms against the defendants-appellees.[2] On the following day, July 28, 1962, a further order was so entered reciting that, on July 26th [sic], an opinion and judgment had been entered vacating the stay and amending and reissuing the mandate, which order enjoined the appellees and a wide group of others to admit plaintiff James H. Meredith to the University of Mississippi, prohibited any act of discrimination against him, and ordering the District Court to enter an injunction in line with the amended instructions.[3]

These "orders" of July 27th and July 28th were issued, presumably, under au-

thority of this language from Rule 32 of this Court:

"A mandate once issued will not be recalled except by the court and to prevent injustice."

This language, in my opinion, refers to an *assembled court* duly empaneled and authorized by law to hear and decide cases. Cf. Cowden v. Addis, 5 Cir., 1932, 55 F.2d 230. These orders were not considered or entered by an assembled court. For this reason they are, in my opinion, void. Other considerations which might bear on this question are that the entire Court had been in recess for many weeks, an order had been entered on the minutes of the books of the Court on July 19th recessing the Court for thirty days; regular vacation panels were appointed by the Chief Judge at the beginning of the summer recess and the order had been duly inscribed on the records of the Court, and the panel for the week beginning July 23, 1962 were Judges CAMERON, BROWN and WISDOM.

After the entry of the foregoing "orders" further stays of execution and enforcement of the several orders and mandates were granted by the same Judge; and, with the same informalities, an order was filed with the clerk by the original panel of Judges BROWN, WISDOM and DeVANE bearing date of August 4th (at which time the regularly constituted vacation panel consisted of Judges

---

any of them, were, with deference, void and without effect.

2. " * * * this Court herewith issues its own preliminary injunction * * * "

3. The Order of July 28th contained this language:
"Now, therefore, the following injunctive order is issued:
ORDER
"Pending such time as the District Court has issued and enforced the orders herein required and until such time as there has been full and actual compliance in good faith with each and all of said orders by the actual admission of plaintiff-appellant to, and the continued attendance thereafter at the University of Mississippi on the

same basis as other students who attend the University, the defendants, their servants, agents, employees, successors and assigns, and all persons acting in concert with them, as well as any and all persons having knowledge of the decree are expressly:
1.
"Ordered to admit the plaintiff James H. Meredith, to the University of Mississippi, on the same basis as other students at the University, under his applications heretofore filed, which are declared to be continuing applications, such admission to be immediate or, because of the second summer session having started, such admission to be in September, at Meredith's option, and without further registration * * * "

CAMERON, JONES and BELL), referring to the entry of the several previous orders and stays and concluding thus:

"While it might appear to be unnecessary to enter any further orders, the Court now enters this order to make certain that the record is kept straight.

"For the reasons pointed out in our opinion orders of July 27, 1962, the stay or stays granted by Judge Cameron on July 28 and July 31, 1962, were unauthorized, erroneous and improvident and each of them is hereby vacated and set aside forthwith. All of our orders of *July 17, July 27 and this date,* therefore, continue in full force and effect and require full and immediate obedience and compliance." [Emphasis added.]

From this it seems that the Judges constituting the original panel which heard the Meredith case were "straightening up" the record for the appeal so that it might include everything which was intended to be included; and that the order of July 28th, which now lies at the base of the criminal contempt charges, was eliminated from those orders which "continue in full force and effect."

Finally, it seems clear to me that when Mr. Justice Black—exercising such jurisdiction as was vested in him—vacated and set aside all of the stays which had been granted, the situation reverted back to its status at the time the first stay was granted. At that time, the mandate first above copied, being a certified copy of the judgment of this Court entered June 25th, was officially in the hands of the District Court. In his opinion dated September 10, 1962, Mr. Justice Black discussed the various orders and stays coming after the service of the original mandate and stated:

"I am therefore of the opinion that all the stays issued by Judge Cameron should be and they are hereby vacated, that the *judgment and mandate* of the Court of Appeals should be obeyed, and that pending final action by this Court on the petition for certiorari the respondents should be and they are hereby enjoined from taking any steps to prevent enforcement of the Court of Appeals' *judgment and mandate.*" [Emphasis added.]

The order entered by Mr. Justice Black on the same date refers likewise to the stays which had been entered on July 18th, July 28th, July 31st, and August 6th, and vacates those stays, and the paragraph so doing concludes: " * * * and that the *judgment and mandate* of said court shall be effective immediately." The final paragraph of the order reads:

"It is further ordered that the respondents be, and they are hereby, enjoined from taking any steps to prevent enforcement of the United States Court of Appeals' *judgment and mandate* pending final action by this Court on the petition for writ of certiorari now on the docket." [Emphasis added.]

Copies of the opinion and orders of Mr. Justice Black was served by mail upon the clerk of the District Court and were marked filed September 12, 1962. On the following day, September 13th, Judge Mize entered a judgment carrying out fully the mandate of this Court and the order of Mr. Justice Black. As far as I know, the content of the District Judge's judgment has never been challenged by anyone.

It is my opinion, therefore, based upon the foregoing facts, that the judgment of September 13th of the District Court is in all respects valid and binding upon the parties and that it is the only injunctive order which is, or ever has been, legal and binding, and that sole power is, and always has been since July 17, 1962, vested in said District Court.

## II.

It is further my opinion that the order entered by this Court en banc dated January 4, 1963 is unenforceable for the independent reason that the temporary restraining order issued September 25, 1962, by a panel composed of Chief

Judge TUTTLE and Judges RIVES and WISDOM, is void and unenforceable for the reasons set forth *infra;* and that the order now before us, based as it is upon said void restraining order of September 25th, can have and has no validity or legal status.

These are the facts. On September 24, 1962, this Court entered an order for an in banc hearing of the case of Meredith, et al. v. Fair, et al in these words:

#### "ORDER

"Pursuant to Rule 25a of this Court and Section 46(c) of Title 28 U.S.C., it is ordered by a majority of the Circuit Judges in active service that the above entitled and numbered cause on this Court's orders to show cause be considered by the Court en banc on Monday, September 24, 1962 at 11:00 A.M."

This order was signed by all of the Circuit Judges in active service on this Court except one who was excused for physical reasons. As stated in the order, it was entered pursuant to 28 U.S.C.A. § 46, which reads in part as follows:

"(a) Circuit judges shall sit on the court and its divisions in such order and at such times as the court directs. * * *

"(c) Cases and controversies shall be heard and determined by a court or division of not more than three judges, unless a hearing or rehearing before the court in banc is ordered by a majority of the circuit judges of the circuit who are in active service. * * *"

Pursuant to the foregoing order by which a hearing before the Court in banc was ordered, the Court assembled in New Orleans and conducted in banc the following proceedings inter alia:

(1) On September 24, 1962, it heard extended evidence, including an announcement by the Registrar of the University of Mississippi that he would be available in Jackson, Mississippi September 25, 1962 for the purpose of registering and admitting as a student of the University of Mississippi James H. Meredith in accordance with the order of this Court. It ordered that the members of the Board of Trustees comply fully with all of the terms of the Court's order of July 28, 1962, that it revoke and rescind the action taken September 20, 1962 appointing Ross R. Barnett, Governor, as its agent to act on all matters pertaining to such registration; and it required that the Board notify all University employees that all of the orders of this Court with respect to Meredith were to be complied with. It further ordered the Chancellor and other administrative officers of the University to admit Meredith to admission and continued attendance at the University as provided in the order of July 28th; that Registrar Ellis be present from one to four o'clock P.M. September 25, 1962 at the office of the Board of Trustees in Jackson, Mississippi to register Meredith; and it ordered that respondents report their actions to the Court in New Orleans not later than four o'clock P.M. of September 25th.

(2) September 25, 1962, at 3:40 P.M., the Court entered an order, in which Judge Gewin declined to join, amending the order of September 24th so as to permit the report of the respondents to be made before 6:00 P.M. of September 25, 1962.

(3) On September 28, 1962, it entered its findings of fact and conclusions of law and judgment of civil contempt against Ross R. Barnett (Judges JONES, GEWIN and BELL dissenting in part) holding Barnett in civil contempt of the temporary restraining orders of the Court entered September 25, 1962 declaring the contempt to be continuing, committing said Barnett to the custody of the Attorney General and to the payment of a fine of $10,000.00 per day, unless on or before Tuesday, October 2, 1962 at 11:00 A.M. he shows the Court that he is fully complying with the terms of the restraining orders and that he has notified all law enforcement officers and all other officers to cease resistance to the orders of the Court and of the District Court for the Southern District of Mis-

sissippi, to maintain law and order at the University, and reserving the right to assert criminal contempt charges against respondents and to enter other orders as may be appropriate.

The findings of fact were based upon the verified application of the United States and of appellant Meredith and evidence heard in the absence of respondent Barnett. The basis for the findings was asserted to be the orders entered on September 25, 1962.

(4) On October 2, 1962, it entered an order vacating and dismissing the citation for civil contempt as to the President and each of the members of the Board of Trustees of Institutions of Higher Learning, and finding that the Chancellor and the other executive officers of the University had not been in civil contempt of the Court. The order also continued until October 12th the matter of the entry of further orders as to the civil contempt of Governor Ross R. Barnett or Lieutenant Governor Paul B. Johnson, Jr., as well as the motion for preliminary injunction and all other motions pending in the cause.

(5) On October 12, 1962, the Court heard evidence (upon which it entered an order dated October 19) on its order to show cause why a preliminary injunction should not be granted, on the motion filed by the State of Mississippi to dissolve the temporary restraining order entered September 25, 1962, and to dismiss the proceedings which had resulted in a judgment of civil contempt against Ross R. Barnett. The Court found that the proceedings it was engaged in hearing "are purely ancillary to the original law-suit, and this Court has ample power to proceed against any party, including the State of Mississippi, which is shown to be engaged in a willful, intentional effort to frustrate this Court's injunction." The Court denied the motion to dissolve the restraining order and to dismiss the contempt proceedings and issued an injunction against the Attorney General of Mississippi and eight other persons, struck down several proceedings which had been commenced in the courts of Mississippi, and enjoined in very sweeping terms all persons who received actual notice of the injunction from interfering with, injuring, harassing or intimidating James Howard Meredith in connection with his attendance as a student in the University of Mississippi.[4]

(6) On November 15, 1962, it entered an order, Judge Gewin dissenting, reciting that the United States as amicus curiae had filed on November 6, 1962, a memorandum suggesting that the taking of further evidence concerning the actions of Ross R. Barnett would be appropriate with respect to the issue of whether he had purged himself of civil contempt; that "it appeared to the Court from the pleadings filed and the oral testimony and documentary evidence already adduced in the proceedings on the petitions for temporary restraining order and for preliminary injunction and the civil contempt proceedings heretofore instituted against Ross R. Barnett and Paul B. Johnson, Jr., that proceedings should be instituted against the said Ross R. Barnett and Paul B. Johnson, Jr. to determine whether they are, or either of them is, guilty of criminal con-

---

4. The following language used in this injunction of October 19, 1962 is taken largely from criminal statutes carried as 18 U.S.C.A. §§ 1509 and 1503 and is copied here for reference at a later place in this opinion.

"4. Interfering with or obstructing by any means or in any manner the performance of obligations or the enjoyment of rights under this Court's order of July 28, 1962, and the order of the United States District Court for the Southern District of Mississippi entered September 13, 1962, in this action, and

"5. Interfering with or obstructing by force, threat, arrest or otherwise, any officer or agent of the United States in the performance of duties in connection with the enforcement of, and the prevention of or obstruction to, the orders entered by this Court and the District Court for the Southern District of Mississippi relating to the enrollment and attendance of James Howard Meredith at the University of Mississippi; * * * "

tempt of the orders of this Court * * " The Court concluded the order by appointing the Attorney General of the United States "and such attorneys in the Department of Justice as he may designate" to institute and prosecute criminal contempt proceedings against said Barnett and Johnson "pursuant to Rule 42(b) of the Federal Rules of Criminal Procedure and the order of this Court of September 18, 1962."

(7) On December 21, 1962, the representatives of the United States responded to that order and filed an application for an order requiring Ross R. Barnett and Paul B. Johnson, Jr. to show cause why they should not be held in criminal contempt. The caption bears the number of the Meredith case and the caption both of Meredith, Appellant v. Fair, et al, Appellees, and United States of America, Amicus Curiae and Petitioner, v. State of Mississippi, et al, Defendants. The application is nine pages long, and charges the two defendants with various violations of this Court's restraining order of September 25, 1962 in disobedience of this Court's order of July 28, 1962 and the District Court's order of September 13, 1962. Much of the language used in the charge is taken verbatim from the sections of the Criminal Code referred to in footnote 4, supra.

Acting on said application, this Court entered its order dated January 4, 1963 and marked filed January 5, 1963, reciting that a majority of the Circuit Judges in active service had voted to consider the matter by the Court in banc, that a court in banc is designated for the consideration of all matters relating to criminal contempt proceedings against Ross R. Barnett and Paul B. Johnson, Jr. The order bears a new number, 20240, and is styled United States of America v. Ross R. Barnett and Paul B. Johnson, Jr., and was signed by the Chief Judge of this Court.

An "Order to Show Cause Why Ross R. Barnett and Paul B. Johnson, Jr. Should Not Be Held in Criminal Contempt," also filed January 5, 1963, and signed by a majority of the members of this Court, recites that the two defendants had violated the temporary restraining order of September 25, 1962 in disobedience of this Court's order of July 28, 1962 and the District Court's order of September 13, 1962; and orders said defendants to appear before the Court on February 8, 1963 to show cause why they should not be held in criminal contempt. Much of the language of this order is couched in the same words as the sections of the Criminal Code referred to in footnote 4, supra.

From this recital it is clear that, on September 24, 1962 and pursuant to the order of that date, this Court in banc took exclusive jurisdiction and charge of the civil contempt proceedings of Meredith v. Fair, et al. and of the proceedings filed and taken therein by the United States as *amicus curiae*, and said cause is still pending before the Court in banc.

It is further clear that, by virtue of its two orders filed January 5, 1963, it took exclusive jurisdiction of the criminal contempt proceedings against the defendants Barnett and Johnson, and conducted a full hearing on February 8, 1963, in connection with which these proceedings are progressing.

As of September 24, 1962, therefore, and to this moment, all aspects of the litigation growing out of or connected with the action brought by James H. Meredith and carried on and participated in by the United States of America have been exclusively within the in banc jurisdiction of this Court.

Notwithstanding these facts, Chief Judge Tuttle and Judges Rives and Wisdom, assuming to function as a panel of this Court, essayed to enter three orders on September 25, 1962 between the time of the in banc order of September 24th and the in banc order of September 25th, items (1) and (2), supra. An order was entered by them on September 25th reciting:

"Upon the application of appellant which is appended hereto:

"It is hereby ordered and decreed that Ross R. Barnett, Governor of

the State of Mississippi, is added as party defendant in this cause in this Court."

A temporary restraining order was issued by them on September 25, 1962 at 8:30 A.M. upon the application of appellant Meredith enjoining Ross R. Barnett, Governor, and others from proceeding with criminal and civil actions pending in the state courts of Mississippi and from applying for any other injunctions therein and from ordering any state official to arrest, obstruct or otherwise interfere with the freedom of movement of the appellant. The order also required that Governor Barnett appear before the Court in the City of New Orleans on October 5, 1962 at 10:00 A.M. and show cause why he should not be made a party in this case and why a preliminary injunction should not issue.

At 8:30 A.M. on the same day, they issued a temporary restraining order—*which is the restraining order the defendants are here charged with disobeying*—upon the verified petition of the United States as *amicus curiae* against the Governor, the Attorney General, the Commissioner of Public Safety, the District Attorney of Hinds County, the District Attorney of Lafayette County and a number of other officials, including all district attorneys in Mississippi, the sheriffs of all the counties of Mississippi, and all chiefs of police, constables and town marshals enjoining them from arresting James Howard Meredith, or prosecuting him further, or from injuring, harassing, threatening or intimidating him, or obstructing him by any means from enjoying his rights "under this Court's order of July 28, 1962 and the order of the United States District Court for the Southern District of Mississippi entered September 13, 1962 in this action."

The restraining order was couched in large part in the language of sections of the Criminal Code, which language was copied into the injunction of October 19. See footnote 4, supra.

In addition, Judges TUTTLE, BROWN and WISDOM signed an order on September 26, 1962, upon Meredith's motion, directing Governor Barnett to appear before the Court on September 28th to show cause why he should not be adjudged in civil contempt of the orders of the Court. On the same date—I do not find in the record that Lieutenant Governor Johnson was ever made a party to the action—Judges RIVES, BROWN and WISDOM signed an order upon the application of the United States as *amicus curiae*, ordering Johnson to appear and show cause on September 29, 1962 why he should not be held in civil contempt of the restraining order of September 25, 1962 (which, in turn, enforced the order of July 28, 1962 of this Court and the order of September 13, 1962 of the District Court).

In my opinion, this Court in banc had sole jurisdiction to proceed in this action and all phases of it from the time of the entry of the in banc order of September 24th. It follows that the three Judges who signed the five orders last above listed had no power or jurisdiction to sign or enter them, and that said orders and each of them are wholly null and void.[5]

These orders constitute the very bases of the proceedings now before us; and said orders being entirely void, the Court is, in my opinion, not empowered to proceed or to take any action in connection with the attempted prosecution of Governor Barnett and Lieutenant Governor Johnson for criminal contempt of court.

### III.

(a) The language of the basic statutes governing the proceedings before us, together with the decisions of the Supreme Court in the two Gompers cases [6]—which have been accepted as fundamental by

5. This Court was in recess, except as a court in banc for the hearing of the Meredith case, the entire month of September, 1962. The recess panel duly created by court action at the beginning of the summer recess with jurisdiction on September 25th was composed of Chief Judge Tuttle and Judges Cameron and Bell.

6. Gompers v. Bucks Stove & Range Co., 1911, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, and Gompers v. United States, 1914, 233 U.S. 604, 34 S.Ct. 693, 58 L.Ed. 1115.

the courts ever since their publication— in my opinion, reject the power of this Court to proceed with the enforcement of its criminal contempt order of January 4, 1963. No better dissertation upon civil contempts and criminal contempts and the difference between them could be compiled than is afforded by quotations from the two Gompers cases. In fact, these two cases represent the first real effort of the courts to differentiate the two.

First Gompers involved an equity suit for an injunction between Bucks Stove and Range Company and Gompers and other individuals who were officers of the American Federation of Labor in proceedings before the trial (the Supreme) court in the District of Columbia for contempt of court for violation of orders entered by the trial court. The details are not important, but the case resulted in a finding of the trial court and an affirmance by the Court of Appeals that Gompers et al. had been guilty of criminal contempt for violating the order of the Supreme Court of the District. The Supreme Court of the United States wrote extensively of the difference between civil and criminal contempt and set up standards which are involved in the proceedings before us. I quote excerpts from that decision:

[221 U.S. p. 443, 31 S.Ct. p. 499, 55 L.Ed. 797] "In this case the alleged contempt did not consist in the defendant's refusing to do any affirmative act required, [221 U.S. p. 444, 31 S.Ct. p. 499, 55 L.Ed. 797] but rather in doing that which had been prohibited. The only possible remedial relief for such disobedience would have been to impose a fine for the use of complainant, measured in some degree by the pecuniary injury caused by the act of disobedience. * * *

"But when the court found that the defendants had done what the injunction prohibited, and thereupon sentenced them to jail for fixed terms of six, nine, and twelve months, no relief whatever was granted to the complainant, and the Buck's * * * Company took nothing by that decree.

"If, then, as the court of appeals correctly held, the sentence was wholly punitive, it could have been properly imposed *only in a proceeding instituted and tried as for criminal contempt.* * * * Without deciding what may be the rule in civil contempt, it is certain that in proceedings for criminal contempt the *defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself.* * * *

"There is another important difference. Proceedings for [221 U.S. p. 445, 31 S.Ct. p. 499, 55 L.Ed. 797] civil contempt are between the original parties, and are instituted and tried as a part of the main cause. But, on the other hand, proceedings at law for *criminal contempt are between the public and the defendant, and are not a part of the original cause.* * * *

"The Buck's * * * Company was not only the nominal, but the actual party on the one side, with the defendants on the other. The Buck's * * * Company acted throughout as complainant in charge of the litigation. As such and through its counsel, acting in its name, it made consents, waivers, and stipulations only proper on the theory that it was proceeding in its own right in an equity cause, and *not as a representative of the United States, prosecuting a case of criminal contempt.* * * *

[221 U.S. 446, 31 S.Ct. 500, 55 L. Ed. 797] "In the first place the petition *was not* entitled '*United States v. Samuel Gompers et al.*' or '*In re Samuel Gompers et al.,*' as *would have been proper, and according to some decisions, necessary, if the proceedings had been at law for criminal contempt.* This is not a mere matter of form, for manifestly every

citizen, however unlearned in the law, by a mere inspection of the papers in contempt proceedings *ought to be able to see whether it was instituted for private litigation or for public prosecution,* * * *. He should not be left in doubt as to whether relief or punishment was the object in view. He is not only entitled to be *informed of the nature of the charge against him, but to know that it is a charge, and not a suit.* * * *

[221 U.S. 447, 31 S.Ct. 500, 55 L.Ed. 797] "It is argued the defendants' answers concluded with a statement that, as questions of criminal and quasi criminal intent were involved, a jury was better qualified to pass on the issue than a judge, and in the event he should be of opinion that the charges had not been sworn away, they moved *that issues of fact should be framed and submitted to a jury.* Such a motion was not inconsistent with the theory that this was a proceeding for civil contempt in equity, but *was in strict accord with the practice under which questions of fact may be referred by the chancellor to a jury for determination.* * * * [And cf. Rule 39(c), F.R.C.P., providing that a court may, of its own initiative, try any issue with an advisory jury.]

[221 U.S. p. 448, 31 S.Ct. p. 500, 55 L.Ed. 797] "* * * the provision of the Constitution that 'no person shall be compelled in any criminal case to be a witness against himself' *is applicable not only to crimes, but also to quasi-criminal and penal proceedings.* * * *

[221 U.S. p. 450, 31 S.Ct. p. 501, 55 L.Ed. 797] "Congress, in recognition of the necessity of the case, has [221 U.S. p. 451, 31 S.Ct. p. 502, 55 L.Ed. 797] also declared (Rev. Stat., § 725) that the courts of the United States 'shall have power * * to punish by fine or imprisonment * * * contempts of their authority,' including 'disobedience * * *

by any party * * * to any lawful * * * order * * * of the said courts.' But the *very amplitude of the power is a warning to use it with discretion, and a command never to exert it where it is not necessary or proper.* * * *

"If this had been a *separate and independent proceeding at law for criminal contempt, to vindicate the authority of the court, with the public on one side and the defendants on the other,* it could not * * * have been affected by any settlement which the parties to the equity cause made in their private litigation. * *

[221 U.S. p. 452, 31 S.Ct. p. 502, 55 L.Ed. 797] "The judgment of the Court of Appeals is reversed, and the case remanded, with directions to reverse the judgment of the Supreme Court of the District of Columbia, and remand the case to that court with direction that the contempt proceedings instituted by the Buck's * * * Company be dismissed, but without prejudice to the power and right of the Supreme Court of the District of Columbia to punish by a proper proceeding, contempt, if any, committed against it."
[Emphasis supplied.]

(b) When the case got back to the trial court, *it appointed a committee*—here, the Department of Justice—"to inquire whether there was reasonable cause to believe the plaintiffs in error guilty, in willfully violating an injunction issued by that court * * * if yea, to present and prosecute charges to that effect. The inquiry was directed solely with a view to *punishment for past acts, not to secure obedience for the future;* * * *

[233 U.S. p. 606, 34 S.Ct. p. 694, 58 L.Ed. 1115] "The committee * * * reported and charged that the parties severally were guilty of specified acts in violation of the injunction, being the same acts of which they had been found guilty by the supreme court in the former case. * * * The defendants plead-

ed the statute of limitations, Rev. Stat. § 1044, * * * as to most of the charges, * * *. There was a trial, the Statute of Limitations was held inapplicable, and the defendants were found guilty and sentenced to imprisonment * * *."

The Supreme Court denied the petition filed by the Judges of the trial court, assumed that the evidence required a finding that the defendants were guilty, but reversed the decision solely upon the application of the Statute of Limitation, which provides that *"no person shall be prosecuted, tried, or punished for any offense not capital, * * * unless the indictment is found or the information is instituted within three years next after such offense shall have been committed."* In holding the quoted Statute of Limitations applicable, the Supreme Court used this language:

[233 U.S. p. 610, 34 S.Ct. p. 695, 58 L.Ed. 1115] "It is urged in the first place that contempts cannot be crimes, because, although punishable by imprisonment, and therefore, if crimes, infamous, they are not within the protection of the Constitution and the amendments giving a right to trial by jury, etc., to persons charged with such crimes. But the provisions of the Constitution are not mathematical formulas having their essence in their form; they are organic, living institutions transplanted from English soil. * * * *It does not follow that contempts of the class under consideration are not crimes, or rather, in the language of the statute, offenses,* because trial by jury as it has been gradually worked out and fought out has been thought not to extend to them as a matter of constitutional right. *These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech.* So truly are [233 U.S. p. 611, 34 S.Ct. p. 611, 58 L.Ed. 1115]

they crimes that it seems to be proved that in the early law they were punished only by the usual criminal procedure [citing several English cases and cases from the Supreme Court] * * *.

"We come, then, to the construction of the Statute. * * * and the counsel for the petitioners were at some pains to argue that the charges of the committee amounted to an information,—a matter that opens vistas of antiquarian speculation. But this question is not one to be answered by refinements and curious inquiries. * * * The substantive portion of *the section is that no person shall be tried for any offense not capital except within a certain time.* Those words are of universal scope. What follows is a natural way of expressing that the proceedings must be begun within three years; *indictment and information being the usual modes by which they are begun, and very likely no other* having occurred to those who drew the law. But it seems to us plain that the dominant words of the act are, 'no *person shall be prosecuted, tried, or punished for any* offense not capital' unless.

"No reason has been suggested to us for not giving to the [233 U.S. 612, 34 S.Ct. 696, 58 L.Ed. 1115] statute its natural scope. The English courts seem to think it wise, even when there is much seeming reason for the exercise of a summary power, to leave the punishment of this class of contempts to the regular and formal criminal process. * * * Indeed, the punishment of these offenses peculiarly needs to be speedy if it is to occur. The argument loses little of its force *if it should be determined hereafter, a matter on which we express no opinion, that in the present state of the law an indictment would not lie for a contempt of a court of the United States.*

*"Even if the statute does not cover the case by its express words, as we think it does,* still, in dealing with the punishment of crime a rule should be laid down, *if not by Congress, by this court.* The power to punish for contempt must have some limit in time, and in defining that limit *we should have regard to what has been the policy of the law from the foundation of the government. By analogy, if not by enactment, the limit is three years.* \* \* \* " [Emphasis added.]

(c) These words of Justices Lamar and Holmes have served as guidelines since their utterance a half century ago. The language of these two cases, it seems to me, spells out categorically that the prosecution of the offense of criminal contempt before us must be conducted in conformity with the laws of the United States governing prosecution for crimes, whether those laws are derived from statutes or from "what has been the policy of the law from the foundation of the Government." It is further clear that, if a statute does not specifically cover such a policy, the court should conform its practices by analogy with that policy so as to insure these defendants the same protections and immunities which would surround them if they were prosecuted for crime in a conventional proceeding.

The two Gompers cases and others listed in the margin [7] hold specifically that one accused of the offense of criminal contempt of court is entitled to the following protections and immunities *inter alia:* the presumption of innocence; proof beyond a reasonable doubt; not compelled to testify against himself; advice as to the charges against him; a reasonable opportunity to prepare a defense; the benefit of compulsory process; assistance of counsel; an impartial arbiter of the facts; benefit of the statute of limitations governing crimes; the right to a pardon under the President's constitutional authority to pardon criminal offenses. Additionally, of course, contempts of Congress are punishable by normal criminal procedures.

Against this background should be considered certain of the more important actions taken by the prosecution and some of the more crucial statutes involved.

(d) It has been shown that the vital entry of the United States into the civil case by the order of September 18th was accomplished without observance of Rule 24(c), F.R.Civ.P. It is further manifest that the entry of the Government lies without any statutory authority and was in fact accomplished in derogation of the general statute granting to the United States the right to commence a civil action in a court of the United States. 28 U.S.C.A. § 1345:

"Except as otherwise provided by Act of Congress, the *district courts* shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." [Emphasis added.]

The entry which the United States attempted to make in the Court of Appeals is not, as far as I can find, authorized by any Act of Congress and none is claimed by the opposition. As my Brothers have amply shown, Congress has not authorized the Government to enter any segregation case as a litigant and, as I understand it, the opposition does not contend otherwise. The claimed entry by the United States under the order of September 18th is not to be confused with its commencement of this criminal proceeding by filing of its information of December 21, 1962. On September 18th, nothing but a civil proceeding brought by Meredith was pending, and the opposition

7. Cooke v. United States, 1925, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767; Ex parte Grossman, 1925, 267 U.S. 87, 45 S.Ct. 332, 69 L.Ed. 527; and In re Murchison, 1955, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942; and see authorities cited in dissenting opinion, Ballantyne v. United States, 5 Cir. 1956, 237 F.2d 657, 666 et seq.

has pointed to no authority as far as I can find for that intervention.[8]

(e) The Government admits that no prosecution for criminal contempt has ever been conducted in a Court of Appeals and the only case in which any appellate court has ever conducted a criminal contempt hearing is United States v. Shipp, 1906, 203 U.S. 563, 27 S.Ct. 165, 51 L. Ed. 319; 1909, 214 U.S. 386, 29 S.Ct. 637, 53 L.Ed. 1041; 1909, 215 U.S. 580, 30 S.Ct. 397, 54 L.Ed. 337. I will digress at this point to say that, in addition to the infirmities my Brothers have pointed out, it should be noted that the prosecution there was solely of violation of an order entered by an appellate court dealing with an exclusively appellate matter. Before the Supreme Court had taken up the merits of the case, in order to protect its jurisdiction upon appeal and prevent it from being entirely sterile, it stayed the execution of the condemned man until it could pass on the questions presented to it upon appeal. The only order violated was the order of the Supreme Court, and no other court had any possible jurisdiction to punish the violation of that order. We have, of course, no such situation before us.

I think it proper to digress further to say that I do not think that the opinion of the opposition has the question of jury trial in proper focus. An examination of the Shipp record, as reported with the opinions, will reveal that those charged with violating the Supreme Court's stay order did not ask for trial by jury, that question not being mentioned either in the motions or the brief of the accused or in the court's opinion.

Getting back to the mainstream of the debate on the question before us, it is clear to me that this Court is, and has been from the time it sought to recall its mandate, acting wholly beyond the jurisdiction vested in it by Congress. Professor Moore, in his Commentary on the United States Judicial Code, gives a detailed account of the history and jurisdiction of the Court of Appeals, § 0–03 (51), pp. 455, et seq. Having stated that the Evarts Act of 1891 created a Circuit Court of Appeals for each of the nine circuits into which the United States was divided, and pointed out that this number had increased to eleven, he states (p. 456) the following:

"Courts of Appeals have only appellate jurisdiction.

"Since the courts of appeals are created by Congress and not by the Constitution, Congress could confer original jurisdiction upon them, but it has not done so. They have an exclusively appellate jurisdiction. [The text then quotes the following from Supreme Court decisions]

"Whitney v. Dick (1906) 202 U.S. 132, 137 [26 S.Ct. 584, 50 L.Ed. 963] * * * 'It will be borne in mind that the Circuit Court of Appeals, which is a court created by statute, Kentucky v. Powers, 201 US 1, 24 [26 S.Ct. 387, 50 L.Ed. 633], is not in terms endowed with any original jurisdiction. It is only a court of appeal.'; A F of L v. NLRB (1940) 308 US 401, 404 [60 S.Ct. 300, 84 L.Ed. 347.] * * * ('The Court of Appeals for the District of Columbia, like the several circuit courts of appeals, is without the jurisdiction over original suits conferred on district courts. * * * Such jurisdiction as it had, to review directly

---

8. The expansive language of the Gompers cases and the others listed, in my opinion, cloak these defendants with all Bill of Rights protections (we omit trial by jury from the present discussion).' Inasmuch as power to prosecute for criminal contempt is based on the validity of the civil proceedings, I question, for example, the validity of the restraining order of September 25th, which was entered without the presence of the defendants, out-side of the State of Mississippi; and the initiation of this proceeding upon a show cause order entered outside said State in derogation of Article III, Section 2, Clause 3 and the Sixth Amendment of the Constitution of the United States; and cf. Rule 18 F.R.Cr.P., infra. This opinion is drawing out to such lengths, however, that I will not pause to consider these possible infirmities here.

the action of administrative agencies, is specially conferred by legislation relating specifically to the determinations of such agencies made subject to review, and prescribing the manner and extent of the review.' Certification by NLRB of a particular labor union as the collective bargaining representative held non-reviewable in Court of Appeals.)."

Professor Moore then discusses in the succeeding pages certain jurisdiction to review and otherwise handle matters relating to administrative agencies and special boards, including Tax Court decisions, decisions of courts of bankruptcy, orders of the Interstate Commerce Commission, Federal Communication Commission, Civil Aeronautics Board, final orders of the National Labor Relations Board, orders of the Administrator of the Wage and Hour Division of the Department of Labor, and many others. He also discusses, pp. 467, et seq., the jurisdiction of a court of appeals in connection with § 1651, the All Writs Statute, and its power in such proceedings as mandamus, prohibition, habeas corpus, etc.

(g) Jurisdiction of courts of appeal is now dealt with in 28 U.S.C.A. §§ 43 and 1291 et seq. This Court, in my opinion, exhausted its jurisdiction when it reversed the decision of the District Court and remanded the case of James H. Meredith to that court with instructions to enter an injunction as prayed for. Meredith had filed his civil action asking for injunctive relief, and the District Court had denied the relief prayed for; Meredith appealed to this Court; this Court reversed and remanded the case with instructions as to the order which should be entered. There its jurisdiction ceased.

It could not, in my opinion, as an appellate court take hold of the case and essay to exercise the jurisdiction vested only in district courts. When it attempted to do so, the weaving of the tangled web began, and the Court has, in my opinion, been in a state of confusion ever since. Of course, the web had been woven when the Court in banc took hold. In my judgment the moves made and the actions taken leading up to and including the issuance of the citation against the defendants charging the offense of criminal contempt have been beyond the power and jurisdiction of the Court.

(h) Assuming that all I have written is in error and that what the Court has been doing has been in an effort to enforce its legal order in fulfillment of its appellate jurisdiction, its power extended, in my opinion, no further, in any event, than the issuance and enforcement of civil contempt proceedings. Much of what the courts have said and the text-writers have repeated has been in justification of the right of a court to protect itself, and certainly I do not have a word to say against that right. But the right is limited to direct contempts and to enforcement of its orders rendered in the execution of its appellate jurisdiction. Moreover, even if it had the right to enforce by civil sanctions its orders in this case, certainly it has done so in a very adequate way. It did not enforce its imposition of the large fines and the sentencing of the defendants to imprisonment, apparently because the things the Court was trying to accomplish had already been satisfactorily performed. But the punishment for criminal contempt is entirely another matter and one not, in my opinion, of which this Court has jurisdiction.

(i) General jurisdiction of prosecutions for offenses against the United States is lodged by statute solely in the district courts, 18 U.S.C.A. § 3231:

"The district courts of the United States shall have original jurisdiction * * * of all offenses against the laws of the United States."

It is provided in Rule 18 F.R.Cr.P.:

"Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed, but if the district consists of two or more

divisions the trial shall be had in a division in which the offense was committed."

These decisions and the statutes and rules of procedure referred to make it plain that the only place this offense can be prosecuted is in the district court where it originated, was tried, and to which it was remanded, and where an injunctive order was entered in obedience to the mandate of this Court as soon as Mr. Justice Black vacated the stays which were holding up its entry. Strangely enough, every important order entered in this proceeding in this Court has referred to the District Court's injunction of September 13th, *and has required the enforcement of the District Court's injunction*, along with the orders entered by this Court which the opposition strains so hard to justify.

If criminal contempt of court is an "offense" within the meaning of the statute of limitations, Gompers, supra, it certainly is no less an "offense" the punishment of which is vested in the district courts, 18 U.S.C.A. § 3231; and, in my opinion, this Court thus has no jurisdiction to hear original prosecutions for the offense of criminal contempt.

(j) I have grave doubts, moreover, that the acts with which the defendants are charged are criminal contempts of court, inasmuch as the same acts are indictable "crimes" under 18 U.S.C.A. §§ 1503 and 1509. It is important that acts which *are* crimes not be confused with acts which also *amount* to crimes, e. g., impeding an officer of the court may also *amount* to an assault and battery, but it may *be* a crime under 18 U.S.C.A. § 1503.

I am not unaware of Savin, Petitioner, 1889, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150, which held that the fact that the offense charged was a crime, punishable by indictment under the then § 725 (taken from § 2 of the Contempt Act of March 2, 1831), did not preclude punishment for criminal contempt. But Nye v. United States, 1941, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172, written after this whole question had been clarified by statutes and decisions, casts great doubt on that holding:

[313 U.S. p. 49, 61 S.Ct. p. 816, 85 L.Ed. 1172] "Yet in view of the history of those provisions, meticulous regard for those separate categories of offenses must be had * * [or]. The result will be that the offenses which Congress designated as *true crimes* under § 2 [9] of the Act of March 2, 1831 will be absorbed as contempts wherever they may take place." [Emphasis added.]

The later opinions of the Court tend to sustain the thesis that, when Congress makes certain acts specific criminal offenses, such acts are no longer punishable as criminal contempts of court but as crimes; and if defendants are to be punished, it "must be under the Criminal Code where they will be afforded the normal safeguards surrounding criminal prosecutions." Nye, supra, 313 U.S. at p. 53, 61 S.Ct. 817, 85 L.Ed. 1172.

(k) The opposition's opinion claims that the right of this Court to punish the defendants for the criminal offense here charged results from the "elementary" fact that this Court has exclusive jurisdiction so to punish. It cites as authority for this view three cases of rather ancient vintage. In re Debs [10] was part of the spacious litigation brought by the United States against Debs and others, officers and members of the American Railway Union, the suit being brought under the Interstate Commerce Act. An injunction was issued commanding the defendants and a large number of others to refrain from interfering with or obstructing the operation of the trains of the twenty-two railroads listed in the original complaint. The main question argued was whether the

9. 28 U.S.C.A. §§ 1503, 1509 are the progeny of § 2 of the Act of March 2, 1831. See footnote 4, supra, for the acts enjoined in this case—acts which would be a violation of the statutes.

10. 1895, 158 U.S. 564, 565, 595, 15 S.Ct. 900, 910, 39 L.Ed. 1092.

United States could bring a suit involving the private property of the railroads on the ground that interference with their efficient operation, particularly with respect to the carriage of mail, was cognizable under the Interstate Commerce Act.

The court of first instance granted an injunction because of "interferences, actual or threatened, with property rights of pecuniary nature." Debs et al. were cited for violating that injunction by "disobedience to an order of a civil court, made for the protection of property and the security of rights." The Supreme Court, in a habeas corpus proceeding, merely affirmed the action of the trial court in punishing the violation of the injunction. It is difficult to tell from the language of the opinion whether the punishment of the offense was considered civil or criminal in character. The fact is that the difference between civil and criminal contempts seems not to have been understood, certainly was not made explicit, until the two Gompers cases, supra. I find nothing in this case to sustain the opinion of the opposition that this Court of Appeals has jurisdiction to entertain a prosecution for criminal contempt.

The other Supreme Court case, Ex parte Bradley, 1868, 7 Wall. 364, 368, 74 U.S. 364, 368, et seq., 19 L.Ed. 214, involved disbarment of an attorney by the Supreme Court of the District of Columbia. The disbarment was based upon "contemptuous language towards the said judge in the progress of a trial therein, and for which the said justice disbarred him from the privileges of attorney and counsel of the Supreme Court." The holding that this contempt, actually committed in the presence of a judge of the Supreme (trial) Court, while holding a term of the Criminal Court, must be disposed of by that Criminal Court and not by the same judges of the Supreme Court of the District of Columbia, sitting as a civil court, does not support what the opposition contends for here.

The only other case mentioned is an ante-bellum case from Mississippi.[11] That case arose in the administration of an estate, and a fiduciary refused to comply with the order of the court. The language of the order is that "contemptuously refusing to comply with the order of the court in the presence of the court, he was, by the order of the court, committed to the jail of said county, *until he should comply with said order*." [Emphasis added.] This order was simply the conventional enforcement of a court order by imprisoning the intransigent person until compliance was had. Of course, that action must be taken by the court which entered the order—a trial court in this instance. Interestingly enough, the main issue in the case was whether or not appeal should lie from such an order, and the appellate court held that there could be no appeal from such an order of contempt, a holding in line with the common law rule of that era which did not permit review of a finding of contempt.

These cases hold merely that a *trial* court may punish for criminal contempt.

It does not follow from those cases that, under the circumstances here present, the Court of Appeals is, by the attempted tacking on of the order of this Court to the September 13th order of the District Court, vested with exclusive jurisdiction, or with any jurisdiction at all, to punish for the alleged criminal contempt.

## IV.

I join with the other members of the Court in submitting the question of trial by jury to the Supreme Court. Since jurisdiction affects the right of this Court to try this prosecution at all, I have felt constrained to set down, supra, my reasons for believing that this Court has no jurisdiction before beginning a brief discussion of the matter of trial by jury.

The defendants, of course, filed other pleadings presenting many legal ques-

---

11. Watson v. Williams, 1858, 36 Miss. 331.

tions in addition to challenging the jurisdiction of the Court (and in addition to other grounds relied on as to the jurisdictional question). These include those listed in the opinion of the opposition. While a majority of the Court voted to reject those contentions, I thought in many cases they were meritorious. I understand that these questions will not be foreclosed by the action which the Supreme Court takes with respect to the questions presented to it.

## V.

The right of defendants to be tried by a jury has been well justified by the able opinions of Judges JONES, GEWIN and BELL, the reasoning of which I adopt and will try to avoid repeating.

There being no statute specifically vesting power in this Court to hear this prosecution for the criminal offense charged and no precedent establishing the legal mechanics for conducting such an action, those who seek to justify the present procedures are relegated, it seems to me, to the language of the last clause of 18 U.S.C.A. § 402, quoted in the opinion of the opposition:

> "* * * and all other cases of contempt not specifically embraced in this section may be punished in conformity to the prevailing usages at law."

What, then, are these prevailing usages at law to which this Court must conform if it sets itself the task of meting out punishment to these defendants? The question, it seems to me, is answered by Mr. Justice Holmes in second Gompers, supra: "* * * we should have regard to what has been the policy of the law from the foundation of the government. By analogy, if not by enactment * *." we should proceed to fashion the rules by which we shall be guided.[12]

A few words may be added to what my Brothers say concerning the question whether the Government's entry into Meredith's civil action, by the order of September 18th, constituted a "suit or action brought or prosecuted in the name of, or on behalf of, the United States."

The amorphous, hybrid role it assumed in its request for admission constitutes a slender reed upon which to rest its status. The essence of the role of friend to the court is the possession of the same objectivity and detachment which belong to the Court. Friend of the court and partisan litigant are mutually exclusive terms. As friend, the Government could not bring or prosecute an action.[13]

No statute has been referred to giving the United States the right to enter private civil litigation to assist either of the parties. In his dissenting opinion in the Green case[14] Mr. Justice Black lists a

---

12. Mr. Justice Holmes makes it plain that, before the foundation of this Government, our English forebears had adopted the procedure of trying criminal contempts in the same manner in which other charges of crime were tried.

13. The Department of Justice has never been objective in a segregation case. In both Brown cases, presenting as they did socio-political questions upon which the nation was divided, it took sides. In the former case, it is stated in 347 U.S. at page 485, 74 S.Ct. at page 687, 98 L. Ed. 873: "By special leave of Court, Assistant Attorney General Rankin argued the case for the United States on the reargument, as amicus curiae, urging reversal in Nos. 1, 2 and 4 and affirmance in No. 10. With him on the brief were Attorney General Brownell * * * James B. McGranery, then Attorney

General, and Phillip Elman filed a brief for the United States on the original argument as amicus curiae, urging reversal in Nos. 1, 2 and 4 and affirmance in No. 10." And see 349 U.S. at page 297, 75 S.Ct. at page 755, 99 L.Ed. 1083, the notation that Solicitor General Sobeloff participated in the oral argument for the United States and that with him on the brief were Attorney General Brownell and others representing the United States."

The Department of Justice has tried in a number of Congresses to obtain the right to bring segregation suits and it has taken a partisan part in a large number of cases, as reference to the Reports will show. I know of no instance in which it has functioned objectively in such a case.

14. Green v. United States, 1958, 356 U.S. 165, 208, 78 S.Ct. 632, 656, 2 L.Ed.2d 672.

number of instances in which Congress has provided for the bringing and prosecution of actions in the name of and on behalf of the United States. Through Congress alone can the Government derive the right to litigate in the courts. It is perfectly plain, I think, that the phrase "actions brought or prosecuted in the name of the United States" refers only to those actions which may be brought under congressional authority.[15]

The usages of law existing at the time the Government supposedly brought its case are not difficult to discover, as they relate to trials of criminal contempts. Criminal contempts have been since the beginning of the Government universally brought in the district courts (Shipp being the only exception); under the practice in the district courts it is likewise universal that defendants in such proceedings are entitled to be tried by a jury if the act constitutes also a criminal offense under any statute of the United States or under the laws of any State in which the act is committed. That right has been given ever since 1914, when the Clayton Act was passed. That Act applied, of course, only to injunctions in labor disputes. Ever since then every statute passed by Congress and every court decision has tended to enlarge the scope of the right to trial by jury.

When Congress passed the Civil Code of 1948, it provided, by 18 U.S.C.A. § 3691, that the rights previously belonging to those involved in labor disputes were universally given to all persons charged with criminal contempt. When the right to jury trial came up in the passage of the Civil Rights Act of 1957, 42 U.S.C.A. § 1995, the abridgement of the right to trial by jury was severely limited. Finally, Congress, in 1960,

passed 18 U.S.C.A. § 1509.[16] Whatever may have been the purpose of Congress in passing this Act, the effect of it certainly was to combine with 18 U.S.C.A. § 1503 so as to make practically every interference with an injunctive order of a court a crime, punishable under criminal laws. Whatever the court, therefore, usage gives a jury if the alleged contempt is a crime also.

This evolution in dealing with criminal contempts is, in my opinion, a logical one. The courts are fully protected by the statutes regulating direct contempts, and by the right to coerce obedience of injunctive orders by commitment for civil contempt, which is apparently limitless in the provision for imprisonment.

## VI.

After a court's order has been enforced, by whatever means, it loses all interest in dealing with those who interfered with its enforcement. This Court has no interest in the punishment of these defendants for past criminal offenses committed by them. Society alone has such an interest. Society has chosen throughout the life of this government to punish crime by prosecution in the criminal courts under protection of the Bill of Rights. It provides no other method for such punishment and, in my opinion, this Court has no duty to perform and no interest in what society does to these defendants.

## REJOINDER

The four Judges opposing trial by jury of these defendants properly undertook the role of proponents and filed their opinion first. Since a good part of the supplementary comments of the opposition deal with the opinion prepared by me, I feel that it is proper that I under-

15. In addition, as noted supra, the United States can bring a civil action only in the district courts. 28 U.S.C.A. § 1345.

16. "Obstruction of court orders
"Whoever, by threats or force, willfully prevents, obstructs, impedes, or interferes with, or willfully attempts to prevent, obstruct, impede, or interfere with, the due exercise of rights or the performance of duties under any order, judgment, or decree of a court of the United States, shall be fined not more than $1,000 or imprisoned not more than one year, or both.
"No injunctive or other *civil relief* against the conduct made criminal by this section shall be denied on the ground that such conduct is a crime." [Emphasis added.]

take to respond to the new matter brought in by the supplement they have filed.

The opposition takes the position that the stays granted by me, particularly the first one of July 18th, had the effect of frustrating the will of the panel which had ordered the District Court to enter the injunction Meredith had prayed for. The position is further taken that this Court was left helpless unless it adopted the novel and unprecedented procedures embraced in the panel's orders of June 27–28. I do not believe that this position, taken first by the original panel of Judges BROWN, WISDOM and De VANE and now adopted by the opposition, is justified.

The fact is that the record does not disclose that the District Court ever refused to carry out the original mandate, or ever took any step indicating that it would not faithfully obey any legal mandate the panel might issue. On July 20, two days after the original mandate had been received by the District Court and had been stayed by my order of July 18, the panel caused telegrams to be sent to the litigants requesting five-day briefs on whether the mandate should be recalled and other steps taken in this Court, thus holding in abeyance any action on the mandate by the District Court. Nine days after the District Court received the mandate the panel issued its order of July 27th the exact effect of which, as I see it, no one has ever explained. It seemed to place this Court in the driver's seat astride the District Court, leaving the District Court with no specific instructions and in effect with no discretion to act except specifically as the panel should direct. The District Court was then faced with successive stays issued immediately after new orders were issued by the panel. The final order of August 4th made it clear that the whole matter was to be subjected to some appellate procedure. It would have been a very unusual and presumptuous act if the District Court had essayed to enter any order under the existing circumstances.

It is probably worthwhile to digress from the main theme to consider the exact nature of the impediment which the opposition regards as preventing other proceedings by the District Court. It was undoubtedly confronted with stays which on their face were issued under authority of the statute,[17] and nobody has cited any decision casting any doubt upon the validity of the stays. On the other hand, the lower court was faced with the recent decision of the Supreme Court in Rosenberg et al. v. United States, 1953, 346 U.S. 273, 73 S.Ct. 1152, 97 L.Ed. 1607, which I think justified the stays.

After a bizarre array of motions, applications for stay, for relief under § 2255, and other like efforts had been presented by the petitioners there, the Supreme Court finally held a special session after its recess on June 15th and put an end to all proceedings pending in connection with the effort to save the petitioners from execution. After that Court had adjourned for its summer recess, Mr. Justice Douglas was importuned to grant a stay based upon questions which it was claimed had not theretofore been raised, and he finally granted the stay of execution. Upon the Government's request, the Supreme Court convened in special session, heard on the merits the new questions raised and vacated the stay granted by Mr. Justice Douglas upon its decision of those questions. But every Justice agreed that Mr. Justice Douglas had properly issued the stay and the Court held that it could be vacated only by its decision of the question preserved by the stay. The District Court here was justified in acting on the assumption that the stays in the Meredith case, pending in the Supreme Court upon petition for certiorari, could be vacated only by similar action. And cf. Application of Chessman, 1954, 43 Cal.2d 391, 408, 274 P.2d 645, certiorari denied, 348 U.S. 864, 75 S.Ct. 85, 99 L.Ed. 681.

17. 28 U.S.C.A. § 2101(f).

I revert now to the opposition's claim that the panel had no alternative except taking the extreme action represented by the unprecedented proceedings of July 27–28. Its opinion here says, in Note 7:

> "With the successive stays of Judge Cameron vacated by our several orders), the District Court was, or thought itself, unable to take action. Unless this Court's decision of June 25 was to be frustrated, affirmative action was needed then and there. It had to come from and through this Court, and this Court alone. Hence the injunctive orders of July 27–28 were imperatively required."

The decision of June 25th, 305 F.2d 343 at 361, required only that "the district court issue the injunction as prayed for in the complaint, the district court to retain jurisdiction." If the stays were without legal basis, and the District Court had refused to follow the panel's mandate, the panel had the simple and traditional power to enforce its decision by mandamus:

> "When a lower federal court refuses to give effect to or misconstrues our mandate, its action may be controlled by this court, either upon a new appeal or by writ of mandamus." Baltimore & Ohio Railroad Co. et al. v. United States et al., 1929, 279 U.S. 781, 49 S.Ct. 492, 73 L.Ed. 954, citing In re Potts, 166 U.S. 263, 265, 17 S.Ct. 520, 41 L. Ed. 994. In re Sanford Fork & Tool

Co., 160 U.S. 247, 255, 16 S.Ct. 291, 40 L.Ed. 414, and cases cited.[18]

The opposition, in its addendum, makes an interesting, but to me unconvincing, argument that this Court is empowered to fashion its own rules of procedure unsupported by any authority at all as far as I can discover. This, I think, may not be done. The effort is made to blaze an entirely new trail in the carefully guarded realm of criminal contempts. A surveyor attempting to establish a line in an unknown region must first find a monument, an established point of beginning. He must then find his bearings by two readings from the North Star. These requirements are a *sine qua non* of his ability to blaze a new trail. No court can, I think, invest itself with the right to take the liberties or the property of a citizen without a monument and bearings. There are none, as far as I can find, in the opposition's opinion.

We cannot lose sight of the fact that, under the heading "18 U.S.C.A. § 401, Power of Court," these words are found: "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as——." With these words of limitation begins the cautious marking of the area into which courts may enter in punishing alleged contempts. No statute and no decision invests them with the power sought to be used here, I respectfully suggest.

It seems to be accepted by all that the questions certified to the Supreme Court require answers granting these defend-

18. The general rule is thus stated in 55 C.J.S. Mandamus § 100d, p. 171:

"Where a judgment, decree, or order of a superior court made in review of the decision of an inferior court comes down to the lower court, it is the duty of the lower court to enter and enforce it, and, if it fails or refuses to do so, mandamus ordinarily will lie to compel compliance therewith * * *."

American Jurisprudence states the rule similarly, 3 Am.Jur., 728, Appeal and Error, § 1232:

"When the trial court fails or refuses to obey or give effect to the mandate * * * of the reviewing court * * *

it becomes the province and duty of the appellate court to enforce compliance therewith. The remedy generally recognized as the proper one is a writ or order of mandamus * * *"

To like effect are United States v. United States District Court, S.D. New York, 1948, 334 U.S. 258, 263, 68 S.Ct. 1035, 92 L.Ed. 1351, and Sibbald v. United States, 12 Pet. 487, 491, 37 U.S. 488, 9 L.Ed. 1167. The former of these cases is cited by the opposition as supporting its position. I think that this is a mistake and that it supports the views above expressed.

ants the right of trial by jury, unless the order alleged to have been disobeyed was "entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States * * *." The crucial importance of these words entitle them to a brief discussion in response to the opposition's supplementary comments.

The test to be applied is not who "brought" these contempt proceedings, nor who requested the restraining order of September 25th; the test is who "brought" the suit or action upon which the restraining order of September 25th is predicated. The civil action was brought and prosecuted by, and in the name of, and on behalf of James H. Meredith. This Court has characterized the Government's role in "entering" that action on September 18th thus: "These proceedings, therefore, are purely ancillary to the original lawsuit * * *" (Order of October 19th). The proceedings which produced the restraining order of September 25th were those constituting the civil action of James H. Meredith.

The cases which the opposition cites as the Government's authority to "enter" the action clearly refute the thesis that the Government's obtaining an order on September 25th (along with an almost identical order obtained by Meredith) destroyed defendants' right to a jury trial. In the Bush case, for example, the Government "entered" at the district court level and its status was explained and defined in these words: "The interest of the government here is the same as that which justifies its prosecution for obstruction of court orders in violation of 18 U.S.C. § 1509, or for contempt of those orders under 18 U.S.C. § 401." Bush v. Orleans Parish School Board, D.C.La., 1961, 191 F.Supp. 871, 877–878, affirmed 367 U.S. 908, 81 S.Ct. 1925, 6 L.Ed.2d 1250. This premature entry of the government into a pending civil action certainly adds nothing to its claim that defendants are not entitled to a jury trial. The status of the United States in this case is in no way different from

its status as prosecutor in *any* criminal contempt case. That, on September 25, an order was entered at its request, as well as Meredith's, is, in my opinion, entirely immaterial.

If the position of the opposition be correct, then the executive branch of the government may be permitted to enter *any* civil case in which the government professes an interest, political or otherwise, and may be permitted to align itself with a litigant and obtain with him an order such as relied upon here. If such a proceeding would make a violation of that order the violation of an order "entered in [a] suit or action brought or prosecuted in the name of, or on behalf of, the United States," the statutory right to a jury trial would not depend upon the character of the relief sought in the action, the acts done, the statutes, or the real parties, but upon the whim of the Attorney General. I do not believe this to be the law. The government has an "interest" in seeing that all court orders are obeyed; this does not, however give the government the right to make the decision whether a jury trial will be granted in a prosecution for an alleged violation of every order entered by every court in every civil case.

If the government's status in this case is such as to deny the defendants the statutory right to a trial by jury, it is my opinion that the provisions of 18 U.S.C.A. §§ 402 and 3691 are meaningless. To follow the government's and the opposition's argument is to hold that *every* civil case is one brought or prosecuted in the name of, or on behalf of, the United States if some government official wants it to be and the court acquiesces in his desire. The right to jury trial does not, in my opinion, rest upon so frail a foundation.

The opposition misconstrues my remarks concerning the panel of Judges BROWN, WISDOM and DeVANE. I did not assert that it was not a duly constituted court, but that it was not an assembled court. My original opinion will show that it was my view that action to recall a mandate under the specific

wording of the rule involved had to be done by a "court." What was attempted to be done on July 27–28 called for judicial action by the panel of three Judges. My original opinion asserted that those actions were not the product of an assembled court. The opposition's supplement does not challenge this statement.

My remarks about summer panels had to do with the attempted hearing and determination of important aspects of the Meredith case by panels of three Judges after the hearing of that case had been ordered by a majority of the Judges "before the Court in banc," and at the very moment when the Court in banc was engaged in consideration of the Meredith case and the entry of orders on other aspects of it. Jurisdiction of the Court is fixed by the express language of 28 U.S.C.A. § 46(c) and, in my opinion, no informal understandings between members of the Court can invest any Judges with power to act except in conformity with law.

I took the position further that, if any action could be taken by any Judges except by the Court in banc, it would have to be taken by the panel of Judges designated to act at that particular time. The records of this Court show that, on June 6, 1962, formal assignment of Judges for the summer panels was entered on the records, and that, e. g., the panel designated for the week of July 16, 1962 consisted of Judges CAMERON, BROWN and WISDOM. The records further show that this panel assembled in New Orleans on Thursday, July 19th, and heard extended oral argument in case No. 19730, Guillory et al v. The Administrators of the Tulane University of Louisiana et al; and that, upon consideration of the oral arguments and the briefs, it affirmed and remanded the case to the district court, upholding that court's denial of summary judgment and dissolution of a temporary injunction

theretofore granted. 306 F.2d 489 (July 21, 1962).

These defendants, subjected to criminal prosecution under serious charges, are in my opinion entitled to have the proceedings upon which the charges are based conducted in strict obedience to the Constitution and the laws.

JONES, Circuit Judge.

It had been assumed by me that the purposes of a judicial opinion, unless it be in dissent, are to inform the losing litigant as to the reason why he has lost his case, and to set forth and publish the governing legal principles so that they might become precedents for future decisions. The use of judicial precedents and the application of the doctrine of stare decisis is a characteristic of Anglo-American law which disinguishes it from Roman law.[1] The use of precedents is older than the Year Books.[2] I cannot see how the judges of this Court are contributing to the law's development by writing opinions at this juncture of this cause where their equal division has called forth a certification of questions to the Supreme Court of the United States. We have not here made a decision. We have not here established a precedent. It was, and is, my view that we could, and should, submit our inquiry to the Supreme Court without indulging ourselves in an inconclusive debate of our divergent views upon the steps of the Supreme Court Building. Others of the Court are otherwise minded. Since opinions are being written, I will join the cavalcade lest there be a lurking suspicion that I am neglectful of a duty.

It seems to me that it is much less important, in the judicial scheme of things, that Governor Barnett[3] should escape being fined or jailed for his publicly demonstrated contempt of a valid order of this Court, of which he had notice, than that he should be denied the jury

1. Llewellyn, The Common Law Tradition, Deciding Appeals, pp. 26 et seq.; Radin, Anglo-American History, pp. 343 et seq.; Salmond, Jurisprudence, 6th Ed., pp. 159 et seq.

2. Holdsworth, The Year Books, 2 Select Essays in Anglo-American Legal History, pp. 110 et seq.

3. And Lieutenant Governor Johnson.

trial which he has demanded.[4] Blackstone, from whom a number of the founding fathers received their legal fundamentals, referred to trial by jury as "the grand bulwark" of the liberties of every Englishman, secured to him by the great charter.[5] Although it has been said, with little to support the saying, that the trial by jury was begun by Alfred the Great,[6] it was definitely incorporated into the law of England during the time for Henry II.[7] The opinion has been well expressed that "the most practical and effective safeguard of liberty and justice is the right of trial by jury," and it is "necessary for the defenders of that right to bear in mind that, 'Eternal vigilance is the price of liberty.' "[8] It has been said by Professor Dillon, "In criminal cases there is no substitute for the jury that would be acceptable to the profession or endured by the people. In the solemn act of passing upon the guilt of those charged with offenses against the public, the jury represents the majesty of the people as a whole * * *."[9] It might not be amiss to look at the great instrument which was said to be "such a fellow that he will have no sovereign."[10] Thus it still reads after nearly three quarters of a millennium:

> "No freeman shall be taken, or imprisoned, or be disseised of his freehold, or liberties, or free customs, or be outlawed, or exiled, or any otherwise destroyed, nor will we go upon him, nor send against him, save by lawful judgment of his peers, or by the law of the land." Magna Charta, Cap. XXIX.

At the dedication of the Magna Charta Memorial at Runnymede in 1957, a former President of the American Bar Association, E. Smythe Gambrell, declared that the American Bill of Rights "still wears the crest of Runnymede."[11] Statutory constructions which deny to the citizen the fundamental and hallowed right of trial by jury should, wherever possible be avoided.

Criminal contempt is the willful violation of a duty created or declared by an order of court of such kind or degree that public interest permits it to be punished as a public wrong in a proceeding brought by the Government. Wharton's Criminal Law and Procedure § 1332. A crime is a wrong arising from a breach of a legal obligation which the Government deems injurious to the public at large and punishes through a proceeding in its own name. Bishop, Criminal Law § 32. Notwithstanding the substantial resemblance of criminal contempt and crimes, there are differences. There is a difference in the origin of the duties which, when breached, result in the commission of the offense. There is a difference in that there is a maximum penalty which may be imposed for the commission of a crime. Unless there is a statutory limit, the conscience of the court provides the only restraint upon the severity of the penalty for criminal contempt. There is a difference in that no person, except by his consent, shall be tried for a crime other than before a jury. In criminal contempt, in the Federal System, there is no right to a jury trial except as provided by statute. It has been said that criminal contempt is not a crime and it has been held that there is no right to a jury trial for criminal contempt under the Federal Consti-

---

4. I do not adhere to the view that a grand jury indictment is required in order to impose punishment for criminal contempt. It is not the function of this Court to reconsider Green v. United States, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672.

5. Chase's Blackstone, 4th Ed., p. 1023.

6. O'Donnell, Cavalcade of Justice, p. 63.

7. Pollock & Maitland, History of English Law, Vol. I, pp. 73, 117 et seq.

8. Dissenting opinion of Judge Rives in Mercer v. Theriot, 5th Cir. 1963, 316 F. 2d 635.

9. Dillon, Laws and Jurisprudence of England and America, p. 122.

10. Edward Coke, speech in the House of Commons, May 27, 1628.

11. American Bar Association Meeting in London, p. 27.

tution as presently interpreted by Green v. United States. Note 4 supra. The Green case is discussed by Ronald Goldfarb in his article on The Constitution and Contempt of Court, 61 Mich.L.Rev. 283, Dec. 1962. But inherently, criminal contempt has most of the characteristics of a crime.[12] It is significant that statutory provisions which relate to contempt[13] are in the Criminal Code. Congress includes criminal contempt with "other criminal cases." 18 U.S.C.A. § 3691. The provisions of the rules[14] which relate to contempt are found in the Federal Rules of Criminal Procedure. Text discussions of criminal contempt are found in the treatises on criminal law.[15]

. Contempt has been a subject of congressional consideration from the beginning. The earliest enactment was in 1789.[16] The next statute was passed in 1821 and it, with minor amendments, is on the books today.[17] The contempt provisions of the Norris-La Guardia Act[18] and of the Civil Rights Act of 1957[19] are pertinent here only as showing a congressional policy of favoring jury trials in contempt cases. Some procedural provisions are set forth in the Rules,[20] the application of which is hereafter discussed.

The Clayton Act, passed in 1914, contained provisions relating to punishment of contempts under some circumstances and providing for jury trials under some conditions. These statutes, as now incorporated in the Code, are as follows:

"Any person, corporation or association willfully disobeying any lawful writ, process, order, rule, decree, or command of any district court of the United States or any court of the District of Columbia, by doing any act or thing therein, or thereby forbidden, if the act or thing so done be of such character as to constitute also a criminal offense under any statute of the United States or under the laws of any State in which the act was committed, shall be prosecuted for such contempt as provided in section 3691 of this title and shall be punished by fine or imprisonment, or both.

"Such fine shall be paid to the United States or to the complainant or other party injured by the act constituting the contempt, or may, where more than one is so damaged, be divided or apportioned among them as the court may direct, but in no case shall the fine to be paid to the United States exceed, in case the accused is a natural person, the sum of $1,000, nor shall such imprisonment exceed the term of six months.

"This section shall not be construed to relate to contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice, nor to contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States, but the same, and all other cases of contempt not spe-

---

12. Cf. Gompers v. United States, 233 U.S. 604, 34 S.Ct. 693, 58 L.Ed. 1115; New Orleans v. New York Mail Steamship Co., 20 Wall. 387, 87 U.S. 387, 22 L.Ed. 354.

13. 18 U.S.C.A. §§ 401, 402, 3285, 3691–3693, 3771, 3772.

14. Rules 17(g) and 42, Fed.Rules Crim. Proc., 18 U.S.C.A.

15. See Wharton, Criminal Law and Procedure, § 1329 et seq.

16. 1 Stat. 92.

17. "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

"(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

"(2) Misbehavior of any of its officers in their official transactions;

"(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C.A. § 401.

18. 18 U.S.C.A. § 3692.

19. 42 U.S.C.A. § 1971.

20. Rule 42, Fed.Rules Crim.Proc. 18 U.S. C.A.

cifically embraced in this section may be punished in conformity to the prevailing usages at law." 18 U. S.C.A. § 402.

"Whenever a contempt charged shall consist in willful disobedience of any lawful writ, process, order, rule, decree, or command of any district court of the United States by doing or omitting any act or thing in violation thereof, and the act or thing done or omitted also constitutes a criminal offense under any Act of Congress, or under the laws of any state in which it was done or omitted, the accused, upon demand therefor, shall be entitled to trial by a jury, which shall conform as near as may be to the practice in other criminal cases.

"This section shall not apply to contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice, nor to contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States." 18 U.S.C.A. § 3691.

The contempt of Governor Barnett [21] was the violation of an order entered in the suit of Meredith v. Fair. This was an action brought and prosecuted by Meredith, in the name of Meredith, and on behalf of Meredith. It was not brought or prosecuted by, or in the name of or on behalf of the United States. It seems to me that the strained and forced construction which reaches a different conclusion is wholly untenable. It is contempt to resist an order of court. 18 U.S.C.A. § 401. It is a crime to resist an officer in executing an order of court. 18 U.S.C.A. § 1501. See also 18 U.S.C.A. § 242. It seems clear that the acts and

things done by Governor Barnett constituted not only a contempt but also a criminal offense. This being so, I would have no doubt but that, under Section 3691, there is a right to a jury trial unless the language of the statute precludes its application to the trial of criminal contempts of courts of appeals. This provision of the Clayton Act was not directly involved in the Green case although it is discussed in the dissenting opinion of Mr. Justice Black. The Shipp case [22] has been cited for the proposition that jury trials are not available to defendants in contempt cases. It seems to me that the obvious answer to this contention is that the Shipp case was decided before the Clayton Act was passed.

The District Court for the Southern District of Mississippi declined to enter an injunction requiring the admission of James H. Meredith as a student at the University of Mississippi. On June 25, 1962, this Court reversed, directing that the injunction issue and that the district court retain jurisdiction.[23] For reasons which need not be here recounted, there was a delay in the compliance by the district court in the issuance of its injunction as directed by the order of this Court. This Court, concluding that time was of the "quintessence", withdrew its mandate and, on July 27, 1962, issued its injunctive order or judgment directing that Meredith be admitted to the University forthwith and prohibiting the University officials "and all persons having knowledge of the decree" from excluding Meredith from attending the University.[24] From this order there stemmed the restraining order which Barnett violated. Such violation is the genesis of the charge of contempt. Thus it is, that but for the fortuity of the delay of the district court in the entry of its injunctive order, the contempt proceeding now before this Court would be

---

21. There has been an adjudication of civil contempt upon the same facts as form the basis for the criminal contempt charge.

22. United States v. Shipp, 203 U.S. 563, 27 S.Ct. 165, 51 L.Ed. 319; 214 U.S.

386, 29 S.Ct. 637, 53 L.Ed. 1041; 215 U.S. 580, 30 S.Ct. 397, 54 L.Ed. 337; 30 S.Ct. 403, 54 L.Ed. 1213.

23. Meredith v. Fair, 5 Cir., 305 F.2d 343.

24. Meredith v. Fair, 5 Cir., 306 F.2d 374.

pending before or have been decided by the district court, in which, I conclude, it could not be plausibly asserted that a jury trial could be refused. The literal reading and strict construction of Section 3691 would permit a court of appeals, anticipating resistance to or non-compliance with a district court injunction, to issue its own injunctive order instead of issuing or requiring compliance with its mandate to a district court, and thus be in a position to conduct a criminal contempt trial without a jury. Although this was neither contemplated nor intended in the matter before us, the result is the same. I cannot attribute to Congress an intention that such a fundamental right as that of trial by jury shall be dependent upon either design or chance and happenstance.

We are told that this Court has neither statutory authority nor the facilities for empaneling a jury. The right may be implicit in the statute as well as express, and if a jury is allowed it is no answer to a demand for a jury to say that we have no jury wheel from which to draw, or that we do not now have a list from which to summon our veniremen. The right to a trial by jury, if authorized should not be denied because Congress has not blueprinted the specifications for getting the jury into the box. Apparently the Supreme Court of the United States has had no difficulty in the procurement of juries. In 1789 the Congress provided that the trial of issues of fact in cases before the Supreme Court in actions at law against citizens of the United States shall be by jury, 1 Stat. 80. The statute, with changes in form, remains in effect. 28 U.S.C.A. § 1872. The first matter of consequence to come before the Supreme Court was Georgia v. Brailsford, 2 Dall. 402, 1 L.Ed. 433.[25]

The case came before the Court again and was submitted to a jury after four days of argument. Georgia v. Brailsford, 3 Dall. 1, 1 L.Ed. 483. At least two other cases have been tried in the Supreme Court before juries. Carson, History of the Supreme Court, Vol. II, pp. 168–169, Warren, The Supreme Court in United States History, Vol. I, p. 104. The rules of the Supreme Court, adopted at the February Term, 1790,[26] make no reference to the manner of selecting a jury. The statute [27] says that the criminal contempt trial "shall conform as near as may be to the practice in other criminal cases." If this Court is unable to fashion the procedures for empaneling a jury, then its judges will have lost that resourcefulness of which the record in this case so eloquently testifies.

We hear it urged that if Congress had intended for the provisions of Section 3691 to be applicable in courts of appeals it would have said so. The section refers only to district courts. I am not willing to assume that the Congress should have been expected to contemplate that an appellate court would be required to superimpose its jurisdiction upon that of a district court by invoking the All Writs Statute [28] to enter an exceptional and extraordinary injunction and buttress it with another injunctive order under the All Writs Statute.[29] I would construe Section 3691 as requiring a trial by jury in a court of appeals as well as in a district court, upon the demand of a defendant, where the act charged as criminal contempt also constitutes a criminal offense. I would give Barnett a jury trial.

No question has yet been raised by Governor Barnett as to whether the judges of this Court, or any of them,

25. Earlier procedural orders had been entered.

26. 2 Dall. 399, 1 L.Ed. 432.

27. 18 U.S.C.A. § 3691.

28. 28 U.S.C.A. § 1651.

29. There may be a valid doubt as to whether the order of this Court that Meredith be admitted to the University of Mississippi is valid. I assume its validity although believing it was an extraordinary exercise of a power which we are admonished to use only in exceptional cases. Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106.

are disqualified, as a matter of law, to participate as triers of fact in a trial without a jury of this criminal contempt proceeding. Perhaps the conclusion has been reached that such a question is not now timely since it has not been decided that the cause shall be tried by the Court without a jury. Possibly it has been regarded that it would be inexpedient to raise the question. It may be that the question is immaterial to the matters presently posed for decision. Yet if the judges, or some one or more of them, are disqualified as triers of fact, or if there is reason to doubt their qualifications, might not such considerations cast some weight into the scales on the side of trial by jury?

On July 27, 1962, this Court ordered the enrollment of Meredith as a student at the University of Mississippi and directed its order to the University officials and all persons with knowledge. On September 12, 1962, the Governor issued his order to the University officials directing them to refuse the admission of Meredith. In a public proclamation on September 24, 1962, Governor Barnett recited "the direct usurpation of this [undelegated] power by the Federal Government through the illegal use of judicial decree" and directed the arrest of representatives of the Federal Government who sought to arrest any state official. On September 25th this Court entered its restraining order directed to Governor Barnett by name. On the same day Governor Barnett directed a proclamation to Meredith "finally" denying him admission to the University. These were before us at the hearing on civil contempt.

This Court, sitting en banc, conducted a trial of Ross R. Barnett for civil contempt on September 28, 1962. The acts and things with which he was then charged are the same as those with which he is now charged as constituting criminal contempt. After the trial, and on the day of the trial, findings of fact and conclusions of law were made and a judgment of civil contempt was entered. The Court found that "Ross R. Barnett deliberately prevented him [James H. Meredith] from entering [the office of the Registrar of the University of Mississippi] and told him that his application for enrollment was denied by Ross R. Barnett." The Court found that, "The conduct of Ross R. Barnett in preventing James H. Meredith from enrolling as a student in the University of Mississippi has been with the deliberate and announced purpose of preventing compliance with the orders of this and other Federal Courts." As a conclusion of law this Court held that "Ross R. Barnett is in contempt of the temporary restraining order entered by this Court on September 25, 1962." Thereafter the Attorney General was requested by the Court to bring a criminal contempt charge.

There is a present unwillingness on my part to express the opinion that the defiant statements made by Governor Barnett, or any other of the matters involved in the civil contempt proceedings, are such as would disqualify the judges of this Court under Rule 42(b).[30] Such contention might be urged with plausibility. Cf. Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11.

Of greater moment, it would appear, is the question as to whether a trial for criminal contempt by the judges who conducted the trial, made the findings, and entered the judgment in the civil contempt proceeding and then initiated criminal contempt proceedings, could be, and appear to be, such a fair and impartial trial, as a matter of law, as would meet due process requirements. Not squarely in point on its facts, but pertinent and, I think, controlling, as to the principles announced, is In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942. From the opinion in Murchison it ap-

30. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Rule 42(b), Fed.Rules Crim. Proc. 18 U.S.C.A.

pears that the Michigan law permits every judge of a court of record to act as a one-man grand jury. A judge so acting charged two witnesses with contempt; one of them, White, for refusing to answer questions, and the other, Murchison, for perjury. After notice the judge tried White and Murchison in open court, found them guilty and imposed penalties. The Supreme Court held that due process had been denied. In the opinion of Mr. Justice Black, speaking for a six-justice majority, it is said:

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that 'Every procedure which would offer a possible temptation to the average man as a judge * * * not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law.' Tumey v. State of Ohio, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.' Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13 [99 L.Ed. 11].

"It would be very strange if our system of law permitted a judge to act as a grand jury and then try the very persons accused as a result of his investigations. Perhaps no State has ever forced a defendant to accept grand jurors as proper trial jurors to pass on charges growing out of their hearings. A single 'judge-grand jury' is even more a part of the accusatory process than an ordinary lay grand juror. Having been a part of that process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused. While he would not likely have all the zeal of a prosecutor, it can certainly not be said that he would have none of that zeal. Fair trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer. It is true that contempt committed in a trial courtroom can under some circumstances be punished summarily by the trial judge. See Cooke v. United States, 267 U.S. 517, 539, 45 S.Ct. 390, 395, 396, 69 L.Ed. 767. But adjudication by a trial judge of a contempt committed in his immediate presence in open court cannot be likened to the proceedings here. For we held in the Oliver case * * * that a person charged with contempt before a 'one-man grand jury' could not be summarily tried.

"As a practical matter it is difficult if not impossible for a judge to free himself from the influence of what took place in his 'grand-jury' secret session. His recollection of that is likely to weigh far more heavily with him than any testimony given in the open hearings." 349 U.S. 133, 136–138, 75 S.Ct. 623, 625–626, 99 L.Ed. 942.

A grand jury, whether one man or many men, finds probable cause to believe that a crime may have been committed. The Court has not only performed the grand jury function of causing the charge of criminal contempt to be preferred; it has done more, it has found in the civil contempt cause that Barnett is guilty of the acts with which he is charged in the criminal contempt proceeding.

If the evidence on the criminal contempt trial is the same, or substantially so, as that which was before the Court in the civil contempt case, can the judges be expected to erase the inferences and conclusions which that evidence produced when it was previously considered? Will the judges be able to make any nice distinction between preponderance of the evidence, which I suppose was the standard in civil contempt, and proof beyond a reasonable doubt, which, presumably, would be required to convict of criminal contempt? If the evidence on the criminal contempt charge is substantially different from that which was before submitted, will the judges be able to expunge from mind and memory that which they heard and saw at the former trial? And how would they know? And would it appear so? I need none to bear me witness that the judges of this Court have no actual bias in this cause. I need none to assure me that the judges of this Court would "do their very best to weigh the scales of justice equally between contending parties." I do not suggest prejudice or disqualification as a matter of fact. I make inquiry as to whether there is disqualification as a matter of law.

The defendants have not suggested disqualification. But should the Court wait for the defendants to raise the question? If there is a doubt as to the qualification of the judges, should it be ignored if the defendants do not raise it? If the judges, or any of them, are disqualified as triers of the fact, ought not the Court say so?

This digression on disqualification has been overlong. My views are that Governor Barnett is entitled to a trial by jury; but if judges are to be triers of the facts, any question as to the qualifications of the judges of the Court should be considered and determined.

GEWIN, Circuit Judge.

In the beginning the plaintiff Meredith brought a *civil action* against the defendant Fair, as President of the Board of Trustees of State Institutions of Higher Learning, and others, to enforce constitutional rights allegedly denied to the plaintiff Meredith. Before this court was convened for an en banc hearing, a panel of the court by a 2 to 1 decision granted to Meredith all the relief he sought.[1] Neither Meredith nor his counsel now appear in court. The case has changed its identity. Its style is now United States of America v. Ross R. Barnett and Paul B. Johnson, Jr., who are Governor and Lieutenant Governor respectively of the State of Mississippi. At this stage of the proceeding, Meredith, the individual who commenced the proceedings, has no part in the procedure under consideration. The defendants who are now before us, charged with criminal contempt, were not parties in the lower court. They were joined after the case had reached us, a decision rendered and our mandate issued, amended and returned to the District Court where the case originated. Accordingly, since the original suit was filed, the original plaintiff has faded out of the picture. The original defendants are no longer before us. Now, the United States claiming to be "something more than *amicus*" is the plaintiff-prosecutor. This metamorphic transformation took place in this court on the appellate level. No action of the District Court in Mississippi is before us for review.

The device used to accomplish this transformation is an order of a panel of this court dated September 18, 1962, designating the United States as *amicus curiae*—"a friend of the court." The mentioned *amicus* order and the actions of the United States pursuant to it, are the sources of my initial difficulty with the entire proceeding.

In a criminal case neither the prosecutor nor the defendant should be a friend of the court in which the case is to be tried. All litigation, especially criminal prosecutions, should be conducted in an atmosphere of independent, fearless impartiality. The court should

1. 298 F.2d 696; 305 F.2d 341; 305 F.2d 343; 306 F.2d 374.

have no friends and no enemies amongst the litigants.

The sine qua non of all litigation is the adversary system in which adverse parties represent and assert adverse interests in a completely neutral atmosphere, where only the law and strict rules of justice can gain the attention of the court.[2] Any less standard does not serve the purpose of preserving and maintaining the due administration of justice and the integrity of the judicial processes of the courts. Intimacy and cooperation between the court and one of the parties before it, or counsel for one of the parties, will destroy the due administration of justice, the integrity of the judicial processes and will reduce the court to a mere gewgaw.[3]

In my view, a true *amicus* is a nonpartisan adviser of the court who gives information to the court on some matter of the law with respect to which the court may be doubtful; or who may assist the court in the enforcement of judgments and decrees already made; but an *amicus* is not and should not be a party to the suit, should not have control over it, but should accept the case before the court with the issues made by the parties involved. An *amicus* who has demonstrated an active interest in civil litigation and has actually participated in such litigation on the side of one of the parties should never be appointed to prosecute a criminal case arising out of the same litigation; and while serving as *amicus*, undertake to help the court reach a conclusion as to the guilt of the defendant.

In this case, the United States acting as a friend of the court is framing issues and making charges of criminal conduct and proposes to pursue the prosecution of the defendants to the ultimate conclusion of the case. The cases of Bush and Faubus [4] are not authority for the action of the *amicus* in the instant case. In each of the cited cases the *amicus* was appointed in the District Court where the case originated and was pending; no contempt proceeding was involved; and no one was charged with the commission of a crime. There are other distinctions, but those mentioned will suffice. The United States has heretofore assisted the private litigant Meredith. This court judicially knows that counsel for the United States actively participated in certain aspects of the civil proceeding and the evidence adduced before us on the civil contempt hearing clearly showed the activity of counsel for the United States on behalf of the plaintiff Meredith in the civil suit. Indeed, in the application seeking designation as *amicus* the following allegation is made:

"The United States has an interest in the orderly administration of its judicial processes and in the due observance and implementation of the orders and mandates of this Court. *This interest cannot be adequately represented by the plaintiff in this proceeding.*" (Emphasis added)

After the United States was designated *amicus*, their participation in the civil proceeding was extensive. Counsel for the United States and for the

2. "What, then, does the Constitution mean in conferring this judicial power with the right to determine 'cases' and 'controversies.' A 'case' was defined by Mr. Chief Justice Marshall as early as the leading case of Marbury v. Madison, 1 Cranch, 137, 2 L.Ed. 60, to be a suit instituted according to the regular course of judicial procedure." Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246.

3. Nothing herein said should be construed as an unfavorable reflection on the Attorney General or the Justice Department or counsel appearing on behalf of

the United States. After all, a panel of this court appointed them and requested them to act. They are advocates and they are only acting as advocates in this proceeding.

4. Bush, et al. v. Orleans Parish School Board, et al., 190 F.Supp. 861 (E.D. La.1960), aff'd sub nom.; Bush, et al. v. Orleans Parish School Board, et al., 191 F.Supp. 871 (E.D.La.1961) aff'd. 368 U.S. 11, 82 S.Ct. 119, 7 L.Ed.2d 75. Faubus, et al. v. U. S. of America, et al., 254 F.2d 797 (8 Cir., 1958) cert. den. 358 U.S. 829, 79 S.Ct. 49, 3 L.Ed.2d 68.

plaintiff Meredith sat at the same counsel table and conferred; both participated in the filing of pleadings and although pleadings were separate, they were substantially identical. Both participated on the same side at the civil contempt hearing and substantially the same evidence was offered by each in the hearing with reference to civil contempt. Those actions may have been appropriate in a civil proceeding, but now we are concerned with a criminal case. In the order of this court directing " * * * the Attorney General of the United States and such attorneys in the Department of Justice as he may designate * * * to institute and prosecute criminal contempt proceedings against the said Ross R. Barnett and Paul B. Johnson, Jr. * * * ", the following appears in the preamble to the order:

"It appearing that the United States as amicus curiae filed in this Court on November 6, 1962, a memorandum suggesting that the taking of

further evidence concerning the actions of Ross R. Barnett would be appropriate with respect to the issue of whether Ross R. Barnett has purged himself of his civil contempt of this court;" [5]

The standing and duties of an *amicus* have been well defined in the law. Mr. Justice Frankfurter stated in Universal Oil Products Co. v. Root Refining Co., (1946), 328 U.S. 575, 66 S.Ct. 1176, 90 L.Ed. 1447:

"Amici selected by the court to vindicate its honor ordinarily ought not be in the service of those having private interests in the outcome."

While it is true that Federal Courts are always at liberty to call on officers of the United States to serve as amici, such officers are disqualified, in my judgment, when they have taken an active role in the litigation "in the service of those having private interests in the outcome." [6]

---

5. My opposition to the order directing the institution of criminal proceedings was evidenced by my dissent when the order was issued on November 15, 1962.

The full text of the order authorizing the criminal prosecution is as follows:

"It appearing that this Court, on September 18, 1962, designated the United States as *amicus curiae*, with the right to submit pleadings, evidence, arguments and briefs, and to initiate such further proceedings, including proceedings for injunctive relief and proceedings for contempt of court, as may be appropriate in order to maintain and preserve the due administration of justice and the integrity of the judicial processes of the United States, and (emphasis added)

It appearing that the United States as *amicus curiae* filed in this Court on November 6, 1962, a memorandum suggesting that the taking of further evidence concerning the actions of Ross R. Barnett would be appropriate with respect to the issue of whether Ross R. Barnett has purged himself of his civil contempt of this Court; and (emphasis added)

It appearing from the pleadings filed and the oral testimony and documentary evidence already adduced in the proceedings on the petitions for temporary restraining order and for preliminary injunction and the civil contempt proceedings

heretofore instituted against Ross R. Barnett and Paul B. Johnson, Jr., that proceedings should be instituted against the said Ross R. Barnett and Paul B. Johnson, Jr., to determine whether they are, or either of them is, guilty of criminal contempt of the orders of this Court; and

It appearing undesirable to conduct successive proceedings involving similar factual issues and that litigation of such issues in a criminal contempt proceeding would afford to the said Ross R. Barnett and Paul B. Johnson, Jr., maximum procedural protection;

IT IS ORDERED that the Attorney General of the United States, and such attorneys in the Department of Justice as he may designate, be and they are hereby appointed by the Court to institute and to prosecute criminal contempt proceedings against the said Ross R. Barnett and Paul B. Johnson, Jr., pursuant to Rule 42(b) of the Federal Rules of Criminal Procedure and the order of this Court of September 18, 1962.

This 15th day of November, 1962."

6. Such has been the uniform holding of other authorities as to the duties and rights of an *amicus*.

"A by-stander (usually a counsellor) who interposes and volunteers information on

The next difficulty I encounter with the case is a procedural one. My four brothers who have the view that this court should proceed with the trial of the defendants seem to feel no such pause or restraint, and they resolve all doubts with respect to the *amicus* order of September 18, 1962, with the simple statement that the order " * * * constituted the United States as something more than a mere amicus curiae." In my view, the position of the United States in this proceeding is cloaked with obscurity and uncertainty, *but it is acting like a party*. There has been no effort to intervene in the lower court. There is a definite distinction between a party and an *amicus*.[7] No effort has been made to comply with the decisions and rules relating to intervention. See F.R.Civ.P. 24(c) and 6(d); Atlantic Refining Co. v. Port Lobos Petroleum Corp., D.Del.1922, 280 F. 934; Moore, Fed.Pract. 2d Ed. Vol. 4, p. 95.

If the United States is to act as a party in the case, it should seek intervention in accordance with the accepted procedural rules which are fundamental to the law. Following the majority rule, this Circuit has been slow to permit intervention on the appellate level even when formal application was made. "Intervention in an appellate court is certainly unusual." Morin v. City of Stuart, 5 Cir., 1939, 112 F.2d 585; "A court of appeals may, but only in an exceptional case for imperative reasons, permit intervention where none was sought in the district court." (citing the Morin case), McKenna v. Pan American Petroleum Corp., 5 Cir., 1962, 303 F.2d 778; see also Holland v. Board of Public Instruction of Palm Beach, 5 Cir., 1958, 258 F. 2d 730, 733. If intervention was desired,

some matter of law in regard to which the judge is doubtful or mistaken." Black's Law Dictionary (4th Ed., 1951) p. 107
"In view of the rule that an amicus curiae must accept the case before the court with issues as made by the parties, a new question raised only in a brief filed by an amicus curiae, by leave of court, will not be considered." 3 C.J.S. Amicus Curiae § 3, p. 1052
"An amicus curiae is heard only for the purpose of assisting the court in a case already before it, and the function of an amicus curiae is to call the court's attention to law or facts or circumstances in a matter then before it that may otherwise escape its consideration."
"An amicus curiae is not a party and cannot assume the functions of a party, an attorney for a party or even a partisan. He has no control over the litigation and no right to institute any proceedings therein; he must accept the case before the court with the issues made by the parties." Am.Jur.2d, Vol. 4 § 3, pp. 110–11
"Furthermore, in a quasi criminal prosecution for a violation of a municipal ordinance, it has been held that amicus curiae briefs should not be received and considered over the objection of both the prosecution and the defendant, where such briefs tend to impress upon the court the guilt of the defendant." ibid. § 4, p. 113
"It has been held that an amicus curiae is one who gives information to the court on some matter of law in respect to which the court is doubtful, or upon a matter of which the court may take judicial cognizance; that he is not a party to the suit, has no control over it, and must accept the case before the court with the issues made by the parties." United States v. F. M. Jabara & Bros., 19 C.C. P.A., Customs 76.
"An amicus curiae is 'not a party to the action, but is merely a friend of the court whose sole function is to advise, or make suggestions to, the court.'" Clark v. Sandusky, 7 Cir., 1953, 205 F.2d 915, 917
See also Northern Securities Co. v. United States, 191 U.S. 555, 24 S.Ct. 119, 48 L. Ed. 299; Faubus v. United States, 254 F.2d 797, 805 quoting from the Universal Oil Products case; 2 Modern Fed. Practice Digest, Amicus Curiae p. 660; 3 Words & Phrases, perm. ed., Amicus Curiae p. 478.

7. "Where a statute gives an absolute right to be heard, which is tantamount to formal intervention, there is a concomitant right of appeal, except where the statute itself precludes an appeal. Subject to this proposition, an intervenor must be sharply distinguished from a mere *amicus curiae* or a person who has been heard but has never intervened." Moore's Fed.Pract., Vol. 4, 2d Ed. p. 104.

application should have been made in accordance with the rules in the Federal District Court where the action was pending. 4 Moore Fed.Pract., 2d Ed. p. 96; 39 Am.Jur. § 73 p. 945; Stallings v. Conn, 5 Cir., 1934, 74 F.2d 189.

Through the device of designating the United States as *amicus,* the effort here is to make the United States the prosecuting party-plaintiff, and the defendants Barnett and Johnson, the accused parties-defendant, but no effort has been made to comply with any procedural rules. As a matter of fact, the District Court has been ignored. No action of the District Court in this connection has reached us for review. Since the mandate issued by a panel of this court on July 28, 1962, amending the mandate of the same panel issued on July 27, 1962, which directed the District Court in Mississippi to do certain things, but also attempted to reserve jurisdiction in this court, we have not considered the trial court where the lawsuit originated. We have acted as a trial court.

Under the direction and supervision of this court in the criminal contempt case now pending, the Government as *amicus* (or "something more") has filed pleadings, briefs, presented arguments, participated in hearings as to procedure, filed charges against the defendants in the form of a show cause order, and generally conducted itself as an original party. In some respects a record has been maintained of the actions of the trial court and our review thereof, but not in every instance. As a matter of fact, the *amicus* order of September 18, 1962, signed by a panel of this court, was presented to the Judge of the United States District Court in Mississippi. When the District Judge orally made some suggestion as to a change in the order, the United States abandoned that court and presented its request to this one. Only a telephone communication between one or two Judges of this court and the District Court constitutes the record in this regard. All of the foregoing has resulted in the creation of an original criminal case on the appellate level styled the United States of America v. Ross R. Barnett and Paul B. Johnson, Jr. The prosecuting plaintiff has never been before the trial court, the defendants have never been brought to the trial court, no pleadings were filed there, there is no evidence or record to examine, and no decision of the trial to review.

If the foregoing considerations are deemed to be picayune, they may be brushed aside and speedy results can be accomplished, but such a course of procedure does not comport with our traditional concepts of justice and the seriousness of placing individuals in jeopardy of their liberty by short cut and speedy methods. If the procedure outlined is approved, a new field of jurisprudence will have been created in my humble opinion. Throughout the case there appears to have been a deadline against which all substantive rights, procedure, and other considerations must willingly yield.

In the opinion of this court dated July 27, 1962, vacating stay, recalling mandate, and issuing new mandate forthwith, it is stated, *"In this case time is now of the quintessence."* (emphasis added) It is easy to yield to the criticism sometimes heard that judicial processes in a democracy are too slow. The truth is that all processes in a democracy are slow compared with the speed with which results are accomplished under some other types of government—the judicial process alone is not involved. Rules of law may serve to protect the rights of individuals in the courtroom as well as in the policeman's office. If expediency is to be the guiding rule in this case, some kind of a decision resulting in a judgment of guilty or not guilty can be rendered at an early date, but I cannot follow such rules of expediency unless such course of conduct is declared to be the law of the land. In my view, there is no end which justifies such means. With all our rush, turbulence, deadlines, speed and excessive zeal, we should remember substantive and procedural fundamentals. In this case, as in many others, procedure protects sub-

stantive rights. This case involves the criminal prosecution of the Governor and the Lieutenant Governor of a State of this Nation. Regardless of the parties involved, constitutional and statutory guarantees as they relate to liberty are seriously involved. Conviction of the crimes charged may subject two human beings to serious criminal penalties and interfere with the governmental functions of a State of this Union.

Although not presently and eminently involved, it should be noted that the acts now charged as criminal acts are substantially the same ones as were involved in the civil contempt; although the civil contempt charges were not as formal. The defendant Barnett was adjudged guilty of civil contempt by this court. After proper notice, opportunity to be present and after a hearing at which evidence was received, and pertinent facts were developed with reference to the civil contempt charge, at which hearing the right to cross-examine and the right to exercise all of the traditional rights which accompany such court procedure were extended, this court unanimously concluded that the defendant Barnett was guilty of civil contempt.[8] He was instructed to remove himself from the pathway which blocked the plaintiff's entry to the University of Mississippi; and he was told what would happen to him if he did not. Neither the defendant Barnett nor the defendant Johnson have

further interfered. On October 2, they appeared before a panel of this court through counsel and assured the court that full compliance with the court's orders would be achieved so far as they were concerned. Because the court had acted en banc with reference to the civil contempt charge, it was considered appropriate for the court to decide en banc whether the defendants had purged themselves of civil contempt, all as agreed in open court by defendants through their counsel and a panel of this court which heard the report on October 2. The hearing before the court en banc was set down for October 12, 1962. At that time, the same counsel appeared for the same defendants; one of which counsel reaffirmed the position taken on October 2, but the other undertook to reserve for Governor Barnett an area of discretion as to future compliance. Thereafter, this court issued a full and complete preliminary injunction, far more explicit and detailed than the original restraining order which the defendants had been charged with violating. Most of the acts now charged in the criminal proceeding relate to conduct alleged to have taken place before our adjudication of guilt in the civil contempt. To date the court has imposed no sanctions pursuant to its order of civil contempt.[9] There has been a suggestion in one of the briefs filed by the Government that perhaps further facts should be developed in the civil con-

8. Lieutenant Governor Johnson was also found guilty of civil contempt by a panel of this court.

9. The attitude of the *amicus* and the participation of the *amicus* in the civil contempt proceeding are evidenced by the following from the transcript of proceedings in the civil contempt case:
    "JUDGE TUTTLE: Mr. Marshall, in the light of this present situation, what do you recommend?
    "MR. MARSHALL: May it please the Court, this is clearly a very serious situation for the United States. I would like to start out by saying that I find it very difficult to believe that a state which is defending the rights of the state is at the same time apparently denying a responsibility to exercise the basic right of the states to maintain law and order

within their borders, if that is the position of the attorneys representing the State.
    "Now it is a fact, I think, that Governor Barnett has taken steps to purge himself of the contempt in which this Court found him. The Governor did during the few days preceding the finding of contempt interfere directly and physically with the carrying out of the Court's order by preventing Mr. Meredith from entering on the campus and becoming registered. He has taken steps, I think, to purge himself of that contempt of Court. Whatever his lawyers say in this court today, he did in fact instruct the law enforcement officers of the State to cooperate with the Federal law enforcement officers in bringing Mr. Meredith on the campus a week ago Sunday and physically permitting him to enter the campus and to register there as a student. To

tempt proceeding. Without any further attention to civil contempt, the case has now been converted to criminal contempt.

The foregoing considerations bring us to another serious aspect of the case—the question of the right to trial by jury. The defendants have filed appropriate pleadings and motions which bring to the attention of the court the various problems presented, including the right to a jury trial. It seems unnecessary to rule on specific motions attacking various segments of the procedure involved until the chief questions which trouble the court have been settled. The division in our court makes it imperative that the questions presented be certified to the Supreme Court of the United States.

Directly involved are certain statutes relating to the power of courts in criminal contempt cases and the right to trial by jury. Title 18 §§ 401, 402 and 3691. The matter of the right of trial by jury

in a criminal contempt proceeding has been the subject of much discussion in the courts and among legal scholars. The most recent expression by the United States Supreme Court is the case of Green v. United States, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672. In the majority and dissenting opinions one will find a thorough review of the subject. To say the least, the common law as it existed before the adoption of our Constitution " * * * is shrouded in much obscurity." Much of the argument begins at this point. For our purposes it seems sufficient to say that the Green case is easily distinguishable from the case at hand for two reasons: (1) In the Green case the United States commenced the proceeding in the District Court and was a party from the beginning; (2) The act which constituted the contempt in the Green case (bail jumping) was not a federal criminal offense at that time. In the Green case the posi-

that degree, Governor Barnett has certainly brought himself in compliance with the Court.

"The order of the Court which he was required to meet also required him to notify all law enforcement officers of the State of Mississippi that they should cooperate with the officers and agents of the Court and of the United States to the end that James Meredith be permitted to register and remain as a student at the University of Mississippi under the same conditions as apply to all other students. I think that the showing of purging on that aspect of the Court's order is not sufficient. The Governor has now (sic) shown what instructions, if any, he gave to the law enforcement officers of the State, and as far as the record is concerned, and as far as the Government's personal knowledge is concerned, I do not know what instructions he gave to the law enforcement officers of the State.

"This is still a civil contempt proceeding, it is still a remedial proceeding. Any questions of punishment for past actions are properly the subject of criminal contempt action. The fact is that at the moment law and order is maintained in the City of Oxford and on the campus of the University of Mississippi by Federal officials, Federal officers. I do not know of any specific action that this Court can ask the Governor to take within the next few days or at any par-

ticular time, because I do not know when it will appear to be possible for the Federal Government to withdraw force in sufficient numbers so that the responsibility resumes in the State to maintain law and order on that campus and in that city, but I think that the Court should look—I think that the Court cannot on the present record and on the statement of Counsel find that the Governor has purged himself of contempt.

"I think that the Court should look again to the future, because I think that he has purged himself enough to show that the sanctions set by the Court do not necessarily have to be imposed now. I think that the future to which the Court should look is the time when the Federal Government feels that it is safe and that they have met their responsibilities and that conditions are stable enough so that the basic Federal force protecting Mr. Meredith and maintaining law and order can be withdrawn. I think at that time it will be the performance of the Governor which is significant. I think at this time the assurances given to the Court by the Governor are unsatisfactory and that the Court may wish to take steps to make sure that they become satisfactory.

"I think that is the best that I can suggest, Judge Tuttle, considering that this is a change of position by the State, which I did not expect."

tion of the United States was clear from beginning to end—it was a party to the litigation. As heretofore stated the United States did not enter the instant case until the litigation had been decided in the appellate court and returned to the District Court by proper mandate, although the last mandate also sought to retain jurisdiction in this court.

It is obvious that the acts with which the defendants Barnett and Johnson are now charged, constitute crimes under Title 18 U.S.C.A. § 242 and § 1509. Under Title 18 §§ 401, 402 and 3691, it is clear that the defendants would be entitled to a jury trial if they were being prosecuted in the United States District Court, unless the alleged disobedience of the writs, processes and orders of the court were involved in a "suit or action brought or prosecuted in the name of, or on behalf of, the United States." In my opinion, the United States is not a party and therefore the exemption of the statutes would not apply for that reason. It should be remembered also that the United States District Court, pursuant to the final mandate of this court, issued its permanent injunction placing substantially the same restraints on the defendants as the temporary restraining order of this court. Whatever acts vio-

late the orders of this court may reasonably be said to constitute a violation of the orders of the United States District Court.[10] Accordingly, if the United States is not a party and if the acts charged in the show cause order also constitute a violation of the orders of the United States District Court and constitute federal criminal offenses, the defendants are entitled to a trial by jury if tried in the District Court. To me it is perfectly logical therefore to hold that if the defendants Barnett and Johnson are given greater substantive and procedural rights in the District Court than in our court (assuming such rights to be greater in the District Court than here) they are entitled to demand and receive a trial in that court which will guarantee the full rights assured to them by statute. The device of designating an *amicus* and giving the *amicus* the right in effect to choose the court to hear the case is improper. The choice of forum to the extent indicated should not be tolerated in criminal cases.

To say the least, there is serious disagreement and debate amongst the scholars and those in ultimate authority as to the right of trial by jury in criminal contempt cases. Regardless of the final conclusion reached in that controversy,

---

10. The order of the District Court for the Southern District of Mississippi granting the permanent injunction dated September 13, 1962, was broad and general and complied with every Mandate issued by this Court, and the Mandate of Mr. Justice Black of September 10, 1962. While the defendants, Barnett and Johnson, are not specifically mentioned therein, numerous persons are mentioned and the order applies to "* * * all persons in active concert and participation with them be and they hereby are permanently restrained and enjoined from * * *". The temporary restraining order issued by a panel of this Court dated September 25, 1962, refers to the order of this Court dated July 28, 1962, and the fact that the District Court for the Southern District of Mississippi "* * * having entered a similar order on September 13, 1962, pursuant to the Mandate of this Court * * *"; and said order of this Court temporarily restrained the defendants (and other persons) from:

"4. Interfering with or obstructing by any means or in any manner the performance of obligations or the enjoyment of rights under this Court's order of July 28, 1962 and the order of the United States District Court for the Southern District of Mississippi entered September 13, 1962, in this action, and

"5. Interfering with or obstructing, by force, threat, arrest or otherwise, any officer or agent of the United States in the performance of duties in connection with the enforcement of, and the prevention of obstruction to, the orders entered by this Court and the District Court for the Southern District of Mississippi relating to the enrollment and attendance of James Howard Meredith at the University of Mississippi; or arresting, prosecuting or punishing such officer or agent on account of his performing or seeking to perform such duty."

it is enough to say that *under the facts and in the circumstances of the instant case* outlined herein, the question of guilt or innocence should be decided by a jury. In my judgment, the proper place to try the defendants is in the United States District Court where the case originated; but if not, a jury should be provided in our court. Trial by jury in appellate courts is not completely unknown to the law. Title 28 U.S.C.A. § 1872 provides:

> "§ 1872. Issues of fact in Supreme Court. In all original actions at law in the Supreme Court against citizens of the United States, issues of fact shall be tried by a jury. June 25, 1948, c. 646, 62 Stat. 953." [11]

For the reasons stated, it is my opinion that this case should not be tried in the appellate court with the United States designated as *amicus*, serving as party and prosecutor, but the case should be certified to the United States District Court where the case originated, for trial there. In any event, whether the trial is in the United States District Court or in our court, the defendants should be accorded a trial by jury.

I fully approve and concur in the additional statement of Judge BELL set forth under Section VII of his opinion;

and wholeheartedly join in his expressions as to the dissent therein mentioned, and certification of the additional question therein set forth. I do this rather than to add to my own opinion.

GRIFFIN B. BELL, Circuit Judge.

I.

Prior to becoming President, Abraham Lincoln, when told with reference to slavery that the law was wrong in taking a man's liberty without trial by jury, responded that slavery was ungodly,

"But it is the law of the land,
and we must obey it as we find it." [1]

New legal precedents of recent years, with resultant changes in the existing order, have brought this maxim of another day, expressing an American tradition, into sharp focus. The necessary accommodation has differed in degree and manner; running the scale from prompt compliance, on through a middle ground of painful but responsible and dignified adjustment, down to extreme recalcitrance or outright refusal even to obey court orders entered, as they must be, pursuant to these precedents.

This case is concerned with what started as outright refusal on the part of Respondents herein, the Governor and Lieutenant Governor of Mississippi, to

11. See also the State of Georgia v. Brailsford, (1794), 3 Dall. 1, 1 L.Ed. 483.
The following statement from Hart and Wechsler, "The Federal Courts and The Federal System", is of interest:
"Since the earliest days, original cases have usually been equitable in character, and invariably the Court has been able to deal with problems of taking testimony and preparing findings of fact by the procedure of reference to a special master. The Seventh Amendment, however, applies to trials at common law in the Court, as 28 U.S.C. § 1872 recognizes, although no trial by jury seems to have been held since the eighteenth century. See Georgia v. Brailsford, 3 Dall. 1, 1 L.Ed. 483 (U.S. 1794)."
"See also 1 Carson, History of the Supreme Court of the United States 169, N. 1 (1902), describing two other unreported instances of trial by jury, in 1795 and 1797. Cf. United States v.

Louisiana, 339 U.S. 699, 706, 70 S.Ct. 914, 94 L.Ed. 1216 (1950), denying Louisiana's motion for a jury trial."
Footnote 1 referred to above in Carson's History of the Supreme Court, page 169, contains the following comment:
"3 Dallas 1, 1 L.Ed. 483 (1794). It has been asserted that this case is the only instance of trial by jury in the Supreme Court. This is an error. The minutes of the court disclose that in the case of Oswald v. The State of New York, a jury was sworn and witnesses called, and a verdict found for the plaintiff of $5,315.06. This was in February, 1795. Two years and a half later a writ of inquiry of damages in the case of Catlin v. The State of South Carolina, was executed at the bar of the Supreme Court, and a verdict was given for the plaintiff for $55,002.84 * * *"

1. Sandburg, Abraham Lincoln, The Prairie Years, Volume II, p. 236.

obey or let others obey court orders. Having been cited to show cause why they should not be held in criminal contempt for wilfully disobeying the temporary restraining order entered by this court on September 25, 1962 in the matter of United States v. State of Mississippi, et al., No. 19,475, a proceeding ancillary to that of Meredith v. Fair, No. 19,475, their several motions to dismiss including that based on lack of grand jury presentment and indictment are denied under separate orders. Their demand for trial by jury in the district where the alleged contemptuous acts or omissions were committed or omitted is the subject matter of this further discussion.

The background of the show cause order is the case of Meredith v. Fair, supra, and the incidental and ancillary proceedings arising therefrom. That suit involved the constitutional right of the plaintiff, James H. Meredith to attend the University of Mississippi free of discrimination because of race. The right to jury trial claimed here springs somewhat vicariously from the grant of that right. And having accorded plaintiff there his right, we must be alert not to now deprive Respondents of their right.

This court reversed the judgment of the District Court for the Southern District of Mississippi with the result that Meredith was to be admitted as a student to the University of Mississippi. The final order, dated July 28, 1962, of this court was unprecedented, in that jurisdiction was reserved full force to this court while at the same time the case was returned to the jurisdiction of the District Court from whence it came. Pursuant to mandate, the terms of the order were made the judgment of the District Court on September 13, 1962. The order of this court in pertinent part is as follows:

"This Court on July 26, 1962 entered its opinion and judgment forthwith (1) vacating a stay issued herein by Judge Ben F. Cameron, July 18, 1962, (2) recalling its mandate issued herein July 17, 1962, (3) amending and reissuing its mandate, for the purpose of preventing an injustice, by ordering the District Court to issue forthwith an injunction against the defendants-appellees ordering the immediate admission of the plaintiff-appellant, James H. Meredith, to the University of Mississippi, (4) which opinion and judgment includes an order of injunction by this Court against the defendants-appellees herein.

"Now, therefore, the following injunctive order is issued:

## "ORDER

"Pending such time as the District Court has issued and enforced the orders herein required and until such time as there has been full and actual compliance in good faith with each and all of said orders by the actual admission of plaintiff-appellant to, and the continued attendance thereafter at the University of Mississippi on the same basis as other students who attend the University, the defendants, their servants, agents, employees, successors and assigns, and all persons acting in concert with them, as well as any and all persons having knowledge of the decree are expressly:

"(1) Ordered to admit the plaintiff, James H. Meredith, to the University of Mississippi, on the same basis as other students at the University, under his applications heretofore filed, which are declared to be continuing applications, such admission to be immediate or, because of the second summer session having started, such admission to be in September, at Meredith's option, and without further registration.

"(2) Prohibited from any act of discrimination relating to Meredith's admission and continued attendance, and is

"(3) Ordered promptly to evaluate and approve Meredith's credits without discrimination and on a rea-

sonable basis in keeping with the standards applicable to transfers to the University of Mississippi."

Thus the same order was of force in each court, not only during admission but during continued attendance. This situation, whether fortuitous or otherwise, has been construed as giving those who sought to enforce the orders, plaintiff Meredith with the help of the Department of Justice, a choice of courts from which to seek ancillary relief. Traditional procedures including any distinction between original jurisdiction in the District Court and appellate jurisdiction in this court have been largely disregarded. Some orders were in fact sought from and granted by each court. Of these, at least two were granted by this court after refusal by the District Court. One of these was the order of this court of September 18, 1962 designating the United States as *amicus curiae*.

The orders material to this proceeding, other than the original order of July 28, 1962 reserving jurisdiction in this court during "continued attendance", are the order designating the United States to appear and participate as *amicus curiae* in all proceedings in the case of Meredith v. Fair, in this court and in the District Court, and the temporary restraining order of September 25, 1962 which Respondents are charged with violating. The *amicus* order authorized the United States to submit pleadings, evidence, arguments, and briefs and to initiate such further proceedings, including proceedings for injunctive relief and for contempt of court as might be appropriate in order to maintain and preserve the due administration of justice and the integrity of the judicial processes of the United States.

Thereafter this court entered the temporary restraining order of September 25, 1962 at the request of *amicus curiae* and plaintiff in Meredith v. Fair, restraining the State of Mississippi and its Governor, Ross R. Barnett, their agents, employees, officers and successors, together with all persons in active concert or participation with them, from interfering with or obstructing by any means or in any manner the enjoyment of rights or the performance of obligations under the order of July 28, 1962 of this court and the order of September 13, 1962 of the District Court, both of which orders required the enrollment of James H. Meredith in the University of Mississippi. No application for a restraining order was made to the District Court. The application in this court was original.

The order to show cause charges that after service, and on September 25, 1962, Governor Barnett wilfully prevented Meredith from entering the office of the Board of Trustees of the University in Jackson, Mississippi where he was to be registered as a student pursuant to the order of the court. On September 26, 1962 Lieutenant Governor Johnson, acting as officer and agent for Governor Barnett and for the State of Mississippi is alleged to have prevented Meredith from entering the campus of the University of Mississippi at Oxford, Mississippi and from enrolling as a student at a time when Lieutenant Governor Johnson had notice of the temporary restraining order. The Governor and Lieutenant Governor are alleged to have assumed responsibility on September 27, 1962 for maintaining law and order on the campus of the University in connection with the expected enrollment of Meredith and instead, directed and encouraged certain law enforcement officers to obstruct and prevent the entry of Meredith upon the campus. Governor Barnett is also charged with violating the September 28, 1962 order of this court which adjudged him in civil contempt of the temporary restraining order of September 25, 1962. The violation is said to be of that portion of the order which directed that he purge himself by notifying all law enforcement officers and all other officers under his jurisdiction and command to maintain law and order at and around the University, and to cooperate in the execution of the orders of this court and the District Court to the end that Meredith be permitted

to register and remain as a student at the University under the same conditions as apply to all other students. It is set out that Governor Barnett assumed this responsibility of maintaining law and order at the campus on September 30, 1962 and Meredith entered the campus without any interference or obstruction as a result of cooperation between the Mississippi State Highway Patrol and officials of the United States Department of Justice. However after entry, Governor Barnett is alleged to have wilfully failed to exercise his responsibility, authority and influence as Governor to maintain law and order with the result that disorder, disturbances and acts of violence designed to prevent and discourage the enrollment and attendance of Meredith as required by the court orders followed.

## II.

Time has passed and the original order has been complied with to the end that Meredith is in school. And it is important to bear in mind as we consider the question here presented that the grant of jury trial to those charged with acts said to constitute criminal contempt and which at the same time constitute crimes would not leave a court bereft of power to enforce its orders. Here civil contempt was in order. See Toledo Scale Co. v. Computing Scale Company, 1923, 261 U.S. 399, 43 S.Ct. 458, 67 L.Ed. 719, affirming, 281 F. 488 (7 Cir., 1922); and Sawyer v. Dollar, D.C.Cir., 1951, 190 F.2d 623, vacated as moot, 1952; 344 U.S. 806, 73 S.Ct. 7, 97 L.Ed. 628. The proceeding in civil contempt against Respondents is still pending in this court. It involves no question of jury trial. It was commenced for the purpose of obtaining compliance with the orders of the court, as distinguished from punishment for wrongful conduct under criminal contempt. We could have, upon violation of our orders, ordered Respondents taken into custody for confinement pending compliance with the court or-

ders. Gompers v. Buck's Stove & Range Co., 1911, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797. That Respondents happened to be Governor and Lieutenant Governor of their state would be no deterrent. Sterling v. Constantin, 1932, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375. A majority of the court did not think this to be a wise course at the time but it was nevertheless an available course of action. At any rate, the orders of the court as to Meredith have now been carried out, albeit with force and arms, as well as by virtue of civil contempt, and we come now to the demands of each of Respondents for jury trial in this proceeding to punish.

## III.

But for the happenstance that the temporary restraining order of September 25, 1962 allegedly violated was that of this court rather than the District Court for the Southern District of Mississippi, Respondents would clearly be entitled to jury trials. Rule 42(b), Fed.R.Crim.P., provides that a defendant in a criminal contempt proceeding is entitled to trial by jury in any case in which an Act of Congress so provides. Title 18 U.S.C.A. § 402 provides that any person wilfully disobeying a lawful order of a District Court shall be prosecuted as provided in Title 18 U.S.C.A. § 3691. This latter section provides for jury trial, if demanded, upon the violation of an order of the District Court if the act done be of such character as to also constitute a criminal offense under any Act of Congress, or under the laws of any state in which the act was done or omitted. It is provided that the jury trial shall conform "as near as may be to the practice in other criminal cases." [2]

Respondents are charged with what amounts to a crime under Title 18 U.S.C.A. § 242 in that the acts alleged constitute deprivation of the constitutional rights of Meredith under color of law, and Title 18 U.S.C.A. § 1509 in that their alleged conduct constituted interference

2. The jury trial provision does not apply to contempts committed in the presence of the court, something not here involved.

with United States marshals in the performance of their duties under orders of United States courts.[3] No one disputes this.

Two reasons are asserted by the United States as to why Respondents should be deprived of jury trials. First, it is said that the order allegedly violated was not that of a District Court; and second, even if this is such an analogous situation as to be controlled by the District Court statute, nevertheless no jury trial is permitted under the statute where the United States is a party.[4]

## IV.

My views as to this latter question may be succinctly stated. It is true that the jury trial provision does not apply where the order violated is "entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States." §§ 402, 3691, supra. And, so the argument goes, the order of September 25, 1962 was "entered in [a] suit or action brought or prosecuted in the name of or on behalf of the United States." This is on the theory that the order was obtained by the United States as *amicus* under an order vesting broad powers in the *amicus*.

I am unable to find any warrant in law for such a position. None has been cited to this court. My brothers have not enlightened me though some say it is so. I have read the *amicus* order and it did not make the United States a party.[5] Even this would hardly be sufficient for the order violated was entered in "a suit or action brought or prosecuted in the name of" James H. Meredith. There is not a word in Faubus v. United States, 8 Cir., 1958, 254 F.2d 797, cert. den., 358 U.S. 829, 79 S.Ct. 49, 3 L.Ed.2d 68; or Bush v. Orleans Parish School Board,

E.D.La., 1961, 191 F.Supp. 871, affirmed, Denny v. Bush, 367 U.S. 908, 81 S.Ct. 1917, 6 L.Ed.2d 1249 that supports any such position. Authority to bring such a suit or action as that of Meredith v. Fair in the name of the United States has been refused by the Congress. And we are dealing with the right to jury trial—not with the right of the court to appoint the United States as *amicus* to help carry out orders in a pending cause. Therefore, this contention of the United States is rejected.

But in doing so, I do think it vital that the question be faced squarely and settled. To hold otherwise will mean that there will be no jury trial in criminal contempt cases even where the order is clearly that of a District Court whenever and wherever the United States is designated in the capacity of *amicus curiae* to assist a court in carrying out its orders and later procures a restraining order which is violated. Here the application for the restraining order was granted on the petition of the *amicus* and on the petition of the plaintiff and the position of the United States on this question is, of course, based on the *amicus* order.

## V.

Thus it is that Respondents would be entitled to jury trial if the restraining order had been entered by the District Court, and we come to the main thrust of the demand. What we must decide is whether Respondents have that right where the order was entered by this court under the circumstances prevailing instead of the District Court. And it is no answer to say that there is no method prescribed by statute whereby this court can afford Respondents a jury. The question is not what we can do, but

---

3. They may now be tried for these crimes of which they are accused, but the trials must be in the District Court and to a jury.

4. This is not to disparage able counsel carrying out our direction to the United States to bring the criminal contempt proceeding against Respondents.

5. The *amicus* order was granted *ex parte*. It can hardly be contended that the United States intervened for there was no motion served as is required by Rule 24(c), F.R.Civ.P., nor notice of any kind to defendants in Meredith v. Fair, cf. Rule 6(d), F.R.Civ.P.

what is the right of Respondents in the premises.

We turn in vain to the jury trial debates preceding the Civil Rights Act of 1957 for help in a situation such as this where a Court of Appeals has in effect acted as a District Court in entering the restraining order. This is to point up that the order was not sought in the District Court but was originally filed in this court when jurisdiction, or to say the least, co-jurisdiction had been returned by mandate to the District Court. There was no appeal pending or in view from the District Court. That court had the duty and the right under the law as we have heretofore known it to go forward.

Those debates were much concerned with retaining the right of jury trial under Title 18 U.S.C.A. §§ 402 and 3691, supra, as against an effort to permit suits in certain types of civil rights actions to be brought by the United States and thereby avoid the requirement of jury trial. The result of the debates was a compromise to allow suits by the United States in the area of voting rights only, and then to remove the provision for jury trial only where the fine does not exceed three hundred dollars and imprisonment is for no more than forty five days. Title 42 U.S.C.A. §§ 1971, 1995. The intent of Congress should be plain to all from this recent result that jury trial was to be preserved in all save voting rights cases.

Jury trials in criminal contempt proceedings in the District Court where the acts charged constituted crimes were at that time well established. Michaelson v. United States, ex rel., Chicago, St. Paul, Minneapolis & Omaha Railway Company; and companion case of Sandefur v. Canoe Creek Coal Company, 1924, 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162. There the Supreme Court held what is now § 3691, a part of the Clayton Act enacted in 1914, to be constitutional as against the charge that it interfered with the inherent power of courts to punish for criminal contempt. The first case, Michaelson, dealt with striking em-

ployees who were enjoined from picketing, and who were charged with contempt for violation of the injunction. The District Court their denied demand for jury trial and adjudged them guilty. The circuit court affirmed. 7 Cir., 1923, 291 F. 940. In the Sandefur case the same question was certified for the opinion of the Supreme Court by the United States Court of Appeals for the Sixth Circuit. The court said that the provision for trial by jury was mandatory under the facts presented, if demanded, and that trial of criminal contempt was an independent proceeding between the public and defendants, and no part of the original cause.

What we are largely concerned with here is policy, a policy established by Congress for the District Courts by statute, and constitutional policy that is a part of the warp and woof of this country where crimes are charged. Article III, § 2, Cl. 3 of the Constitution, and the VI Amendment thereto. That criminal contempts are not subject to jury trial as a matter of constitutional right, Green v. United States, 1958, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672, does not obviate the fact that this constitutional policy was inherent in the District Court statute. And the avoidance of that policy by the simple medium of reserving jurisdiction to a Court of Appeals to enforce the same order that is by mandate made the order of the District Court, with the result that ancillary orders may be obtained originally from the Court of Appeals is flagrant indeed. It is too simple. It thwarts the policy established by the Clayton Act, 18 U.S.C.A. § 3691, and as reaffirmed in the debates leading to the enactment of the 1957 Civil Rights Act. That it was not done by design is unimportant. It is the result that counts.

That there was good reason for the reservation of jurisdiction and the injunctive order in this court is not now in dispute. I do not doubt the legality of the order of reservation under the authority of the All Writs Act, 28 U.S.C.A. § 1651 up to the time that the order of this court was made the order of the

District Court. However, from that point on legality for the present purposes of jury trial is at least limited. Any doubt could have been, but was not, resolved by a prior application to the District Court for the restraining order in question. The original application, I reiterate, was in this court, and my view is that original jurisdiction was at that time in the District Court at least to the extent of entitling Respondents to jury trial as they would be entitled to there.

To deny Respondents this right under the circumstances would be to establish a drastic and far reaching precedent,[6] and the fact that this is a hard case hardly indicates a different result. It goes without saying that we are dealing with a great and fundamental right, and one not lightly to be disregarded.

My views are buttressed by the strong, historically documented, dissenting opinion of Mr. Justice Black in which Chief Justice Warren and Mr. Justice Douglas concurred in Green v. United States, supra. They were of the view that, notwithstanding the established precedents, a defendant in criminal contempt who can be punished by severe prison sentences, as is the case here, is entitled to be tried by a jury after indictment by a grand jury in full accordance with all procedural safeguards required by the Constitution for "all criminal prosecutions". That case had to do with violation of court decrees outside the presence of the court, and the act charged, bail jumping, did not constitute a crime at that time so no statutory right to jury trial in criminal contempt was involved. The defendants were sentenced by the District Court to three years in prison.

The dissent did not dispute the established principle that there is no constitutional right in criminal contempt to a jury trial.[7] The dissenters would set aside these precedents as being repugnant to the Constitution. The problem of summary trial with punishment being meted out by the court whose order has been disobeyed is emphasized. See also Beale, Contempt of Court, Criminal and Civil, 1908, 21 Harv.L.Rev. 161; and Frankfurter and Landis, Power of Congress Over Procedure in Criminal Contempts in "Inferior" Federal Courts—A Study in Separation of Powers, 1924, 37 Harv.L.Rev. 1010.

That we should take a restrictive view of our power under these circumstances is made clear, as the Supreme Court has noted, by the history of the Act of 1831 from whence Title 18 U.S.C.A. § 401, authorizing punishment for contempt, derives. Nye v. United States, 1941, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172. It was the Congressional intent to safeguard constitutional procedures by limiting courts to the "least possible power adequate to the end proposed." In Re Michael, 1945, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30. Here the end sought is trial for criminal contempt, with Respondents to be accorded each and every right and safeguard to which they are entitled under the Constitution and laws of the United States.

I think it sufficient to say in conclusion, conceding the power of this court to enter the restraining order of September 25, 1962, a date after which the order of this court had been made the judgment of the District Court, and

---

6. If established as a precedent, it not only immediately involves Mississippi and Respondent Barnett, but their agents, employees, officers and successors and all persons in active concert or participation with them who may interfere with or obstruct by any means or in any manner the enjoyment of rights or the performance of obligations under the order of July 28, 1962 having to do with the admission and continued attendance of James H. Meredith at the University. This is the language of the restraining

order of September 25, 1962, later entered as a temporary injunction and retained for enforcement in this court, two judges dissenting, rather than being remanded to the District Court. It is now pending in this court and every person in any way violating its broad terms may be subjected to trial for criminal contempt without benefit of jury trial.

7. See the majority opinion and the supporting authorities set out in Footnote 14.

where the restraining order was not first sought in the District Court so as to give this court some basis for acting in aid of its appellate jurisdiction; that deprivation of the right to jury trial under the circumstances improperly bypasses the statutory safeguard of jury trial intended by Congress. For these reasons I would accord Respondents trial by jury.

This can be done by certifying such charges as are contained in the show cause order outstanding against Respondents to the appropriate District Court for trial by jury. See Houston & North Texas Motor Freight Lines, Inc. v. Local No. 745, International Brotherhood of Teamsters, N.D.Tex., 1939, 27 F.Supp. 154. This conclusion gives effect to my belief that there must be a constancy and sameness about procedure if the rights of all are to be secure, and it cannot be gainsaid that rights lost to some today, through make-shift procedures invoked for special situations of the moment, may be the rights of others tomorrow. The ideal of liberty and justice under, and equality before the law will not long survive under such a grievous practice. Nor may the practice be justified here with the result that the right to jury trial is lost, unless it is that those who deny the ideal are to be deprived of its benefits and, of course, that is not our system. In short, we must abide the statutes applicable to the District Court when we act as a District Court.

## VI.

The court is evenly divided on this question and it is fortunate that a final decision may be sought elsewhere before further action is taken. Congress has provided by statute for certification at any time by a Court of Appeals of any question of law in any civil or criminal case as to which instructions from the Supreme Court are desired. Title 28 U.S.C.A. § 1254. The Supreme Court has promulgated rules to be followed in certifying questions to it. Rules 28 and 29. For example, and as heretofore not-

ed, the question of the constitutionality of what is now Title 18 U.S.C.A. § 3691 making a jury trial mandatory in certain criminal contempt actions was certified and answered. Sandefur v. Canoe Creek Coal Company, supra.

Certification is all the more proper in a case such as this where respondents inescapably are charged and must be tried in their positions as Governor and Lieutenant Governor, respectively of the State of Mississippi, as well as individually. It is plain that they were carrying out the policy of that state, and federal courts have long accorded special consideration to the delicate relationship that exists between the Federal and State governments under the Constitution. South Carolina v. United States, 1905, 199 U.S. 437, 26 S.Ct. 110, 50 L.Ed. 261, 264.

Here the question raised with regard to jury trial should be finally resolved in advance of trial. We cannot finally resolve it. I am glad to join in certification even though I believe that Respondents are entitled to jury trial.

## VII.

Two brief comments appear to be in order following the formulation of the certified question, and the additional comments of the four members of the court who would deny jury trial.

First, the limited dissent of Judges Gewin and Bell referred to in Footnote 7 of their opinion with respect to the preliminary injunction entered October 19, 1962 should by no means be deemed insignificant. That dissent went to the heart of what has been the problem in this case since it was taken over by this court through the July 28, 1962 order. We dissented, not from the entry of the injunction, but because the court would not thereafter return the case to the District Court where it should have been all along; there to be handled, subject, of course, to the traditional mandamus procedure.

Under our court system the District Court speaks to litigants, while a Court of Appeals speaks, or should speak, to

the District Court. This historical mode lends itself to the maintenance of judicial dignity and decorum, engenders and preserves respect for the law, and avoids an unseemly type of judicial scurrying about that results when there are no rules to follow.

I regret that the court will not also certify the following additional question, deemed by me at least to be of the utmost importance in the event of jury trial, so as to eliminate more makeshift procedures:

"If Respondents are entitled to trial by jury for the criminal contempt with which they are charged, may the order to show cause charging them be referred to the District Court where the alleged acts of contempt were committed for trial?"